Matthew S. Parmet (CSB # 296742)
matt@parmet.law
PARMET PC
340 S. Lemon Ave., #1228
Walnut, CA 91789
phone  713 999 5228
fax      713 999 1187

*Counsel for Plaintiffs and Putative Class
Members*

Don J. Foty (TX Bar No. 24050022)*
David W. Hodges (TX Bar No. 00796765)*
Hodges & Foty, LLP
4409 Montrose Blvd, Suite 200
Houston, Texas 77006
Phone: (713) 523-0001
Fax:    (713) 523-1116
Email: dfoty@hftrialfirm.com
Email : dhodges@hftrialfirm.com

(*Admitted *pro hac vice*)

*Counsel for Plaintiffs and Putative Class
Members*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### FRESNO DIVISION

| | |
|---|---|
| **HEATHER BOONE and ROXANNE RIVERA, on Behalf of Themselves and All Others Similarly Situated** §<br>§<br>§ | |
| §<br>§ | CIVIL ACTION NO. 1:21-cv-00241-DAD-BAM |
| **Plaintiffs,** §<br>§ | |
| §<br>**V.** § | **PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| §<br>**AMAZON.COM SERVICES, LLC,** § | |
| **Defendant.** §<br>§ | Hearing Date:  July 6, 2021<br>Time:            9:30 a.m.<br>Courtroom:    5<br>Judge:          Hon. Dale A. Drozd |
| §<br>§<br>§<br>§ | _____ |

1

# TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ........................................................................1

II.     ARGUMENTS AND AUTHORITIES ........................................................1

    A.     Amazon's Motion to Dismiss should be denied because time spent in the COVID-19 screening is compensable under California law..........................................................2

        i.      The California Supreme Court's decision in *Frlekin v. Apple, Inc*. establishes that the COVID-19 screening is compensable……………………………………… 3

        ii.     The California Department of Industrial Relations previously determined that the time spent by workers undergoing COVID-19 screenings should be paid. ............4

        iii.    The District of New Jersey found that a viable claim exists against Amazon for failing to pay its employees for the time spent completing the COVID-19 screening. ........................................................................................................6

        iv.     Amazon's arguments that the COVID-19 screening is not compensable under California law are without merit and should be rejected by the Court. .................7

    B.     Amazon's Motion to Dismiss should be denied because the time spent in the COVID-19 screening is compensable under federal law..............................................10

        i.      The COVID-19 screenings were "work" under the FLSA...................10

        ii.     The COVID-19 screenings are "integral and indispensable" to the principal activities performed by the Plaintiffs. ................................................13

        iii.    The time spent by the Plaintiffs in the COVID-19 screenings was not *de minimis*. ......................................................................................................19

    C.     The Plaintiffs have stated a viable claim for unpaid overtime wages ...........................20

    D.     The Plaintiffs have raised a viable wage statement claim against Amazon .................23

    E.     Amazon's remaining arguments should be rejected by the Court................................25

III.    ALTERNATIVE MOTION FOR LEAVE TO AMEND................................................25

IV.     CONCLUSION ........................................................................................26

1

TABLE OF AUTHORITIES

Page(s)

2

3

Cases

4

*Acho v. Cort,*
   2009 WL 3562472 (N.D. Cal. Oct.27, 2009) ...................................................................... 22

*Aguilar v. Mgmt. & Training Corp.*,
   948 F.3d 1270 (10th Cir. 2020) .......................................................................................14, 15

*Alvarez v. IBP, Inc.*,
   339 F.3d 894 (9th Cir. 2003) ................................................................... 10, 11, 13, 14

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................................. 1

*Augustus v. ABM Security Services, Inc.*,
   2 Cal. 5th 257 (2016) ........................................................................................................... 2

*Barrentine v. Arkansas–Best Freight Sys., Inc.*,
   750 F.2d 47 (8th Cir.1984) ................................................................................................ 13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................................. 1

*Bellinghausen v. Tractor Supply Co.*,
   2013 WL 6057847 (N.D. Cal. Nov. 15, 2013) ................................................................. 25

*Bono Enterprises, Inc. v. Bradshaw*,
   32 Cal. App. 4th 968 (1995) ...........................................................................................3, 4

*Boon v. Canon Bus. Solutions, Inc.*,
   592 Fed. Appx. 631 (9th Cir. 2015) .................................................................................. 20

*Borne v. AAY Sec. LLC*,
   2019 WL 5394010 (E.D. Tex. Oct. 21, 2019) .................................................................. 18

*Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*,
   911 F.2d 242 (9th Cir. 1990) ............................................................................................... 2

*DeSoto v. Yellow Freight Sys., Inc.*,
   957 F.2d 655 (9th Cir. 1992) ............................................................................................. 25

*Dunlop v. City Elec., Inc.*,
   527 F.2d 394 (5th Cir.1976) ............................................................................................. 13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Dynamex Operations West, Inc., v. Superior Court*,
   4 Cal. 5th 903 (2018) ........................................................................ 2

*Frlekin v. Apple, Inc.*,
   8 Cal. 5th 1038 (2020) ...........................................................3, 7, 8, 9

*Griffin v. Sachs Electric Co.*,
   390 F. Supp. 3d 1070 (N.D. Cal. 2019) ............................................. 9

*Harper v. Charter Comm's, LLC*,
   2020 WL 916877 (E.D. Cal. Feb. 25, 2020) ..................................... 23

*Hernandez v. Pacific Bell Telephone Co.*,
   29 Cal. App. 5th 131 (2018) ............................................................. 2

*Industrial Welfare Com. v. Superior Court*,
   27 Cal. 3d 690 (1980) ....................................................................... 2

*Integrity Staffing Solutions, Inc. v. Busk*,
   574 U.S. 27 (2014) ......................................................................... 15

*Khan v. K2 Pure Solutions, L.P.*, No. Civ. A.,
   2013 WL 6503345 (N.D. Cal. Dec. 4, 2013) ................................... 22

*Landers v. Quality Commun's, Inc.*,
   771 F.3d 638 (9th Cir. 2014)......................................................20, 21

*Lazy Y. Ranch LTD v. Behrens*,
   546 F.3d 580 (9th Cir. 2008) ............................................................ 1

*Lindow v. United States*,
   738 F.2d 1057 (9th Cir. 1984) .....................................................19, 20

*Martinez v. Combs*,
   49 Cal. 4th 35 (2010) ....................................................................... 2

*Mendiola v. CPS Security Solutions, Inc.*,
   60 Cal. 4th 833 (2015) ..................................................................... 2

*Mitchell v. Acosta Sales, LLC*, No. Civ. A.,
   2011 WL 13309051 (C.D. Cal. June 9, 2011).................................. 19

*Mitchell v. King Packing Co.*,
   350 U.S. 260 (1956).......................................................................... 13

Case No. 1:21-cv-0241-DAD-BAM

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

iv

*Morillion v. Royal Packing Co.*,
   22 Cal. 4th 575 (2000) ................................................................ Passim

*Reinhardt v. Gemini Motor Transp.*,
   879 F. Supp. 2d 1138 (E.D. Cal. 2012) .................................... 25

*Sanford v. Preferred Staffing Inc.*,
   447 F. Supp. 3d 752 (E.D. Wis. 2020) ...................................... 19

*Scott v. Raudin McCormick, Inc.*,
   2009 WL 3561301 (D. Kan. Oct. 30, 2009) ............................... 18

*Seymore v. Metson Marine, Inc.*,
   194 Cal. App. 4th 361, fn. 5 (2011) ............................................ 4

*Steiner v. Mitchell*,
   350 U.S. 247 (1956) ........................................................ 10, 11, 13

*Swartz v. KPMG, LLP*,
   476 F.3d 756 (9th Cir. 2007) ...................................................... 25

*Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*,
   321 U.S. 590 (1944) ..................................................................... 10

*Troester v. Starbucks Corp.*,
   5 Cal. 5th 829 (2018) ................................................................. 2, 6

*United States v. Webb*,
   655 F.2d 977 (9th Cir. 1981) ...................................................... 25

*United Transp. Union Local 1745 v. City of Albuquerque*,
   178 F.3d 1109 (10th Cir.1999) ............................................. 11, 12

*Vaccaro v. Amazon.com.dedc, LLC*,
   2021 WL 1022699 (D.J.J. Mar. 17, 2021) ................................ 6, 7

*Varsam v. Lab. Corp. of Am.*,
   120 F. Supp. 3d 1173 (S.D. Cal. 2015) ..................................... 20

*Walden v. Nevada, ex. Rel. Nevada Department of Corrections*,
   2018 WL 1472715 (D. Nev. Mar. 26, 2018) .............................. 19

*Whitaker v. Countrwide Fin. Corp.*, No. Civ. A.,
   2010 WL 4537098 (C.D. Cal. Nov. 1, 2010) ............................. 19


Statutes

29 U.S.C. §§ 206, 207 ................................................................................. 10

2013, section 226 of the California Labor Code.................................................. 23

California Labor Code § 226 .....................................................................23, 24

Regulations

Cal. Code Regs., tit. 8, § 11070 .................................................................2, 3
9 C.F.R. § 308.3 (1999)............................................................................... 11
29 C.F.R. § 516.2....................................................................................... 22
29 C.F.R. § 790.7(h) (1999) ....................................................................... 13
29 C.F.R. § 1910.132(a) (1999).................................................................... 11

Other Authorities

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter,
   1989 WL 1595239 (August 2, 1989) ...................................................... 16

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter,
   1997 WL 998039 (December 15, 1997) ................................................... 17

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter,
   1998 WL 852652 (January 26, 1998) ...................................................... 17

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter,
   2001 WL 1558768 (Feb. 16, 2001)......................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      SUMMARY OF ARGUMENT

This case concerns a dispute under the Fair Labor Standards Act ("FLSA") and California law against Defendant Amazon.com Services, LLC. ("Amazon").  Following the outbreak of the COVID-19 pandemic, Amazon instituted a company-wide policy requiring each of its hourly employees to submit to a health screening prior to each shift to screen for symptoms of COVID-19.  Although Amazon uses electronic time clocks and could have positioned the time clocks before the entrance of the COVID-19 screening, Amazon chose not to do so.  Thus, the time spent by the thousands of employees of Amazon each day undergoing the COVID-19 screening went unpaid.  The law is clear that the time spent by the Plaintiffs and the proposed Class Members completing the COVID-19 screening is compensable and should have been paid by Amazon. Amazon's Motion to Dismiss should be denied in its entirety because the Plaintiffs have provided significant and detailed facts in their Complaint establishing that they have viable claims under both California law and the FLSA related to the COVID-19 screenings.   In fact, both the Department of Labor and the California Department of Industrial Relations have issued opinions stating that the time spent by workers completing COVID-19 health screenings should be paid by employers.  Again, Amazon failed to do so.  For the following reasons, Amazon's Motion should be denied.

## II.      ARGUMENTS AND AUTHORITIES

In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   In practice, "a complaint...must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the

extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**A. Amazon's Motion to Dismiss should be denied because time spent in the COVID-19 screening is compensable under California law.**

The Industrial Welfare Commission (IWC) was established "to fix minimum wages, maximum hours of work, and standard conditions of labor." *Martinez v. Combs*, 49 Cal. 4th 35, 50 (2010). Wage orders issued by the IWC are to be construed so as to promote employee protection. *Mendiola v. CPS Security Solutions, Inc.*, 60 Cal. 4th 833, 840 (2015). Indeed, IWC wage orders must be "liberally construed in a manner that serves its remedial purposes" of protecting and benefitting employees. *Dynamex Operations West, Inc., v. Superior Court*, 4 Cal. 5th 903, 953 (2018); *see also Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 262 (2016) (finding that when construing wage orders, courts adopt the construction that best gives effect to the Legislature and the IWC's purpose of protecting employees); *Industrial Welfare Com. v. Superior Court,* 27 Cal. 3d 690, 702 (1980) (same).

Wage Order 7, Cal. Code Regs., tit. 8, § 11070, requires employers to pay their employees a minimum wage for all "hours worked," *id.*, § 11070, subd. 4(B), defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Id.*, § 11070, subd. 2(G). Therefore, Wage Order 7 establishes two separate tests to determine whether an activity must be paid by an employer: (1) whether the employee is subject to the control of the employer, and (2) whether the employer suffered or permitted the employee to perform the work. *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 582 (2000). Thus, an employee who is *subject to the control* of an employer does not have to be working during that time to be compensated. *Id.* Likewise, an employee who is *suffered or permitted to work* does not have to be under the employer's control to be compensated, provided the employer has or should have knowledge of the employee's work. *Troester v. Starbucks Corp.* 5 Cal. 5th 829, 853 (2018); *Hernandez v. Pacific Bell Telephone Co.*, 29 Cal. App. 5th 131, 137 (2018). Under either test, the time spent by Amazon employees

completing the COVID-19 screening is compensable under California law.

   **i.    The California Supreme Court's decision in *Frlekin v. Apple, Inc.* establishes that the COVID-19 screening is compensable.**

In *Frlekin*, Apple required its retail store employees to undergo exit searches where the employees' bags, purses, and packages were searched. *Frlekin v. Apple, Inc.*, 8 Cal. 5th 1038,1043-44 (2020).  The Apple employees were required to clock out before submitting to the exit search and thus, they were not paid for that time. *Id.* at 1044.  After applying the "control test," the California Supreme Court held that the Apple employees were entitled to compensation during the time they spent in the exit search because the "Apple employees are clearly under Apple's control while awaiting, and during, the exit searches." *Id.* at 1047.  The *Frlekin* Court explained as follows:

> Based on the language of the control clause, Apple employees are entitled to compensation for the time during which they are subject to Apple's control. (Cal. Code Regs., tit. 8, § 11070, subd. 2(G).) Applying a strictly textual analysis, Apple employees are clearly under Apple's control while awaiting, and during, the exit searches. Apple controls its employees during this time in several ways. First, Apple requires its employees to comply with the bag-search policy under threat of discipline, up to and including termination. Second, Apple confines its employees to the premises as they wait for and undergo an exit search. Third, Apple compels its employees to perform specific and supervised tasks while awaiting and during the search. This includes locating a manager or security guard and waiting for that person to become available, unzipping and opening all bags and packages, moving around items within a bag or package, removing any personal Apple technology devices for inspection, and providing a personal technology card for device verification.

*Id.*

In finding that the exit searches were compensable, the California Supreme Court relied upon the decision of *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 972 (1995).  In *Bono*, the court held that workers who were required to remain on the employer's premises during their lunch period were entitled to compensation for that time. *Id.*  In reaching this decision, the court interpreted the phrase "subject to the control of an employer" to mean "[w]hen an employer directs, commands or restrains an employee." *Id.* at 975.  Therefore, when an employer directs, commands, or retrains an employee from leaving the workplace, that employee remains subject to

the employer's control and must be paid. *Id.*

The facts in this case are very similar to the facts in *Frlekin* and *Bono*.  Here, the Plaintiffs have pled the following facts:

> ¶ 34.   Plaintiffs and the Class Members **were required to follow Amazon's instructions while awaiting and during the COVID-19 screening**.   Amazon **required every employee to complete the COVID-19 screening and it was not optional**.   Indeed, the COVID-19 screening was required by Amazon and its **employees must comply under threat of discipline, including possible termination**.

> ¶ 35.   Additionally, the Plaintiffs and Class Members were **confined to the premises of Amazon when they waited for and during the examination**.

> ¶ 36.   Moreover, **Amazon compels its employees to perform specific tasks during the examination**.   They **must answer questions**, submit to **have their temperature taken**, and **wear masks**.

> ¶ 37.   In other words, Amazon directs, commands, and restrains its employees during the COVID-19 examination; **prevents them from using that time effectively for their own purposes**; and they remain subject to Amazon's control during the examination.

(Dkt. 23 at pg 8) (emphasis added).

Under these facts, the Plaintiffs were "subject to the control" of Amazon during the COVID-19 screenings and they should be paid for that time.

> ii.   **The California Department of Industrial Relations previously determined that the time spent by workers undergoing COVID-19 screenings should be paid.**

During the pandemic, the California Department of Industrial Relations ("DIR") issued guidance to employers stating that the time spent during the COVID-19 screenings should be paid by employers. (*See* Dkt. 26-10).  "[W]hile not controlling upon the courts by reason of their authority," these opinions by the DIR "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Seymore v. Metson Marine, Inc.,* 194 Cal. App. 4th 361, 369, fn. 5 (2011); *see also Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 584 (2000).  The Department of Industrial Relations stated as follows:

**Medical Checks**

**9.  Q: Must my employer pay me for time spent at my employer's worksite completing certain medical checks (including temperature checks) before beginning a shift?**

A:  Yes. Employers must pay workers for all "hours worked," including time that a worker is under the control of the employer. <u>**Employers that require their workers to complete a medical check in order to begin a shift, even if it is recommended under public health orders, must compensate workers for that time worked.**</u>

The term "hours worked" means the time during which a worker is subject to the control of an employer, and includes all the time the worker is suffered or permitted to work, whether or not required to do so. Under this definition, one way to determine whether time a worker spends performing a task is compensable—that is, whether it is time "worked"—is whether the employer exercised control over the worker by requiring the worker to perform that task.

**If an employer requires that all workers perform a medical check (such as a temperature check) onsite before beginning a shift, the time completing the medical check, including any time waiting in line, <u>would constitute time worked</u>. This requirement applies even if such tasks were performed pursuant to a state or local public health guideline, because the check is done at the request, and thus under the control, of the employer.**

**10.  Q: Is my employer required to pay workers for required medical checks (including temperature checks) at the employer's worksite, even if the medical checks take very little time?**

A: Yes, an employer is required to compensate for all hours worked in California even if a required task takes only a small amount of time. There is no "de minimis" rule under California law. Therefore, if an employer requires medical checks (such as a temperature check) at the employer's worksite, the employer must compensate a worker for that time worked, even if the temperature check takes only a small amount of time to complete and record.

(Dkt. 26-10 at pg. 6) (emphasis added).

The guidance above is also relevant to the second test for compensability - whether the Plaintiffs were "suffered or permitted to work" by Amazon.  As case law has clarified, the time during which "the employee is suffered or permitted to work" encompasses the time during which the employer knew or should have known that the employee was working on its behalf. *Morillion*, 22 Cal. 4th at 585.  The standard for what is compensable worktime in California is relatively

broad and includes all time for which the employer knew or should have known that the employee was working on the employer's behalf. *Id.* at 584-85 (interpreting wage order language that makes compensable all time "the employee is suffered or permitted to work, whether or not required to do so.")  In *Troester v. Starbucks Corp.* 5 Cal. 5th 829, 838 (2018), the court noted that "[a]s easily available technologies can increasingly track our every movement and moment, California law still protects workers from being forced to undertake work that won't be paid."  Here, Amazon required the Plaintiffs to complete the COVID-19 screening each shift. (Dkt. 23 at ¶ 26).  Amazon has electronic clock in and clock out technology. (*Id.* at ¶ 51). Yet, Amazon did not make that technology available prior to completing the COVID-19 screening. (*Id.*)  Amazon could have easily moved the time clocks to the front of the screening and paid its employees.  Amazon chose not to do so.  California law is clear that the Plaintiffs are entitled to compensation for the time they spent in the COVID-19 screenings.

<div style="text-align:center">

**iii.**  **The District of New Jersey found that a viable claim exists against Amazon for failing to pay its employees for the time spent completing the COVID-19 screening.**

</div>

In *Vaccaro v. Amazon.com.dedc, LLC*, No. Civ. A. 18-11852, 2021 WL 1022699 (D.J.J. Mar. 17, 2021), the plaintiff sought leave to amend her complaint to bring a claim for compensation for the time she spent in "pre-shift COVID-19 screenings at Defendant's warehouses or 'fulfillment centers.'" *Id.* at *1.  The plaintiff's claim was brought under the New Jersey Wage and Hour Law. *Id.*  Unlike California law, New Jersey law applies a stricter standard for determining compensable time.  Under New Jersey law, an activity must be paid "where the following two prongs are met: (1) an activity is performed that is *controlled or required* by the employer; and (2) such activity serves to *primarily benefit* the employer." *Id.* at *2 (emphasis in original).  After the plaintiff moved for leave to add the claim for compensation for the time spent in the COVID-19 screenings, Amazon opposed the motion for leave. *Id.*  In opposing the motion or leave, Amazon made very similar arguments as Amazon has made in this case that the "COVID screenings are not compensable." *Id.* at *1.  The District of New Jersey rejected Amazon's arguments. *Id.* at *4.

First, the District of New Jersey state that "it is clear that the mandatory pre-shift COVID-

19 screenings are 'controlled or required by [Amazon.]'" *Id.* Next, the District of New Jersey stated that the issue of whether an activity is primarily for the employer's benefit or the employee's benefit requires discovery. *Id.* Accordingly, the *Vaccaro* Court granted the plaintiff's motion for leave and allowed the COVID-19 screening claim to continue. *Id.*

The same decision should be reached in this case. Here, there is no reasonable dispute that Amazon controlled the COVID-19 screenings and the Plaintiffs' activities during the screenings. The Plaintiffs were (1) required to complete the screenings each shift, (Dkt. 23 at ¶ 27); (2) were required to complete the screenings on Amazon's premises, (*id.* at ¶ 35); (3) were required to submit to having their temperature taken, (*id.* at ¶ 36); (4) were required to answer questions about their health, (*id.*); (5) were required to put on a mask, (*id.*); and (6) were not free to use that time for their own purposes. (*Id.* at ¶ 37); California law is more liberal than New Jersey law in finding activities to be compensable. Under California law, if the employee is subject to the employer's control, the employer must pay for the time. *See Frlekin*, 8 Cal. 5th at 1047. The Plaintiffs have met that standard and Amazon's Motion to Dismiss should be denied.

### iv. Amazon's arguments that the COVID-19 screening is not compensable under California law are without merit and should be rejected by the Court.

Amazon cited to the *Frlekin* decision and argued that the time spent undergoing and waiting for the COVID-19 screenings is not compensable under California law. (Dkt. 24 at pg. 14). However, as noted earlier, *Frlekin* stands for the opposite proposition. In *Frlekin*, the Court stated "whether an activity is required remains probative in determining whether an employee is subject to the employer's control." *Frlekin*, 8 Cal. 5th at 1056. Here, the COVID-19 screenings were required by Amazon each shift. (Dkt. 23 at ¶ 34).

Nevertheless, the *Frlekin* Court also identified other factors for courts to consider when determining the level of control exercised over the employee; namely, (1) the location of the activity, (2) the degree of the employer's control, (3) whether the activity primarily benefits the employee or employer, and (4) whether the activity is enforced through disciplinary measures. *Frlekin*, 8 Cal. 5th at 1056. Each of these factors supports a finding that the COVID-19 screening time is compensable.

1    First, the COVID-19 screenings were conducted on the premises of Amazon. (Dkt. 23 at ¶

2    35).  Second, the Plaintiffs' were subject to Amazon's control during the screenings. (*Id*. at ¶ 34).

3    They were required to wait in line, submit to having their temperature taken, were required to

4    answer questions about their health, were required to put on a mask, and were not free to use that

5    time for their own purposes. (*Id*. at ¶¶ 35-37). Third, the Plaintiffs were required to complete the

6    COVID-19 screenings under the threat of discipline, including possible termination if they refused.

7    (*Id*. at ¶ 34). These facts clearly support that the Plaintiffs were subject to the control of Amazon

8    during while waiting for and undergoing the COVID-19 screening.

9    Amazon argues that the screenings were not compensable because it was not primarily for

10   Amazon's benefit. (Dkt. 24 at pg. 15).  As noted earlier, Amazon primarily benefits from the

11   COVID-19 screenings.  The screenings ensured that the there was no disruption in Amazon's

12   business operations, enabling Amazon to continue to earn billions in profits. (*See* Dkt. 23 at ¶ 42).

13   Likewise, Amazon enacted the screenings to avoid being cited by the government. (Dkt. 24 at pg.

14   4). Avoiding fines and citations allows Amazon to save money.  Moreover, the screenings were

15   necessary to ensure that the Amazon employees performed their work efficiently and without

16   interruption. (*See* Dkt. 23 at ¶ 43). Under these facts, Amazon benefited financially from the

17   COVID-19 screenings and the pandemic appeared to provide a windfall to Amazon's operations.

18   Amazon's argument that the "Amazon associates are not 'confined to the premises until'

19   the COVID-19 screening" begins somehow demonstrates a "lesser degree of control than the

20   workers in *Frlekin*" is without merit. (Dkt. 24 at pg. 17). The issue before the Court is whether

21   Amazon exercised control over the Plaintiffs during the COVID-19 screenings.  Based on the facts

22   stated in the Plaintiffs' Complaint, Amazon exercised a significant degree of control.  Amazon

23   claims that the employees in *Frlekin* "were allegedly required to perform very specific tasks"

24   during the exit screening while "[n]othing similar is alleged here" by the Plaintiffs. (*Id*.)  It is

25   unclear if Amazon has fully read the Plaintiffs' Complaint.  In the Plaintiffs' Complaint, they

26   alleged that they "were confined to the premises of Amazon when they waited for and during the

27   examination." (Dkt. 23 at ¶ 35).  Further, the Plaintiffs' alleged that they "were required to follow

28   Amazon's instructions while awaiting and during the COVID-19 screening." (*Id*. at ¶ 34).  Indeed,

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT
**8**

"Amazon compels its employees to perform specific tasks during the examination.  They must answer questions, submit to have their temperature taken, and wear masks." (*Id*. at ¶ 36). Moreover, "Amazon required every employee to complete the COVID-19 screening and it was not optional." (*Id*. at ¶ 34).  The Plaintiffs could have been fired if they refused to cooperate. (*See id*.)  Under these facts, Amazon exercised a significant level of control, just like the employer in *Frlekin*.  As in *Frlekin*, the time spent in the COVID-19 screenings should have been paid by Amazon.

Amazon's reliance on the *Griffin* decision is misplaced.  First, Griffin was decided at the summary judgment stage following full discovery, not at the 12(b)(6) stage. *See Griffin v. Sachs Electric Co*., 390 F. Supp. 3d 1070 (N.D. Cal. 2019).  Second, the facts in Griffin are materially distinct from the facts in the present case.  The *Griffin* Court held that the travel time was not compensable because the employer "did not require" the plaintiff "to take any particular mode of transportation to get to work." *Id*. at 1084.  The plaintiff could drive alone, carpool with other employees, take a bus, or take transportation offered by the employer. *Id*. at 1085.  The *Griffin* Court noted that the "key factor" was whether the employer "imposed mandatory travel on employer-provided transportation." *Id*. at 1087.  The court found that the employer did not. *Id*.

In contrast, Amazon required each of its employees to go through a COVID-19 screening. During that screening, the Plaintiffs were required to perform specific tasks during the examination under the threat of discipline.  They could not leave and were confined to the premises of Amazon when they waited for and during the screening.  These facts show a significant level of control by Amazon that was absent from the employer in the *Griffin* case.

On the other hand, in *Morillion v. Royal Packing Co.*, the employer required its employees to meet for work each day at a specified parking lot or assembly area. *Morillion*, 22 Cal. 4th at 579.  The employees were not permitted to use their own transportation to get to their worksite. *Id*.  Instead, they were required to ride in busses provided by the employer. *Id. Morillion* accordingly held that "[w]hen an employer requires its employees to meet at designated places to take its buses to work and prohibits them from taking their own transportation, these employees are 'subject to the control of an employer,' and their time spent traveling on the buses is

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

1

2

compensable as 'hours worked.' " *Id.*   The holding in *Morillion* further supports that the COVID-19 screenings are compensable under California law.

3

4

  **B.   Amazon's Motion to Dismiss should be denied because the time spent in the COVID-19 screening is compensable under federal law.**

5

6

7

8

9

10

11

12

   Like the Plaintiffs' claim under Calfiornia law, the Plaintiffs have also pled a viable claim that the time spent completing the COVID-19 screenings each shift is compensable under the FLSA.   To determine whether an activity should be compensated, courts in the Ninth Circuit generally apply a three-step inquiry. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 902-03 (9th Cir. 2003). First, the activity must constitute "work" under the FLSA. *See id.*   Second, the activity must be "an integral and indispensable part of the principle activities" performed by the employee. *See id.* Third, the activity must not be de minimis. *See id.*   An analysis of each factor demonstrates that the time spent in the COVID-19 screening is compensable under the FLSA.

13

   **i.  The COVID-19 screenings were "work" under the FLSA.**

14

15

16

17

18

19

20

21

22

23

   Under the FLSA, employers must pay employees for all "hours worked." *See* 29 U.S.C. §§ 206, 207; *Alvarez*, 339 F.3d at 902.   "Work" is the "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Alvarez*, 339 F.3d at 902 (citing   *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598 (1944)).   Thus, "work" encompasses two factors: (1) the activity is controlled or required by the employer, and (2) pursued necessarily and primarily for the benefit of the employer. *See id.*   Amazon does not dispute that the COVID-19 screenings were "controlled or required" by Amazon.   Instead, Amazon argues that the COVID-19 screenings were not "work" because the screenings were "not conducted primarily for Amazon's benefit." (Dkt. 24 at pg. 7).   This argument is without merit.

24

25

26

27

28

   The seminal case explaining which activities are compensable under the FLSA is *Steiner v. Mitchell*, 350 U.S. 247 (1956).   In *Steiner*, the Supreme Court held that time spent by battery plant workers showering at the end of each shift was compensable under the FLSA.   In *Steiner*, the employer operated a plant where batteries were manufactured. *Id.* at 249.   During the manufacturing process, chemicals used in the plant spilled, dropped, or became part of the dust in

the air. *Id.* These dangerous chemical attached to the skin, clothing, and hair of the employees. *Id.* at 250. To protect the workers and their families, the workers were required to shower at the end of their shifts. *Id.* The Supreme Court held that the time spent showering by the workers at the end of their shifts directly benefited the employer by making the "plant as safe a place as is possible under the circumstances and thereby increase the efficiency of its operation." *Id.* at 251-252. The Supreme Court then held that the time spent showering at the end of the shifts was compensable under the FLSA. *Id.* at 256. The Supreme Court stated as follows:

> We find no difficulty in fitting the facts of this case to that conclusion because it would be difficult to conjure up an instance where changing clothes and showering are more **clearly an integral and indispensable part of the principal activity** of the employment than in the case of these employees.

*Id.* (emphasis added)

Similarly, in *Alvarez v. IBP*, the Ninth Circuit held that the time spent by meat packing employees donning, doffing, and washing their protective gear primarily benefited the employer. *Alvarez*, 339 F.3d at 903. In reaching this conclusion, the Ninth Circuit found that the donning and doffing of the protective gear was "required by law." *Id.* The Ninth Circuit also found that the these activities prevented "unnecessary workplace injury and contamination." *Id.* Accordingly, the time spent donning, doffing, and washing the protective gear was primarily for the employer's benefit. *Id.* The Ninth Circuit stated as follows:

> it is beyond cavil that the donning, doffing, washing, and retrieving of protective gear is, at both broad and basic levels, done for the benefit of IBP. *See generally United Transp. Union Local 1745 v. City of Albuquerque,* 178 F.3d 1109, 1116 (10th Cir.1999). These plaintiff-performed activities allow IBP to satisfy its requirements under the law, *see* 9 C.F.R. § 308.3 (1999); 29 C.F.R. § 1910.132(a) (1999), and these activities **prevent unnecessary workplace injury and contamination,** both of which would inevitably impede IBP's "disassembly" process. Under *Steiner,* plaintiffs' donning, doffing, and cleaning activities are "integral and indispensable" to Pasco's "principal" activity.

*Id.* (emphasis added).

The facts in *Steiner* and *Alvarez* are very similar to the facts in this case. Just like in *Steiner* and *Alvarez*, the COVID-19 screenings primarily benefitted Amazon because the screenings were (1) designed to make the workplace safe and thereby increase the efficiency of Amazon's

operations, (2) were for the safety of the workers and their families, and (3) were to ensure that Amazon complied with the law.  Specifically, the Plaintiffs pled the following facts in their Complaint.

¶ 41.   Indeed, Amazon required the Plaintiffs and Class Members to undergo this screening for the purposes of overall safety in the Amazon facilities and to prevent the Plaintiffs and Class Members from inadvertently or unintentionally infecting the Amazon facilities or Amazon products, and in turn, Amazon's customers.  Likewise, the job duty of the Plaintiffs and Class Members was to serve the customers of Amazon and the screening was necessary to ensure that the Plaintiffs and Class Members safely provided that service.

¶ 42.   The COVID-19 examinations were necessary to ensure that the virus did not infect the Amazon facilities or customers.  The examinations were also necessary to ensure that the virus did not disrupt the work performed by the Plaintiffs and Class Members or affect the business operations of Amazon.  If Amazon did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Amazon facilities causing a mass breakout of the virus infecting hundreds to thousands of other workers of Amazon.

¶ 43.   The COVID-19 screenings were integral and indispensable to the principal activity and primary job duty performed by the Plaintiffs and Class Members, which was to serve and assist Amazon customers.  The COVID-19 screenings were necessary for the Plaintiffs and Class Members to perform their primary job duty for Amazon.  If Amazon cancelled the COVID-19 screening, the Amazon stores could get contaminated with virus, the items that Amazon sold could get contaminated with the virus, the customers could get infected, and other employees of Amazon could get infected.  In that event, Amazon's business would be disrupted and the Plaintiffs and Class Members would not be able to do their work.  Therefore, the COVID-19 screenings were necessary to ensure that the Plaintiffs and Class Members could do their jobs for Amazon.

(Dkt. 23 at pg. 8).

It is unclear why Amazon has argued that that the COVID-19 screenings were not for Amazon's benefit.  Amazon conceded "that a COVID-19 outbreak at an Amazon fulfillment center would be disruptive to business operations." (Dkt. 24 at pg. 8).  Further, Amazon admitted that the screenings were necessary to comply with "regulations and guidelines issued by California state agencies and the CDC." (*Id.*)  Finally, Amazon admitted that the COVID-19 screenings were performed to ensure that the work at the Amazon facilities proceeded safely during the pandemic. (Dkt. 24 at pg. 1).  Having business operations continue without interruption undoubtedly increases

the profits of Amazon.  Likewise, complying with all laws ensures that Amazon can continue to operate and earn profits.  Moreover, having employees who are healthy and able to perform the work ensures that Amazon can operate efficiently, and thereby, earn profits.[1]  Under these facts, the COVID-19 screenings were primarily for the benefit of Amazon.

> ii.  **The COVID-19 screenings are "integral and indispensable" to the principal activities performed by the Plaintiffs.**

"[A]ctivities performed either before or after the regular work shift" are compensable "if those activities are an integral and indispensable part of the principal activities." *Steiner v. Mitchell,* 350 U.S. 247, 256 (1956); *see also Mitchell v. King Packing Co.,* 350 U.S. 260, 261 (1956); 29 C.F.R. § 790.7(h) (1999) ("[A]n activity which is a 'preliminary' or 'postliminary' activity under one set of circumstances may be a principal activity under other conditions."). Indeed, what is "integral and indispensable" is context-specific. *Alvarez*, 339 F.3d at 902.   To be "integral and indispensable," an activity must be necessary to the principal work performed for the employer. *See Barrentine v. Arkansas–Best Freight Sys., Inc.,* 750 F.2d 47, 50 (8th Cir.1984), *cert. denied,* 471 U.S. 1054 (1985); *Dunlop v. City Elec., Inc.,* 527 F.2d 394, 398 (5th Cir.1976).

As noted earlier, the Supreme Court in *Steiner* held that the time spent taking showers after the workers' shifts had concluded was "integral and indispensable" to the workers' principal activities in manufacturing batteries. Steiner, 350 U.S. at 256.  That is because the showers were necessary to ensure that the workers remained healthy and could safely perform their work. *See id*.  The same conclusion was reached in *Alvarez*.  In *Alvarez*, the Ninth Circuit held that the time spent donning, doffing, and washing protective gear was "integral and indispensable" because those activities "prevent unnecessary workplace injury and contamination, both of which would inevitably impede [the employer's business]." *Alvarez*, 339 F.3d at 903.

Again, the facts in this case are strikingly similarly.  The COVID-19 screenings were necessary to ensure that the Amazon workers could perform their work safely, to prevent

---

[1] A New York Times article reported that Amazon's profits during the pandemic increased 220% while the vast majority of working men and women suffered. (https://www.nytimes.com/2021/04/29/technology/amazons-profits-triple.html, last visited June 22, 2021).

1    contamination from the virus, and to keep the customers of Amazon safe. (*See* Dkt. 23 at ¶¶ 40-

2    43). If there was an outbreak of COVID-19 at Amazon's facilities, Amazon's business would be

3    jeopardized. (*Id.* at ¶ 43). Thus, the COVID-19 screening was necessary to ensure that the

4    Plaintiffs could perform their work for Amazon and Amazon could continue to operate. (*Id.* at ¶¶

5    42-43).

6         In simpler terms, the Plaintiffs gathered packages to be delivered to Amazon customers.

7    (*Id.* at ¶ 43). If those packages were contaminated by COVID-19, the Plaintiffs could not perform

8    their work. (*See id.*) Likewise, if an Amazon employee became infected with COVID-19 and

9    spread the virus to other workers, the Plaintiffs could not provide their services to Amazon's

10   customers. (*See id.*) Moreover, if customers of Amazon received packages that were infected with

11   the virus, the customers would likely no longer use Amazon's services. (*See id.*) These facts

12   demonstrate that the COVID-19 screenings were necessary for the Plaintiffs to perform their work

13   and thus, "integral and indispensable" to the Plaintiffs' principal activities.

14        Amazon has relied upon the *Aguilar v. Mgmt & Training Corp*. decision. *Aguilar v. Mgmt.*

15   *& Training Corp*., 948 F.3d 1270 (10th Cir. 2020) decision. It is unclear why Amazon has cited

16   this case. In *Aguilar*, a group of correctional officers brought a claim for unpaid wages. *Id.* at

17   1274. The plaintiffs argued that the time spent completing mandatory security screenings (prior

18   to clocking in) was compensable under the FLSA. *Id.* at 1274-75. The Tenth Circuit agreed and

19   found that this time was "integral and indispensable" to the correctional officers' principal

20   activities in ensuring the safety of the prisons. *Id.* at 1278-79. Specifically, the *Aguilar* Court

21   found the security screenings to be an intrinsic element of the correctional officers' principal

22   activities in providing safety and security at the prisons and was directly tied to the "productive

23   work that the employee is employed to perform." *Id.* at 1277-78. The Tenth Circuit further

24   explained that if the security screenings were eliminated entirely, the correctional officers' work

25   would be impaired. *Id.* at 1279. This demonstrated that the security screenings were indispensable

26   to the correctional officers' principal activity. *Id.*

27        The facts in *Aguilar* support the Plaintiffs' position that the COVID-19 screenings are

28   compensable. Here, the COVID-19 screenings were necessary to ensure that the Plaintiffs could

perform their work.  If Amazon eliminated the COVID-19 screenings, the work of the Plaintiffs would be greatly impaired because workers could inadvertently or unintentionally bring the virus into the Amazon facilities causing a mass breakout and infecting other workers. (Dkt. 23 at ¶¶ 41-43).  This would lead to a disruption in the operations and would prevent the Plaintiffs from performing their work. (*Id.*)  Accepting these facts as true states a viable claim that the COVID-19 is compensable under the FLSA.

Amazon also cited to *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014). However, the facts in *Busk* are materially distinct from the facts in the present case.  In *Busk*, the plaintiffs were warehouse workers who retrieved packages from shelves to be delivered. *Busk*, 574 U.S. at 29-30.  After their shifts had concluded, the workers underwent an exit screening so the employer could identify if any theft occurred. *Id.* Although the Supreme Court held that the time spent in the exit screening was not compensable, the Supreme Court did not state that such a screening can never be compensable.  Instead, the Court made clear that the screening must be tied to the "productive work that the employee is employed to perform." *Id.* at 36. In *Busk*, the exit screening did not have anything to do with the workers' ability to do their jobs. *See id*.  The Court stated that the company "could have eliminated the screenings altogether without impairing the employees' ability to complete their work." 574 U.S. at 35.  In this case, however, the COVID-19 was necessary for the Plaintiffs to perform their work for Amazon and had it been eliminated, the Plaintiffs' ability to perform their jobs would have been compromised. (Dkt. 23 at ¶¶ 40-43)

Amazon acknowledged that the Department of Labor has issued guidance providing that the time spent in the COVID-19 screenings should be compensated by employers. (Dkt. 24 at pg. 10).  Amazon has simply asked the Court to disregard that guidance.  The Department of Labor has stated as follows:

> your employer is required to pay you for all hours that you work, including for time before you begin your normal working hours if the task that you are required to perform is necessary for the work you do. **For many employees, undergoing a temperature check before they begin work must be paid because it is necessary for their jobs.**  For example, if a nurse who performs direct patient care services at a hospital is required to check her temperature upon arrival at the hospital before her shift, the time that she spends checking her temperature upon entry to the

worksite is likely compensable because such a task is necessary for her to safely and effectively perform her job during the pandemic. In other words, the temperature check is integral and indispensable to the nurse's job. Other laws may offer greater protections for workers, and employers must comply with all applicable federal, state, and local laws.

(Dkt. 26-8 at pg. 6) (emphasis added).

Under this guidance, the time spent by the Plaintiffs completing the COVID-19 screening is compensable because it enables the Plaintiffs to perform their work for Amazon. Amazon has argued that the DOL's opinion is "too open-ended." (Dkt. 24 at pg. 12). To the contrary, the DOL's opinion is entirely consistent with over 30 years of authority providing that the time spent by workers in similar medical and health screenings are compensable under the FLSA.

Additional authority providing that similar medical and health screenings are compensable under the FLSA is summarized below.

        a.  *August 2, 1989 Opinion Letter – Medical/Psychiatric Evaluations for Police Officers.*

In its first opinion addressing a similar issue, the DOL advised that the time police officers spent taking required medical and psychiatric examinations "must be counted as hours worked under FLSA." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1989 WL 1595239, at *1 (August 2, 1989). In doing so, the DOL opined that:

whenever an employer imposes special requirements or conditions that an employee must meet before commencing productive work, the time spent in fulfilling such special conditions is regarded as ***indispensable*** to the performance of the principal activity the employee is hired to perform.

*Id.* (emphasis added) The letter further explained that this time is compensable because "the employee's freedom of movement is restricted for the purpose of serving the employer and… the employee is subject to employer's direction and control." *Id.*

        b.  *October 7, 1997 Opinion Letter – Physical Examinations for Fire and Police Personnel.*

The DOL reaffirmed its 1989 opinion by applying the same analysis to determine that "time spent by fire and police personnel in undergoing physical examinations required by the [c]ity… must be considered compensable hours of work under the [FLSA]" regardless of whether "the

examinations are conducted outside of regular working hours." Opinion Letter Fair Labor Standards Act (FLSA), 1997 WL 998042, at *1. In doing so, the DOL reiterated that "whenever an employer imposes special requirements or conditions that an employee must meet before commencing or continuing productive work," that time is compensable. *Id.*

c. *December 15, 1997 Opinion Letter – Drug Testing and Physical Examinations Required by DOT for Trucking Industry.*

Later, the DOL addressed "whether time spent in drug testing and in physical examinations required by the Department of Transportation for commercial licensing purposes may be considered compensable hours of work under the [FLSA]." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1997 WL 998039, at *1 (December 15, 1997). Applying the same analysis from its previous letters, the DOL advised that such time is compensable. *Id.* Additionally, it stated that "[w]here the Federal government requires employees to submit to physical examinations and drug testing as a condition of the employer's license to operate its business, both the drug tests and physical examinations are for the benefit of the employer" and "are essential requirements of the job." *Id.*

d. *January 26, 1998 Opinion Letter – DOT-Required Drug and Alcohol Testing in Specified Circumstances.*

The following year, the DOL provided additional guidance as to when "time spent in drug and alcohol testing required of the employer by the Department of Transportation may be considered compensable hours of work under the [FLSA]." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1998 WL 852652, at *1 (January 26, 1998). The letter again applied the same analysis and advised that the time spent fulfilling special conditions required by an employer "before commencing or continuing productive work" is compensable work time. *Id.*

e. *February 16, 2001 Opinion Letter – Physical Examinations for Police Officers.*

Lastly, in 2001, the DOL determined that time spent by a police officer in obtaining a physical examination that is required by the employer for the employee to <u>continue</u> employment" is compensable work time.  U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 2001 WL 1558768, at *4 (Feb. 16, 2001) (emphasis in original).

Courts have relied upon this guidance and found that medical examinations required by the employer constitute compensable time. *See, e.g., Scott v. Raudin McCormick, Inc.*, No. Civ. A. 08-4045-EFM, 2009 WL 3561301, at \*12 (D. Kan. Oct. 30, 2009); *In Borne v. AAY Sec. LLC*, No. Civ. A. 1:17-CV-510, 2019 WL 5394010, at \*5 (E.D. Tex. Oct. 21, 2019). In *Scott v. Raudin McCormick, Inc*., the District of Kansas held that "mandatory drug testing after the employee is relieved of duty qualifies as hours worked so as to require compensation." No. Civ. A. 08-4045-EFM, 2009 WL 3561301, at \*12 (D. Kan. Oct. 30, 2009). In that case, the plaintiffs were employed by defendants as drivers and were required to submit to random drug testing as part of their employment. *Id*. The court granted summary judgment in favor of the plaintiffs, holding that the defendant violated the FLSA by failing to compensate for that time. *Id*.; *see also In Borne v. AAY Sec. LLC*, No. Civ. A. 1:17-CV-510, 2019 WL 5394010, at \*5 (E.D. Tex. Oct. 21, 2019) (employer failed "to establish that it acted in good faith when it omitted drug testing time from its overtime pay calculations" because it "failed to investigate the compensability of drug testing time prior to receiving the results from the DOL investigation" determining that the time was compensable).

Amazon's remaining arguments can also be rejected. Amazon argued that the COVID-19 screening is not compensable because "California guidelines on screening apply across nearly all industries and recommend that visitors to worksites be screened, too." (Dkt. 15 at pg. 13). While California and the CDC have issued the guidelines to ensure the safety of workers, the fact is that the majority of the workers in the country have been working remotely since the height of the pandemic. They do not get screened for COVID-19 daily. Instead, they perform their duties via the internet from home. Nevertheless, whether COVID-19 screenings are common or not is irrelevant to the issues in this case. The issue is whether the Plaintiffs could safely perform their work without the screening. The answer is clearly "no."

Amazon claims that this lawsuit is an improper attempt to hold Amazon "liable for actions it took to keep its associates and the community-at-large safe during the COVID-19 pandemic." (Dkt. 24 at pg. 1). It is unclear why Amazon has made this argument. Employers have a non-delegable duty to provide a safe workplace for their employees and the time spent by workers donning and doffing safety gear to ensure that the worker can safely perform his/ her work has

routinely been held to be compensable under the FLSA. *See, e.g.*, *Sanford v. Preferred Staffing Inc.*, 447 F. Supp. 3d 752, 755 (E.D. Wis. 2020) (collecting cases).  This case is no different. Accordingly, the COVID-19 screening is "integral and indispensable" to the Plaintiffs' principal activities. and the time spent undergoing such screening is compensable under the FLSA.

   **iii.**  **The time spent by the Plaintiffs in the COVID-19 screenings was not *de minimis*.**

   Amazon's argument that the Plaintiffs' FLSA claims should be dismissed because the time spent in COVID-19 screenings is *de minimis* can be rejected for several reasons.  First, courts have determined that the *de minimis* rule is an affirmative defense that is inappropriate to challenge at the 12(b)(6) stage. *See, e.g., Mitchell v. Acosta Sales, LLC*, No. Civ. A. 11-1796 GAF, 2011 WL 13309051, at *10 (C.D. Cal. June 9, 2011).  In *Mitchell*, the court stated the "Plaintiff is not bound to affirmatively allege facts showing that this time worked was more than de minimis, as Acosta bears the burden to show that the time was merely *de minimis*. Thus, [the employer] cannot win dismissal on this basis." *Id*. Instead, "[t]here is no precise amount of time that may be denied compensation as *de minimis*. No rigid rule can be applied with mathematical certainty." *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984).  For this reason, courts in the Ninth Circuit deny motions to dismiss based on the *de minimis* defense. *See, e.g., Walden v. Nevada, ex. Rel. Nevada Department of Corrections*, No. Civ. A. 3:14-cv-0320, 2018 WL 1472715, at *8 (D. Nev. Mar. 26, 2018) (denying motion to dismiss based on the de minis defense); *Whitaker v. Countrwide Fin. Corp.*, No. Civ. A. 09-5898 (PJWx), 2010 WL 4537098, at *3 (C.D. Cal. Nov. 1, 2010) (same).

   Second, Plaintiffs provided a detailed description of the COVID-19 screening and a specific estimate of the amount of time it takes to undergo the screening. (Dkt. 23 at ¶¶ 26-32). Amazon claims that the Plaintiffs "offer[ed] no allegations regarding the amount of time spent actually undergoing screenings." (Dkt. 24 at pg. 12).  Yet again, it appears that Amazon has not fully read the Plaintiffs' Complaint.  The Plaintiffs' Complaint plainly states: "The amount of time it takes to undergo the COVID-19 examination is approximately 10 to 15 minutes on average." (Dkt. 23 at ¶ 32).  Therefore, the Plaintiffs stated the amount of time it takes to complete the

COVID-19 screening and provided a detailed description of the screening process. These allegations demonstrate that the time spent undergoing the COVID-19 screening was not *de minimis*.

Third, the factors that courts are to consider when determining whether an activity is *de minimis* support a finding that the COVID-19 screening was compensable. *See Lindow*, 738 F.2d at 1063 (listing three factors to determine whether activity is *de minimis*). To begin, there is no practical administrative difficulty to recording the time spent by Amazon employees in the COVID-19 screening.  Amazon could have easily moved the time clocks to the entrance of the screening location to allow for the time to have been recorded.  Next, the aggregate amount of time is significant – well above 10 minutes per day. (Dkt. 23 at ¶ 32).   Moreover, the COVID-19 screenings were conducted every day since March 2020. (*Id*. at ¶ 26).  Thus, they were conducted on a regular basis.  Accordingly, the time spent by the Plaintiffs completing the COVID-19 screenings was not *de minimis*.

### C.  The Plaintiffs have stated a viable claim for unpaid overtime wages.

Amazon argues that the "Plaintiffs fail to state a claim for unpaid overtime" by not providing "the level of specificity required by *Landers*." (Dkt. 23 at pg. 18).   However, the pleading of detailed facts is not required under Federal Rule of Civil Procedure 8 or *Landers*. *Landers v. Quality Commun's, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014).  "*Landers* does not require Plaintiffs to identify an exact calendar week or particular instance of denied overtime or minimum wage; instead, the allegations need only give rise to a plausible inference that such an instance exists." *Tan v. Grubhub, Inc.*, No. Civ. A. 15-cv-05128-JSC, 2016 WL 3743365, at *2 (N.D. Cal. July 13, 2016) *citing Boon v. Canon Bus. Solutions, Inc.*, 592 Fed. Appx. 631, 632 (9th Cir. 2015); *Varsam v. Lab. Corp. of Am.*, 120 F. Supp. 3d 1173, 1178 (S.D. Cal. 2015).  Indeed, the Ninth Circuit in *Landers* stated as follows:

> A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged...." *Id.* (citation omitted). This standard does not rise to the level of a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully...." *Id.* (citation omitted).

1    *Landers v. Quality Commun's, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014).

2           In the context of wage and hour disputes, the *Landers* Court stated that a plaintiff asserting

3    an overtime violation must only "allege that she worked more than forty hours in a given workweek

4    without being compensated for the overtime hours worked during that workweek." *Id.* at 644-45.

5    Specifically, in *Landers*, the Ninth Circuit explained that a plaintiff can plead a viable claim for

6    unpaid overtime by "estimating the length of her average workweek during the applicable period

7    and the average rate at which she was paid." *Id*. at 645.

8           Here, the Plaintiffs have gone above and beyond what is required under *Landers*.  First, the

9    Plaintiffs provided their start and end dates of employment with Amazon. (Dkt. 23 at ¶¶ 24-25).

10   Second, the Plaintiffs provide their job titles and a description of their duties. (*Id*.) Third, the

11   Plaintiffs identified their hourly rates of pay. (*Id*.)  Fourth, the Plaintiffs provided their work

12   schedules. (*Id*.)  Plaintiff Boone stated that she worked Monday, Tuesday, Thursday, and Friday

13   from 7:45 am to 5:45 pm. (*Id.* at ¶ 24).  She also identified specific weeks when she was scheduled

14   to work overtime stating that she worked mandatory overtime the first and second weeks of May

15   2020. (*Id*.)

16          Plaintiff Rivera also provided her work schedule and stated that she worked approximately

17   6pm to 5 am on a rotation that was four days straight followed by three days off. (*Id*. at ¶ 25).

18   Under this schedule she worked 11 hours per day on a rotation that was four days of work followed

19   by three days off. (*Id*.)  Thus, she definitely worked overtime in this schedule of at least 44 hours

20   in a week (11 hour days times 4 days per week). (*See id*.)

21          These facts are sufficient on their face to state an overtime claim under California law as

22   overtime is to be paid for any hours worked in excess of eight hours per day and here, the Plaintiffs

23   alleged that each day they worked more than eight hours.  Moreover, when adding the amount of

24   time the Plaintiffs spent working in the COVID-19 screenings each shift to their scheduled hours,

25   the Plaintiffs worked more than 40 hours each week.  Thus, they have sufficiently stated an

26   overtime claim under the FLSA.

27          Therefore, the Plaintiffs provided their work schedule (which amounts to more than 40

28   hours), identified specific weeks when they worked more than 40 hours, and stated that they

worked overtime hours each week. (*Id.* at ¶¶ 24-25).  Also, given the time spent by the Plaintiffs in the COVID-19 screenings, it is mathematically impossible for the Plaintiffs to have not worked overtime.   Again, the Plaintiffs' Complaint more than satisfies the pleading requirements enunciated in *Landers*.[2]

To the extent that Amazon has suggested that the Plaintiffs must identify in their Complaint the specific number of overtime hours worked each week, such a position is contrary to the law. Courts have not required the level of specificity that Amazon seeks.  That is because the FLSA places the burden on the employer to maintain employment records, including records of the hours worked each week and the amount paid to the workers. *See* 29 C.F.R. § 516.2 (requiring an employer maintain, *inter alia*, records of time work, amounts paid, overtime paid).  At the initiation of a lawsuit, unaided by discovery, it is to be expected that an employee will not have the documentary evidence to prove his/her case. *See, e.g.*, *Acho v. Cort,* No. Civ. A. 09–00157 MHP, 2009 WL 3562472, at *2, 3 (N.D. Cal. Oct.27, 2009) (denying motion to dismiss FLSA overtime claim based on plaintiff's allegation "that he worked more than forty hours per week and did not receive compensation for those overtime hours," noting that "[i]t cannot be the case that a plaintiff must plead specific instances of unpaid overtime before being allowed to proceed to discovery to access the employer's records.").  Likewise, the court in *Muan v. Vitug*, No. Civ. A. 5:13–0331, 2013 WL 240359, at *2 (N.D. Cal. May 31, 2013) stated that "[i]t would be unfair to require [plaintiff] to provide in his complaint a detailed employment record when the law clearly requires the employer, not the employee, to maintain such a log." Thus, it is inconsistent with the law for an employee to be required to prove the number of overtime hours he/she worked (damages) at the pleading stage.

---

[2] Federal courts in California have found similar allegations as those made by the Plaintiffs to be sufficient to state an overtime claim.  *See, e.g., Davenport v. Wendy's Co.*, No. Civ. A. 14-931 JAM (DAD), 2014 WL 3735611, at *4 (E.D. Cal. July 28, 2014) (allegations that all general managers, including the plaintiff, worked five ten-hour shifts a week with no overtime pay sufficient to state a claim); *Khan v. K2 Pure Solutions, L.P.*, No. Civ. A. 12-5526 WHO, 2013 WL 6503345, at *7 (N.D. Cal. Dec. 4, 2013) (specific allegations that one of the plaintiffs worked, on average, nine-to-ten hours a day and fifty per week without overtime pay were sufficient to state a claim); *Daugherty v. SolarCity Corp.*, No. Civ. A. 16-05155 WHA, 2017 WL, 386253 (N.D. Cal. Jan. 26, 2017) (finding allegation that plaintiff typically worked overtime to be sufficient).

Nevertheless, the Plaintiffs specified that they worked 10-11 hours each day and provided their work schedules. Thus, this case is not a situation where the Plaintiffs failed to provide any details about the overtime hours they worked. Instead, the Plaintiffs provide discrete facts about their schedules, hours of work, days they worked, hourly rates of pay, the amount of time spent working without pay, and identified specific weeks when they worked overtime. Accordingly, the Plaintiffs have sufficiently pled an overtime violation under the FLSA and California Labor Code. As such, Amazon's 12(b)(6) Motion to Dismiss should be denied.

**D.  The Plaintiffs have raised a viable wage statement claim against Amazon.**

Amazon asserts that the Plaintiffs' wage statement claim under California Labor Code § 226 should be dismissed because: (1) the Plaintiffs have failed to allege an injury-in-fact and thus, lack Article III standing, (2) the Plaintiffs' wage statement claim is based upon disputed payments and the Plaintiffs do not allege any actual injuries, and (3) the Plaintiffs failed to provide factual support that Amazon knowingly and intentionally failed to provide accurate wage statements. (Dkt. 24 at pg. 19).[3] Each of Amazon's arguments have recently been addressed by courts in the Eastern District of California and have been rejected. *See Harper v. Charter Comm's, LLC*, No. Civ. A. 2:19-cv-0902-WBS, 2020 WL 916877 (E.D. Cal. Feb. 25, 2020); *Morelli v. Corizon Health, Inc*., No. Civ. A. 1:18-cv-1395-LJO, 2019 WL 918210 (E.D. Cal. Feb. 25, 2019).

In *Harper*, the court explained that "California Labor Code § 226 provides nine itemized requirements that must be included on employee wage statements." *Harper*, 2019 WL 918210 at *2. The *Harper* Court further explained that in 2013, section 226 of the California Labor Code was amended to specifically state that "[a]n employee is deemed to suffer injury" if the employer fails to provide accurate or complete information as required by section 226. *Id*. In *Harper*, the plaintiffs alleged that the defendant failed to keep accurate records reflecting the plaintiffs' hours worked, deductions taken, and all gross and net wages earned. *Id*. at *3. The *Harper* Court found

---

[3] Amazon also argues that the wage statement claim is derivative of the Plaintiffs' claim for compensation during the time spent in the COVID-19 screening. According to Amazon, because the COVID-19 screening claim fails, the wage statement claim should also fail. As noted earlier, the Plaintiffs have pled a viable claim for compensation during the time spent in the COVID-19 screenings.

those allegations alone to sufficiently state a claim under section 226.  The *Harper* Court stated as follows:

> Here, plaintiffs allege Charter failed to keep accurate records reflecting plaintiffs' hours worked, deductions taken, and all gross and net wages earned, including minimum, overtime, and commission wages in violation of Labor Code § 226(a). (FAC ¶¶ 51-52.) **Under the 2013 amendment, plaintiffs are "deemed to suffer injury" upon a violation and allege as much**. (*See id*. ¶ 54 ("Plaintiffs ... suffered injury as a result of Charter's violations").) Additionally, plaintiffs explicitly allege Charter's violations were or are "knowing and intentional."…**Accordingly, plaintiffs have plausibly alleged their claim for failure to provide accurate wage statements**, and the court will deny Charter's motion to dismiss Claim Six.

*Id*. (emphasis added).

The same conclusion was reached in *Morelli*. *See Morelli*, 2019 WL 918210 at * 10. The facts in the present case are very similar to the facts in *Harpe*r and *Morelli*.  Here, the Plaintiffs alleged the following:

> ¶ 88.  Amazon regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by the California Labor Code §§ 226 and 1174, with respect to the Plaintiffs and Class Members.  Through this unlawful course of conduct, Amazon **has deprived and continues to deprive Plaintiffs and the California Class Members of records necessary to calculate with precision the compensation due to them**.
>
> ¶ 98.  Amazon knowingly and intentionally failed to furnish and continues to fail to furnish Plaintiffs and each California Class Member with timely, itemized wage statements that accurately reflect – among other things – **the total number of hours worked**, **hourly rates**, and **wages earned**, as mandated by the California Labor Code § 226(a), which requires employers, semi-monthly or at the time of each payment of wages, to furnish each employee with a statement that accurately reflects the total number of hours worked, correct hourly rates, and wages due.

(Dkt. 23 at pgs. 16 and 18) (emphasis added).

Based on these allegations, the Plaintiffs sufficiently alleged that Amazon failed to provide them with accurate wage statements that listed the total number of hours worked, their correct hourly rates, and the total wages earned to them. (*Id*. at ¶ 98).  Further, as a result of these deficiencies, the Plaintiffs have been injured because they have been deprived of the records necessary to calculate with precision the compensation owed to them from Amazon. (*Id*. at ¶ 88).  Accordingly, the Plaintiffs have alleged a viable claim consistent with *Harper* and *Morelli*.

**E. Amazon's remaining arguments should be rejected by the Court.**

The remainder of Amazon's arguments can be easily rejected. Amazon claims that the Plaintiffs "offer merely conclusory allegations that Amazon knowingly and willfully violated section 201 and 202." (Dkt. 24 at pg. 21). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1142 (E.D. Cal. 2012). Nevertheless, Amazon admits that it was aware of the opinion issued by the DIR stating that the time spent by workers completing COVID-19 screenings should be paid by employers. (Dkt. 24 at pg. 17). Yet, Amazon disregarded that authority and refused to pay its employees. That fact alone sufficiently demonstrates that Amazon acted knowingly or willfully. Additionally, Amazon claims that the Plaintiffs failed to allege a viable claim under the UCL. However, given that the Plaintiffs stated valid claims for compensation during the time they spent completing the COVID-19 screenings, their claim under the UCL is appropriate. *See Morelli*, 2019 WL 918210 at * 11. Finally, the Plaintiffs previously withdrew their claim for injunctive relief and do not seek that relief.

### III.   ALTERNATIVE MOTION FOR LEAVE TO AMEND

If the Court is inclined to grant any portion of Amazon's Motion, the Plaintiffs ask that the Court grant them leave to amend their Complaint. Leave to amend a party's pleading "should [be] freely give[n]…when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has a liberal policy favoring amendments and thus, leave to amend should be freely granted. *See., e.g., DeSoto v. Yellow Freight Sys., Inc.* 957 F.2d 655, 658 (9th Cir. 1992). If a Rule 12(b)(6) motion is granted, the Court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts. *Bellinghausen v. Tractor Supply Co*., No. Civ. A. 13-02377 JSC, 2013 WL 6057847, at *3 (N.D. Cal. Nov. 15, 2013). Rule 15(a) is designed to "facilitate a decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). In other words, "[a] complaint should be dismissed without leave to amend unless it is clear that the claims could not be saved by amendment." *Swartz v. KPMG, LLP*, 476 F.3d 756, 760 (9th Cir. 2007). Although the Plaintiffs believe that their Complaint is sufficiently pled, in the event that the Court

disagrees, the Plaintiffs respectfully request that they be granted leave to cure any deficiencies found by the Court.

### IV.   CONCLUSION

For the reasons stated herein, the Plaintiffs respectfully request that the Court deny Amazon's Motion to Dismiss the Plaintiffs' First Amended Complaint and for such other relief that the Plaintiffs may be entitled at law and equity.

DATED:  June 22, 2021                  Respectfully submitted,

HODGES & FOTY, L.L.P.


By:  /s/ Don J. Foty
   Don J. Foty (*admitted pro hac vice*)
   DFoty@hftrialfirm.com
   Texas State Bar No. 24050022
   4409 Montrose Blvd., Suite 200
   Houston, TX 77006
   Telephone: (713) 523-0001
   Facsimile: (713) 523-1116




### CERTIFICATE OF SERVICE

I certify that on June 22, 2021 I filed this document on the Eastern District of California CM/ECF system which will serve a true copy on all parties of record via electronic mail.

/s/ Don Foty
Don Foty