KATHERINE V.A. SMITH, SBN 247866
  ksmith@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

JASON C. SCHWARTZ (admitted *pro hac vice*)
  jschwartz@gibsondunn.com
ANDREW G.I. KILBERG (admitted *pro hac vice*)
  akilberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant*
*AMAZON.COM SERVICES LLC*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| HEATHER BOONE and ROXANNE RIVERA, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>Defendant. | Case No. 1:21-cv-00241-DAD-BAM<br><br>**REPLY IN SUPPORT OF DEFENDANT AMAZON.COM SERVICES LLC'S MOTION TO DISMISS**<br><br>**Hearing:**<br>Date:    July 6, 2021<br>Time:    9:30 AM<br>Place:    Courtroom 5<br>Judge:    Judge Dale A. Drozd |

**TABLE OF CONTENTS**

<u>Page</u>

I. INTRODUCTION ..................................................................................................... 1

II. ARGUMENT ......................................................................................................... 2

    A.    Time Spent in and Waiting for COVID Screenings Is Not Compensable
        (Claims 1, 2, & 6) ..................................................................................... 2

        1.    COVID-19 Screenings Are Not Compensable Under the FLSA ..................... 2

                a.    COVID-19 Screenings Are Not "Work" Under the FLSA ................. 2

                b.    COVID-19 Screening Is "Preliminary to" Associates' Principal
                     Activities ...................................................................................... 4

                c.    Time Spent in COVID-19 Screenings Is *De Minimis* ........................... 7

        2.    COVID-19 Screenings Are Not Compensable Under California Law ............. 9

    B.    Plaintiffs Have Failed to State a Claim for Unpaid Overtime (Claims 2 & 6) .......... 12

    C.    Plaintiffs' Wage Statement Claim Is Derivative, They Lack Standing to Bring
        the Claim, and the FAC Fails to Adequately Allege the Essential Elements of
        the Claim (Claim 3) ................................................................................. 12

    D.    Plaintiffs' Claim for Waiting Time Penalties Is Also Inadequately Alleged
        (Count 4) ............................................................................................... 14

    E.    Plaintiffs' Claim Under the UCL Is Derivative of Plaintiffs' Other Failed
        Claims and Plaintiffs Have Not Alleged that the Available Legal Remedies Are
        Inadequate (Claim 5) ............................................................................... 15

III. CONCLUSION ................................................................................................... 15

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aguilar v. Mgmt. & Training Corp.*,
948 F.3d 1270 (10th Cir. 2020)..................................................................5

*Alvarez v. IBP, Inc.*,
339 F.3d 894 (9th Cir. 2003).............................................................3, 6, 8

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946)..................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................14

*Bamonte v. City of Mesa*,
598 F.3d 1217 (9th Cir. 2010)...................................................................2

*Bonilla v. Baker Concrete Construction, Inc.*,
487 F.3d 1340 (11th Cir. 2007)..................................................................3

*Bonnell v. Med. Bd.*,
31 Cal. 4th 1255 (2003) ...........................................................................11

*Brinker Rest. Corp. v. Superior Court*,
53 Cal. 4th 1004 (2012) ...........................................................................11

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003)...................................................................8

*Brown v. Wal-Mart Stores, Inc.*,
2013 WL 1701581 (N.D. Cal. Apr. 18, 2013) .........................................14

*Ceja-Corona v. CVS Pharmacy, Inc.*,
2013 WL 796649 (E.D. Cal. Mar. 4, 2013) ...........................................2, 9

*Cervantez v. Celestica Corp.*,
253 F.R.D. 562 (C.D. Cal. 2008) .............................................................11

*Christensen v. Harris Cty.*,
529 U.S. 576 (2000)..................................................................................6

*Dawson v. Hitco Carbon Composites, Inc*,
2017 WL 7806358 (C.D. Cal. May 5, 2017) ...........................................14

*Diaz v. Grill Concepts Servs., Inc.*,
23 Cal. App. 5th 859 (2018) ....................................................................15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

*Dinkel v. MedStar Health Inc.*,
99 F. Supp. 3d 37 (D.D.C. 2015) ...................................................................6

*Encino Motorcars, LLC v. Navarro*,
138 S. Ct. 1134 (2018) ...................................................................................4

*Frlekin v. Apple Inc.*,
8 Cal. 5th 1038 (2020) ...................................................................1, 9, 10, 11

*Gorman v. Consolidated Edison Corp.*,
488 F.3d 586 (2d Cir. 2007)..........................................................................5

*Griffin v. Sachs Elec. Co.*,
390 F. Supp. 3d 1070 (N.D. Cal. 2019) ...............................................10, 11

*Gunawan v. Howroyd-Wright Emp't Agency*,
997 F. Supp. 2d 1058 (C.D. Cal. 2014) .......................................................12

*Harper v. Charter Commc'ns, LLC*,
2020 WL 916877 (E.D. Cal. Feb. 26, 2020)................................................13

*IBP, Inc. v. Alvarez*,
546 U.S. 21 (2005).........................................................................................8

*Integrity Staffing Sols., Inc. v. Busk*,
574 U.S. 27 (2014).................................................................................1, 4, 5

*Jackson v. AT&T Retirement Savings Plan*,
2019 WL 7753547 (W.D. La. Sept. 17, 2019) .............................................9

*Johnson v. Winco Foods, LLC*,
2018 WL 6017012 (C.D. Cal. Apr. 2, 2018) ...............................................15

*Kazi v. PNC Bank, N.A.*,
2021 WL 965372 (N.D. Cal. Mar. 15, 2021) ..............................................14

*Krauss v. Wal-Mart, Inc.*,
2019 WL 6170770 (E.D. Cal. Nov. 20, 2019) .............................................14

*Landers v. Quality Commc'ns, Inc.*,
771 F.3d 638 (9th Cir. 2014).......................................................................12

*Leone v. Mobil Oil Corp.*,
523 F.2d 1153 (D.C. Cir. 1975) ....................................................................4

*Lindow v. United States*,
738 F.2d 1057 (9th Cir. 1984)........................................................................8

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

*Loc. 1605 Amalgamated Transit Union, AFL-CIO v. Cent. Contra Costa Cty. Transit Auth.*,
   73 F. Supp. 2d 1117 (N.D. Cal. 1999) ............................................................................4

*Madera Police Officers Ass'n v. City of Madera*,
   36 Cal. 3d 403 (1984) ...................................................................................................10

*Magadia v. Wal-Mart Assocs.*,
   — F.3d —, 2021 WL 2176584 (9th Cir. May 28, 2021) ...............................................13

*Maldonado v. Epsilon Plastics, Inc.*,
   22 Cal. App. 5th 1308 (2018) ...................................................................................13, 14

*Mitchell v. Acosta Sales, LLC*,
   2011 WL 13309051 (C.D. Cal. June 9, 2011) .................................................................8

*Morillion v. Royal Packing Co.*,
   22 Cal. 4th 575 (2000) ...................................................................................................11

*Morrelli v. Corizon Health, Inc.*,
   2019 WL 918210 (E.D. Cal. Feb. 25, 2019) .................................................................13

*Nationwide Biweekly Admin., Inc. v. Superior Court*,
   9 Cal. 5th 279 (2020) .....................................................................................................15

*Nicolas v. Uber*,
   2021 WL 2016161 (N.D. Cal. May 20, 2021) ...............................................................12

*Price v. Starbucks Corp.*,
   192 Cal. App. 4th 1136 (2011) ......................................................................................15

*Saini v. Motion Recruitment Partners, LLC*,
   2017 WL 1536276 (C.D. Cal. Mar. 6, 2017) ................................................................11

*Sanford v. Preferred Staffing, Inc.*,
   447 F. Supp. 3d 752 (E.D. Wis. 2020).............................................................................6

*Snowden v. Cnty. of Valaveras*,
   2019 WL 4829480 (E.D. Cal. Sept. 30, 2019)..................................................................2

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020)......................................................................................2, 15

*Steiner v. Mitchell*,
   350 U.S. 247 (1956)......................................................................................................3, 6

*Tavares v. Cargill Inc.*,
   2019 WL 2918061 (E.D. Cal. July 8, 2019) ..................................................................12

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page(s)

*TransUnion LLC v. Ramirez*,
    2021 WL 2599472 (U.S. June 25, 2021) ...................................................................13

*Trevino v. Golden State FC LLC*,
    2021 WL 2328414 (E.D. Cal. June 8, 2021)...............................................................11

*Vaccaro v. Amazon.com.dedc, LLC*,
    2021 WL 1022699 (D.N.J. Mar. 17, 2021).................................................................11

*Walden v. Nevada ex rel. Nev. Dep't of Corrs.*,
    2018 WL 1472715 (D. Nev. Mar. 26, 2018)................................................................9

*Whitaker v. Countrywide Fin. Corp.*,
    2010 WL 4537098 (C.D. Cal. Nov. 1, 2010)...............................................................9

*Xiao Lu Ma v. Sessions*,
    907 F.3d 1191 (9th Cir. 2018)......................................................................................7

*Young v. Beard*,
    2015 WL 1021278 (E.D. Cal. Mar. 9, 2015) ..............................................................8

**STATUTES**

Cal. Lab. Code § 226 .......................................................................................................12, 13

**REGULATIONS**

29 C.F.R. § 790.7(g) ...............................................................................................................8

Cal. Code Regs. tit. 8, § 13520 .............................................................................................15

**OTHER AUTHORITIES**

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1989 WL 1595239 (Aug. 2, 1989) ..............6

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1997 WL 998039 (Sept. 15, 1997)..............6

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1997 WL 998042 (Oct. 7, 1997) ................6

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1998 WL 852652 (Jan. 26, 1998)................6

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 2001 WL 1558768 (Feb. 16, 2001).............6

Gibson, Dunn & Crutcher LLP

# I. INTRODUCTION

Relying on unpersuasive, informal, and non-binding agency guidance, Plaintiffs ask this Court to declare that the short time spent waiting for and in COVID-19 screenings constitutes compensable time under the Fair Labor Standards Act ("FLSA") and California law. But what matters here is binding precedent, and that precedent—which Plaintiffs ignore or distort—demonstrates that Plaintiffs have failed to state any viable claim based on their allegation that Amazon, like nearly all employers, implemented screening measures to protect the general public from the spread of a deadly virus. The adoption of those measures, often at the behest of the government and in response to an unprecedented global pandemic, does not and should not give rise to windfalls under either federal or California employment laws. The Court should dismiss Plaintiffs' claims with prejudice.

Plaintiffs' FLSA claim fails because (a) COVID-19 screenings do not primarily benefit Amazon and thus do not constitute "work" under the FLSA; (b) screenings are preliminary to the principal activities for which Amazon associates are employed and, therefore, not compensable under the Portal-to-Portal Act, *see Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 35 (2014); and (c) Plaintiffs have failed to allege any facts demonstrating that the time employees spend being screened, when separated from the time allegedly spent *waiting* to be screened (which is not compensable), is anything other than *de minimis*. Plaintiffs' claims under California law for time spent waiting for and in COVID-19 screenings fail for similar reasons. Under the test for compensable time established in *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038 (2020), Amazon does not exercise the requisite level of control over its associates during the screenings for that time to be "hours worked." Moreover, Plaintiffs have failed to allege sufficient details to state a claim for unpaid overtime under either the FLSA or California law.

Plaintiffs' claim that Amazon's wage statements were inaccurate in violation of California Labor Code section 226 also fails for several reasons: (a) the claim is derivative of other insufficiently pleaded claims; (b) Plaintiffs lack Article III standing to pursue the claim; (c) Plaintiffs are not entitled to a presumption of injury under section 226; and (d) Plaintiffs have not adequately alleged scienter.

Plaintiffs' claim for waiting time penalties under California law fails for similar reasons: (a) it is derivative of other inadequately pleaded claims; (b) Plaintiffs have not adequately alleged scienter; and (c) the payments are the subject of good faith disagreements, which bars assessment of penalties.

1  Finally, Plaintiffs' request for equitable relief under California's Unfair Competition Law

2  ("UCL") fails because it is (a) derivative of other insufficiently pleaded claims; and (b) Plaintiffs have

3  not alleged that the legal remedies available to them are inadequate.  *See Sonner v. Premier Nutrition*

4  *Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

5  Plaintiffs' overlength opposition does not persuasively rebut any of Amazon's arguments.  In-

6  stead, Plaintiffs largely rely on cases and guidance documents that are inapposite and contravene bind-

7  ing Supreme Court and Ninth Circuit precedents.  The Court should therefore dismiss Plaintiffs' First

8  Amended Complaint ("FAC") in its entirety for the reasons given here and in Amazon's Motion to

9  Dismiss.  Dismissal should be with prejudice, because further amendment would be futile.  *See, e.g.*,

10  *Snowden v. Cty. of Valaveras*, 2019 WL 4829480, at *9 (E.D. Cal. Sept. 30, 2019) (Drozd, J.).

## II.  ARGUMENT

### A.    Time Spent in and Waiting for COVID Screenings Is Not Compensable (Claims 1, 2, & 6)

13  Plaintiffs have not plausibly alleged that time spent waiting for and undergoing Amazon's

14  COVID-19 screenings is compensable under either the FLSA or the California Labor Code.

### 1.    COVID-19 Screenings Are Not Compensable Under the FLSA

16  To state a claim for unpaid work under the FLSA and the Portal-to-Portal Act, a complaint's

17  allegations must show: (1) that "the activity constituted 'work'"; (2) that "the activity was an 'integral

18  and indispensable' duty"; and (3) that "the activity was [not] *de minimis*."  *Ceja-Corona v. CVS Phar-*

19  *macy, Inc.*, 2013 WL 796649, at *4 (E.D. Cal. Mar. 4, 2013).  The FAC fails each of these requirements.

### a.    COVID-19 Screenings Are Not "Work" Under the FLSA

21  An activity is compensable "work" under the FLSA if (a) it "is controlled or required by the

22  employer" and (b) it "is pursued necessarily and *primarily for the benefit of the employer*."  *Bamonte*

23  *v. City of Mesa*, 598 F.3d 1217, 1224–25 (9th Cir. 2010) (emphasis added).  COVID-19 screenings are

24  not conducted primarily for Amazon's benefit.  They are performed in accordance with regulations and

25  guidelines issued by California state agencies and the U.S. Centers for Disease Control and Prevention

26  ("CDC").  Mot. 4–5, 8.  Screenings are thus part of a nationwide public health initiative that transcends

27  any particular interest Amazon may have; while they incidentally benefit Amazon, they first and fore-

28  most benefit its associates and, indeed, the community as a whole.

Plaintiffs resist this conclusion by relying on two inapposite cases—*Steiner v. Mitchell*, 350 U.S. 247 (1956), and *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003)—involving the donning and doffing of protective workplace equipment.  But both cases chiefly concerned whether an activity was "preliminary" or "postliminary" to the workers' principal activities, and therefore non-compensable under the Portal-to-Portal Act.  *Alvarez* contains one short paragraph asserting, without significant analysis, that the activity "constitute[d] 'work.'"  *Alvarez*, 339 F.3d at 902.  *Steiner* contains no analysis whatsoever of whether the activities primarily benefited the employer.  *Steiner*, 350 U.S. at 253 (stating that the Court "agree[d]" that the activities "directly benefit petitioners" (quotation marks omitted)).

The facts of those cases are distinguishable, too.  *Alvarez* concerned meatpacking workers, who had to don and doff a variety of both common and specialized equipment. 339 F.3d at 898 n.2.  *Steiner* concerned workers at a car battery manufacturer, who worked with dangerous chemicals and thus changed into and out of work clothes and showered at the end of their shifts.  350 U.S. at 251.  Those job-specific conditions are a far cry from COVID-19 screening, which is a measure recommended by the CDC and the State of California (and later *required* by California) for all industries for the safety of the individuals screened and the community as a whole, which benefits from preventing the spread of a dangerous, transmissible virus.  *See* Mot. 4–5, 8.  It is therefore manifestly not the case that Amazon is the primary beneficiary of the screenings in its capacity as an employer, or that the direct benefits of the screenings are confined to the operations of Amazon's business.

Plaintiffs simply ignore Amazon's citation of *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340 (11th Cir. 2007), in which the court held that construction workers at Miami International Airport were not engaging in compensable work when they went through security screenings mandated by the Federal Aviation Administration.  *See* Mot. 8–9.  "[A]lthough the screening was necessary for the employees to perform their work, appellee did not primarily—or even particularly—benefit from the security regime."  *Id.* at 1344.  That Plaintiffs have offered no response to *Bonilla* is unsurprising, as it directly contradicts their view of the FLSA.

Plaintiffs mischaracterize both Amazon's argument and the governing law when they assert (at 12) that "Amazon has argued that . . . the COVID-19 screenings were not for Amazon's benefit."  Amazon has acknowledged that it, like every other member of the community, benefits from COVID-19

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS

screenings.  The fact that Amazon benefits from preventing COVID-19 outbreaks at its worksites does not mean it is the *primary* beneficiary.  As other courts have recognized, "[m]any activities which may increase employee effectiveness and thus benefit the employer are not worktime activities under FLSA."  *Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1163 (D.C. Cir. 1975); *see also Loc. 1605 Amalgamated Transit Union, AFL-CIO v. Cent. Contra Costa Cty. Transit Auth.*, 73 F. Supp. 2d 1117, 1124 (N.D. Cal. 1999) (that the employer "received incidental benefits" from workers' collective bargaining activities and paid them for time spent in negotiations before a strike began does not mean that negotiating activities "after the strike were pursued primarily for [the employer's] benefit").  As with *Bonilla*, Plaintiffs ignore these and other cases discussed in Amazon's brief.  *See* Mot. 7.

The FLSA does not "pursue[] its remedial purpose at all costs"; its terms are to be given a "fair reading," not contorted to achieve one side's preferred outcome.  *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (quotation marks omitted).  Yet that is precisely what Plaintiffs urge the Court to do.  The COVID-19 screenings alleged by Plaintiffs do not constitute compensable "work" under the FLSA because they are not performed primarily for Amazon's benefit.

      **b.**      **COVID-19 Screening Is "Preliminary to" Associates' Principal Activities**

Plaintiffs stray even further afield from the proper test for whether an activity is compensable in arguing that COVID screenings are "integral and indispensable" to the principal work of Amazon's fulfillment center associates.  *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014), is determinative here.  *Busk* explained that "an activity is not integral and indispensable to an employee's principal activities unless it is *an intrinsic element of those activities* and one with which the employee *cannot dispense if he is to perform those activities*."  *Id.* at 35 (emphases added).  The Court held that security screenings of Amazon workers who "retrieve products from warehouse shelves and package those products for shipment to Amazon customers" were not compensable because "[t]he screenings were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment" and the company "could have eliminated the screenings altogether without impairing the employees' ability to complete their work."  *Id.*  Even where a pre-shift screening is done to ensure employee safety, it is not compensable if it is not integral and indispensable to the employees' principal activities.  *Id* at 35–36.  Plaintiffs here do the same tasks as in *Busk*.  FAC ¶¶ 24–25.  Just as with the

security screening in *Busk*, the alleged COVID-19 screening is not an intrinsic element of picking and packaging items, nor is screening indispensable to picking and packaging. COVID-19 screening is not "tied to the productive work that the employee is *employed to perform*." *Busk*, 574 U.S. at 36. COVID-19 screening is a general precaution required by the State of California for nearly *all* employers, long recommended by the CDC for *all* employers, and not tied to *any* particular work activities. *See* Mot. 4–5, 10. In fact, government screening recommendations are not limited to *employees*. For example, California says that child care "[p]roviders must implement screening procedures for all staff *and children* before they enter the facility." Ex. 1 at 26 (emphasis added). Surely children are not performing work when they are screened for COVID-19 before entering a day care facility.

Other decisions illuminate *Busk*'s reasoning. For example, in *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586 (2d Cir. 2007), the court held that lengthy, rigorous security screenings at a nuclear power plant were not "integral and indispensable" to the work of the plant's employees. The court noted that the screenings were not in any way tied to the work of the employees "because the security measures at entry are required (to one degree or another) for everyone entering the plant—regardless of what an employee does (servicing fuel rods or making canteen sandwiches)—and including visitors." *Id*. at 594. The exact same can be said of Amazon's COVID screening procedures, which are not in any way uniquely connected to the particular type of work associates do in Amazon's fulfillment centers and are required for everyone entering the facility. *Aguilar v. Management & Training Corp.*, 948 F.3d 1270, 1278 (10th Cir. 2020), also applies the *Busk* rule, holding that security screenings undergone by detention guards employed at a prison were compensable because those screenings were directly "tied to" the work they perform. *Aguilar* illustrates the exception to the *Busk* rule: while "an employer's general desire to keep its employees safe has no clear or obvious connection to the particular activities those employees are employed to perform," the work of detention guards is security-oriented. *Id.* There was thus the necessary direct nexus between the screenings and the specific duties that the workers performed. That is patently not the case with respect to COVID-19 screenings and Plaintiffs' work duties. The donning and doffing cases Plaintiffs cite only bolster this conclusion because the protective gear the workers wore was job-related and tied directly to the work tasks they

Gibson, Dunn & Crutcher LLP

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS

performed. *Steiner*, 350 U.S. at 250; *Alvarez*, 339 F.3d at 903.  Plaintiffs' reliance on *Sanford v. Pre-ferred Staffing, Inc.*, 447 F. Supp. 3d 752 (E.D. Wis. 2020), is also unavailing.  That case held that, under *Busk*, time spent "wait[ing] before and after their shifts, tak[ing] buses to and from the factory, and receiv[ing] some orientation instructions prior to beginning work" is *not* compensable. *Id.* at 755.

Unable to satisfy the *Busk* standard, Plaintiffs (at 13) offer a different rule: preliminary or post-liminary activity is compensable if it is "necessary to ensure that the . . . workers could perform their work safely."  That is not the law.  Plaintiffs' "test is nowhere to be found in the [*Busk* majority] opinion itself," but rather is drawn from Justice Sotomayor's concurrence—as explained in Amazon's Motion, but ignored by Plaintiffs. *Dinkel v. MedStar Health Inc.*, 99 F. Supp. 3d 37, 41–42 (D.D.C. 2015).

Because they lack any caselaw support, Plaintiffs rely on informal, non-binding guidance documents issued by the U.S. Department of Labor ("DOL") that are not entitled to deference. *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) ("[O]pinion letters . . . do not warrant Chevron-style deference.").  The DOL guidance cited by Plaintiffs also has little persuasive force.  The rule articulated in the Wage & Hour Division opinion letters was squarely rejected in *Busk*.  Four of the five letters provide the conclusory statement that, "[g]enerally, whenever an employer imposes special requirements or conditions that an employee must meet before commencing or continuing productive work, the time spent in fulfilling such special conditions is regarded as indispensable to the performance of the principal activity the employee is hired to perform."  1998 WL 852652, at *1 (Jan. 26, 1998); 1997 WL 998042, at *1 (Oct. 7, 1997) (same); 1997 WL 998039, at *1 (Sept. 15, 1997) (same); 1989 WL 1595239, at *1 (Aug. 2, 1989) (similar).  The fifth states only that "time spent in obtaining such a physical examination [is] compensable."  2001 WL 1558768, at *4 (Feb. 16, 2001). *Busk* is controlling over these decades-old opinion letters that apply the wrong test for compensable time under the FLSA.

Nor do Plaintiffs make any effort to explain how COVID-19 screenings are analogous to the psychiatric examinations for police officers or drug testing for truck drivers discussed in the letters.  As the letters themselves acknowledge, the rule they articulate is a "[g]eneral[]" one and whether a given activity is compensable is context-specific. *See, e.g.*, 1998 WL 852652, at *1 ("This opinion is based exclusively on the facts and circumstances described in your request . . . .  Existence of any other factual or historical background not contained in your request might require a different conclusion than

the one expressed herein.").  Time spent by certain employees getting drug tested—such as workers who drive large trucks on the interstate highway system and are therefore required to be drug tested by the Department of Transportation—might be compensable in some circumstances, whereas time spent undergoing drug testing by employees whose jobs do not have the same safety considerations might not be.  Plaintiffs do not engage with these distinctions, or explain why drug testing truck drivers is comparable to COVID-19 screenings for all types of workers.

Plaintiffs similarly play fast and loose with a set of FAQs issued by DOL regarding the compensability of COVID-19 screenings, claiming (at 15) that DOL said that "the time spent in the COVID-19 screenings should be compensated by employers."  That is not what DOL said.  DOL stated that many (but not all) employees might be owed compensation for screenings and that the compensability of screening time depends on the job.  Dkt. 26-8 at 5.  The example DOL gave—"a nurse who performs direct patient care services at a hospital" (*id.*)—actually undercuts Plaintiffs' position.  The work of a nurse caring for patients is health-oriented and involves the provision of care to patients, including patients suffering from COVID-19.  COVID-19 screenings might be integral and indispensable to that nurse's principal work activities.  But COVID-19 screenings for Amazon associates are in no way a function of or directly related to the particular job duties they perform.  In any event, the FAQ's persuasive power is limited, because its reasoning is "cursory" and "offer[s] no explanation for its conclusion" beyond providing the one example concerning nurses.  *Xiao Lu Ma v. Sessions*, 907 F.3d 1191, 1196 (9th Cir. 2018).  And, like Plaintiffs, the FAQ invokes the wrong test, quoting (without attribution) Justice Sotomayor's concurrence in *Busk*, instead of the majority opinion.  *See* Mot. 11–12.

### c.  Time Spent in COVID-19 Screenings Is *De Minimis*

Finally, Plaintiffs have not alleged facts sufficient to plausibly support an inference that time spent *actually in* COVID-19 screening is more than *de minimis*.  Plaintiffs insist (at 19–20) that they have "stated the amount of time it takes to complete the COVID-19 screening."  That is not accurate.  Plaintiffs have alleged that the time they spent in COVID-19 screening *and* waiting in line for that screening takes "approximately 10 to 15 minutes on average."  FAC ¶ 32; *see also id.* ¶ 30 (including "form[ing] a line" as part of "[t]he second method" for COVID-19 screening).  Plaintiffs' allegations fold waiting time into the screening process, obfuscating (and necessarily inflating) how much time

Plaintiffs are alleging COVID-19 screening itself actually takes.  Further, it is undisputed that time spent waiting in line is not compensable under the FLSA.  *See* Mot. 13; 29 C.F.R. § 790.7(g) (time spent "checking in and out and waiting in line to do so" are "preliminary" and "postliminary" activities); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 41–42 (2005) (that time spent waiting to don protective gear "is two steps removed from the productive activity on the assembly line").  Removing waiting time from the equation, Plaintiffs have alleged nothing to support the conclusion that "the matter in issue concerns" anything more than "a few seconds or minutes of work."  *Alvarez*, 339 F.3d at 903 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946)).

The Ninth Circuit typically considers three factors to determine if an activity is *de minimis*: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work."  *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984).  Although "[n]o rigid rule can be applied with mathematical certainty," "[m]ost courts have found daily periods of approximately 10 minutes de minimis even though otherwise compensable."  *Id.* at 1062; *see Young v. Beard*, 2015 WL 1021278, at *11 (E.D. Cal. Mar. 9, 2015) ("Ten minutes often serves as a rule of thumb.").  "[A]s a matter of logic," it is clear that the aggregate time spent in COVID-19 screening is not significant, *Alvarez*, 339 F.3d at 904, as explained in Amazon's Motion, *see* Mot. 13–14.  Plaintiffs argue (at 20) that the screenings satisfy the third factor because they started after the pandemic began.  But that proves Amazon's point: the COVID-19 screenings are a short-term, emergency measure, meaning Plaintiffs' aggregate claims are not substantial enough to render the time spent in the screenings anything other than *de minimis*.  Finally, Plaintiffs now state (at 20) that "Amazon could have easily moved the time clocks to the entrance of the screening location to allow for the time to have been recorded."  Nothing in the FAC supports that assertion.  At *best*, "facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice."  *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

Plaintiffs' fallback argument (at 19) is that the *de minimis* rule "is inappropriate" to apply "at the 12(b)(6) stage."  But the cases Plaintiffs cite do not stand for that proposition.  In *Mitchell v. Acosta Sales, LLC*, 2011 WL 13309051, at *10 (C.D. Cal. June 9, 2011), the court allowed that a complaint

may show "that the time spent on the pre-shift activities was de minimis."  In *Walden v. Nevada ex rel. Nev. Dep't of Corrs.*, 2018 WL 1472715, at *8 (D. Nev. Mar. 26, 2018), it was alleged that the activities at issue "generally take 45 minutes" and thus the court "ma[d]e the reasonable inference that these activities, as alleged, are not *de minimis*."  And in *Whitaker v. Countrywide Fin. Corp.*, 2010 WL 4537098, at *3 n.1 (C.D. Cal. Nov. 1, 2010), the court found that "consideration of a factual record" was necessary under the circumstances present in that case.  And other courts have granted motions to dismiss on *de minimis* grounds.  *See, e.g.*, *Jackson v. AT&T Retirement Savings Plan*, 2019 WL 7753547, at *9 (W.D. La. Sept. 17, 2019) ("[Plaintiff's] allegations, even if assumed true, do not support a finding that the allegedly missed time was anything more than *de minimis*."); *Ceja-Corona*, 2013 WL 796649, at *7 (E.D. Cal.) (granting motion to dismiss where plaintiff failed to allege facts sufficient to show that time spent on activity was more than *de minimis*).

### 2.   COVID-19 Screenings Are Not Compensable Under California Law

Plaintiffs' assertions that COVID-19 screenings are compensable under California law fare no better.  They have not alleged that Amazon has the requisite level of control for COVID-19 screenings to constitute compensable work under California law.  As the California Supreme Court has explained, whether a required activity constitutes compensable time turns on "the location of the activity, the degree of the employer's control, whether the activity primarily benefits the employee or employer, and whether the activity is enforced through disciplinary measures."  *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1056 (2020).  COVID-19 screening is not primarily for Amazon's benefit, is required by California regulation (and has been strongly encouraged by both the state and federal governments), and takes place before employees fully enter onto the work premises.  *See* Mot. 15–17.

Plaintiffs' arguments to the contrary are rooted in basic misunderstandings of California law, non-binding and unpersuasive guidance from the California Department of Industrial Relations ("DIR"), and a recent district court decision from New Jersey applying New Jersey law that is irrelevant to Plaintiffs' claims under California law.  Plaintiffs primarily argue that *pre*-shift COVID-19 screenings are compensable because *Frlekin* concluded that the *post*-shift security screenings at issue there were compensable.  But the circumstances are substantially different.  The court in *Frlekin* emphasized that the exit security screenings' purpose was to detect and deter theft of the employer's property, which

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

is primarily in the employer's interest.  8 Cal. 5th at 1051.  COVID-19 screenings, on the other hand, are not done "primarily for the benefit of [Amazon]," *Madera Police Officers Ass'n v. City of Madera*, 36 Cal. 3d 403, 410 (1984), but rather as part of a nationwide public health campaign mandated by the government and for the benefit of associates and the entire community.

The court in *Frlekin* further noted that Apple exercised substantial control over employees during post-shift security screenings because, among other things, employees were confined to Apple's premises and could not leave work even though their shifts were over until the screenings were complete, which in some cases could take up to 45 minutes; and the screenings were invasive, requiring employees to open their bags and present items for inspection under Apple's close supervision and direction.  8 Cal. 5th at 1044, 1047.  None of those factors are present here.  The alleged COVID-19 screenings take place at the beginning of the shift, as associates are first entering the premises.  FAC ¶ 27.  The screenings are non-invasive; they involve a temperature check as associates pass through the facility's entryway and require employees to answer short questions.  FAC ¶ 30.  Associates' involvement is entirely passive, unlike Apple's bag check process.

A closer parallel to the COVID-19 screenings than the security screenings in *Frlekin* is the time employees spent traversing an access road on the employer's private property in *Griffin v. Sachs Electric Co.*, 390 F. Supp. 3d 1070 (N.D. Cal. 2019).[1]  *Griffin* concluded that time spent on the access road was not compensable, despite the fact that the employees were already on the employer's premises and subject to a variety of restrictions on what they were permitted to do, in part because the rules were "safety-oriented," comparable to general rules that everyone must follow on an employer's premises regardless of whether they are being paid, and in many cases imposed by California law, rather than the employer.  *Id*. at 1086, 1089–90.  Just as in *Griffin*, Amazon's COVID-19 screening is a basic safety restriction mandated or strongly recommended by the government.

A magistrate judge in this District recently reached a similar conclusion, finding that time spent by Amazon associates after badging in but before clocking in was not compensable because they had not fully entered onto the premises and were therefore not meaningfully restricted in the activities in

---

[1]  Contrary to Plaintiffs' assertion (at 9), it is immaterial that *Griffin* was decided on summary judgment.  Amazon has cited *Griffin* for its illustration of well-established principles of California law.

which they could engage. *Trevino v. Golden State FC LLC*, 2021 WL 2328414, at *10 (E.D. Cal. June 8, 2021) (McAuliffe, M.J.) (citing *Griffin*, 390 F. Supp. 3d at 1091).  The same is true of COVID-19 screening.  Like in *Trevino* (and *Griffin*), associates can choose when they arrive at the worksite and are subject to only minimal, generally applied requirements before they clock in for their shifts.  *Id.*; *see* FAC ¶¶ 26–29.

Plaintiffs' reliance on informal FAQs posted on the DIR website is unavailing.  The FAQs state, with little explanation, that temperature checks of employees are compensable under California law.  DIR contends that, because COVID-19 screening is required by the employer, employees are necessarily under the control of the employer during those screenings.  That contradicts binding precedent: the "fact that the employer requires the employees' activity" is not "determinative," *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 587 (2000), but merely "probative," *Frlekin*, 8 Cal. 5th at 1056.  The FAQs are cursory, erroneous, and thus entitled to no weight.  *Bonnell v. Med. Bd.*, 31 Cal. 4th 1255, 1265 (2003) (no weight given to "clearly erroneous" agency interpretations).  DIR guidance is not legally binding in any event. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1029 n.11 (2012).

Plaintiffs similarly stumble with their invocation of a recent District of New Jersey decision granting leave to amend to add COVID-19 screening claims against Amazon under New Jersey law.  *Vaccaro v. Amazon.com.dedc, LLC*, 2021 WL 1022699 (D.N.J. Mar. 17, 2021).  *Vaccaro*'s application of New Jersey law is irrelevant to the question of compensability under California law.  Plaintiffs' assertion that "New Jersey law applies a stricter standard for determining compensable time" is an oversimplification.  *Vaccaro* explained that, under New Jersey law, "[t]he issue is the same whether the screenings take place pre-shift or post-shift." *Vaccaro*, 2021 WL 1022699, at *4 n.2.  But under California law, whether screening is pre-shift or post-shift can be critical to determining compensability.  *See Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 571 (C.D. Cal. 2008) (A "pre-shift security line requirement . . . may be more akin to time spent in an ordinary commute.").  As explained above, the fact that Apple's security screenings were post-shift underlaid much of the analysis in *Frlekin*.

Finally, Plaintiffs (at 5–6) vaguely suggest that Amazon's COVID-19 screenings are compensable under California's "suffered or permitted to work" test.  But that test only applies where the fact that the employee was engaging in an activity that constitutes "work" is not in dispute.  *See Saini v.*

*Motion Recruitment Partners, LLC*, 2017 WL 1536276, at *11 (C.D. Cal. Mar. 6, 2017) ("The test lacks relevance where the primary issue is whether the plaintiff's activities constituted work in the first place."); *Gunawan v. Howroyd-Wright Emp't Agency*, 997 F. Supp. 2d 1058, 1064 (C.D. Cal. 2014) ("suffered or permitted the individual to work" concerns "from whom the employees could recover," not "whether work was performed").  Whether time spent in a COVID screening is "work" is precisely the issue here, not whether Amazon was aware that associates were undergoing COVID-19 screenings.  Moreover, there is no allegation in the FAC, nor could there be, that Amazon associates were hired to undergo COVID-19 screenings or that their job duties—*i.e.*, their "work"—included such screenings.

## B.    Plaintiffs Have Failed to State a Claim for Unpaid Overtime (Claims 2 & 6)

Even if Plaintiffs' time spent in and waiting for COVID-19 screenings were compensable, Plaintiffs have failed to state a claim for unpaid overtime.  Plaintiffs "must allege that [they] worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek."  *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644–45 (9th Cir. 2014).  Plaintiffs allege that they worked overtime some weeks.  FAC ¶¶ 24–25.  But Rivera does not allege a "given workweek" when she was not paid for overtime.  Amazon does not argue that Plaintiffs "must identify in their Complaint the specific number of overtime hours worked each week."  Opp. 22.  Rather, Plaintiffs do not allege "the amount of overtime they believe they are owed," *Nicolas v. Uber*, 2021 WL 2016161, at *9 (N.D. Cal. May 20, 2021), because the allegations do not support the inference that every time they went through COVID-19 screening added to their overtime accrual.

## C.    Plaintiffs' Wage Statement Claim Is Derivative, They Lack Standing to Bring the Claim, and the FAC Fails to Adequately Allege the Essential Elements of the Claim (Claim 3)

As explained in Amazon's Motion, Plaintiffs' wage statement claim under California Labor Code section 226(a) fails because (1) it is derivative of claims 1 and 2, neither of which are cognizable; (2) Plaintiffs lack Article III standing; (3) Plaintiffs have failed to state a valid claim entitling them to relief because all inaccuracies they allege in the wage statements are based on disputed payments; and (4) the allegation that Amazon knowingly and intentionally violated the law is conclusory.

*First*, Plaintiffs do not dispute that the section 226 claim is derivative of claims 1 and 2 and that the section 226 claim should be dismissed if claims 1 and 2 are dismissed.  *See Tavares v. Cargill Inc.*,

2019 WL 2918061, at *7 (E.D. Cal. July 8, 2019) (Drozd, J.) (dismissing derivative wage statement claims where underlying claims failed).

*Second*, the FAC lacks sufficient allegations to show that Plaintiffs have Article III standing to bring a claim based on the supposed inaccuracies of their wage statements.  A violation of a statute is not itself sufficient to show a cognizable injury: "[U]nder Article III, an injury in law is not an injury in fact.  Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 2021 WL 2599472, at *8 (U.S. June 25, 2021).  Plaintiffs say (at 24) that the FAC alleges an injury, pointing to the allegation that they have been "deprived . . . of records necessary to calculate with precision the compensation due to them." FAC ¶ 88.  But the purported deprivation concerns hours allegedly worked for which Plaintiffs were *not* paid; on the other hand, "[t]he purpose of section 226 is to *document* the *paid* wages to ensure the employee is fully informed regarding the calculation of those wages." *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1337 (2018) (quotation marks omitted).  Plaintiffs' asserted injury is not "the sort of real harm[] that § 226(a) is designed to prevent." *Magadia v. Wal-Mart Assocs.*, — F.3d —, 2021 WL 2176584, at *9 (9th Cir. May 28, 2021) (quotation marks omitted).  Rather, the Ninth Circuit has held that a plaintiff has standing to assert a section 226 claim if he is "unable to determine" whether he has been "underpa[id]." *Id.*  Plaintiffs have not been prevented from determining that they (allegedly) have been underpaid.  Nor have Plaintiffs identified any other "downstream consequences" from the alleged information deprivation, and a mere risk of (some unstated) future harm is not sufficient to support a claim for damages. *TransUnion*, 2021 WL 2599472, at *12–13, 15 (quotation marks omitted).  The cases cited by Plaintiffs do not even address Article III standing to seek statutory penalties under section 226. *Harper v. Charter Commc'ns, LLC*, 2020 WL 916877, at *2–3 (E.D. Cal. Feb. 26, 2020); *Morrelli v. Corizon Health, Inc.*, 2019 WL 918210, at *9–10  (E.D. Cal. Feb. 25, 2019).[2]

*Third*, a failure to display disputed wages on a wage statement does not entitle an employee to a presumption of injury under section 226. *See* Cal. Lab. Code § 226(e)(2).  If the alleged inaccuracy

---

[2]  To the extent the allegation that wage statements did not "accurately reflect . . . hourly rates" (FAC ¶ 98) is intended to mean that the rates on the wage statements are inaccurate, that allegation is conclusory and supported by no alleged facts.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS

underlying a claim under section 226 is based on disputed wages, an "individualized showing[] of actual harm" is needed.  *Kazi v. PNC Bank, N.A.*, 2021 WL 965372, at *21 (N.D. Cal. Mar. 15, 2021); *see also Maldonado*, 22 Cal. App. 5th at 1337.  *Harper* is inapposite, because the plaintiffs there alleged more than the omission of disputed wages.  *See* No. 2:19-cv-00902-WBS-DMC, Dkt. 45, ¶ 52 (E.D. Cal. Dec. 12, 2019) (first amended complaint).  And *Morrelli*'s suggestion that not including disputed wages triggers the presumption of injury is incorrect, as *Kazi* explained.

*Fourth*, the FAC offers "nothing more than a single conclusory statement that Defendant ['knowingly and intentionally'] failed to provide accurate wage statements, without any facts to support the inference that Defendant was aware of the information required on a wage statement as it pertained to Plaintiff[s] and the putative class, but intentionally chose to omit it."  *Dawson v. Hitco Carbon Composites, Inc.*, 2017 WL 7806358, at *6 (C.D. Cal. May 5, 2017); *see Brown v. Wal-Mart Stores, Inc.*, 2013 WL 1701581, at *8 (N.D. Cal. Apr. 18, 2013) (granting motion to dismiss where plaintiff alleged only that defendant acted "knowingly and willfully").  Plaintiffs cite cases suggesting that Rule 9(b) countenances conclusory allegations of intent without supporting factual allegations, but the Supreme Court has rejected that argument.  As explained in *Ashcroft v. Iqbal*, Rule 9 "does not give [plaintiffs] license to evade the less rigid—though still operative—strictures of Rule 8," and "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."  556 U.S. 662, 686–87 (2009).

## D.   Plaintiffs' Claim for Waiting Time Penalties Is Also Inadequately Alleged (Count 4)

Plaintiffs' claim for waiting time penalties under California Labor Code section 203 should be dismissed for multiple reasons.  Plaintiffs do not dispute that this claim is derivative of their claims that they were owed gap and overtime pay under sections 201 and 202 and that, if "Plaintiff's underlying causes of actions fail, this derivative claim [for waiting time penalties] fails as well."  *Krauss v. Wal-Mart, Inc.*, 2019 WL 6170770, at *3 (E.D. Cal. Nov. 20, 2019).

Moreover, Plaintiffs offer merely conclusory allegations that Amazon knowingly and willfully violated sections 201 and 202, *see, e.g.*, FAC ¶ 104, even though that is an essential element of a claim for waiting time penalties under section 203.  That "conclusory allegation merely parrots the statutory language without providing any details to suggest that Defendants intentionally failed to pay upon

1   termination the wages allegedly owed to Plaintiff." *Johnson v. Winco Foods, LLC*, 2018 WL 6017012,

2   at *16 (C.D. Cal. Apr. 2, 2018).  Plaintiffs argue (at 25) that Amazon's supposed awareness of DIR

3   guidance, which is not alleged in the FAC, "demonstrates that Amazon acted knowingly or willfully."

4   But as explained above, the DIR guidance is not binding, not due deference, and legally erroneous.  At

5   the very least, therefore, the FAC's claims are plainly subject to good faith disagreement.  Cal. Code

6   Regs. tit. 8, § 13520 ("[A] good faith dispute that any wages are due will preclude imposition of waiting

7   time penalties under Section 203."); *see also Diaz v. Grill Concepts Servs., Inc.*, 23 Cal. App. 5th 859,

8   868 (2018) ("[A]n employer's failure to pay is not willful if that failure is due to . . . uncertainty in the

9   law.").  Plaintiffs have cited no court decision anywhere in the country holding that time spent waiting

10  for and undergoing COVID-19 screening is compensable under either the FLSA or California law.

11  **E.   Plaintiffs' Claim Under the UCL Is Derivative of Plaintiffs' Other Failed Claims and**
       **Plaintiffs Have Not Alleged that the Available Legal Remedies Are Inadequate (Claim 5)**

12

13           Plaintiffs do not dispute that their UCL claim is entirely derivative of their other claims for

14  relief and should be dismissed if their other claims are dismissed.  *See, e.g.*, *Price v. Starbucks Corp.*,

15  192 Cal. App. 4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative

16  UCL . . . claim[ ] also fails.").  The UCL claim also fails because Plaintiffs expressly claim entitlement

17  to numerous remedies at law and make no allegations that those remedies are inadequate.  The Ninth

18  Circuit recently explained that this principle requires district courts to dismiss claims for equitable

19  relief under the UCL absent a showing by the plaintiff that she "lacks an adequate remedy at law."

20  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also Nationwide Biweekly*

21  *Admin., Inc. v. Superior Court*, 9 Cal. 5th 279, 292 (2020) (holding that UCL claims "are equitable in

22  nature").  Plaintiffs' reliance on *Morrelli* is misplaced.  That case predates both *Sonner* and *Nationwide*

23  and does not even address the adequacy of the available legal remedies.[3]

24                                    **III. CONCLUSION**

25           Amazon respectfully requests that the Court dismiss the entirety of Plaintiffs' FAC.

26

27   _____

28   [3] Plaintiffs' brief (at 25) disclaims any request for injunctive relief, notwithstanding the FAC's de-
        mand for "all other injunctive and preventive relief authorized by [the UCL]."  FAC ¶ 110.

Dated: June 29, 2021

JASON C. SCHWARTZ
GIBSON, DUNN & CRUTCHER LLP


By:   */s/ Jason C. Schwartz*_____


*Attorney for Defendant Amazon.com Services LLC*

16                    DEFENDANT'S REPLY IN SUPPORT OF
                              MOTION TO DISMISS

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2021, I caused to be electronically filed the foregoing **REPLY IN SUPPORT OF DEFENDANT AMAZON.COM SERVICES LLC'S MOTION TO DISMISS** with the Clerk of the Court via CM/ECF. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing systems.

Dated: June 29, 2021

JASON C. SCHWARTZ
GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Jason C. Schwartz*

*Attorney for Defendant Amazon.com Services LLC*