UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER BOONE, et al., | Case No.  1:21-cv-00241-KES-BAM |
| Plaintiffs, | Member Case: No. 1:22-cv-00146-NODJ-BAM |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| AMAZON.COM SERVICES, LLC, | |
| Defendant. | (Doc. 89) |

Currently pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiffs Heather Boone, Roxanne Rivera, and Cristian Barrera on February 16, 2024.  (Doc. 89.)  Defendant Amazon.com Services, LLC did not file an opposition.  The motion was submitted for decision to the assigned Magistrate Judge following the stipulation and consent of the parties.  (Docs. 90, 91.)  A hearing on the motion was held via Zoom video conference on March 29, 2024, before the Honorable Barbara A. McAuliffe. Counsel Don Foty appeared by Zoom video on behalf of Plaintiffs.  Counsel Bradley Hamburger and Andrew Kilberg appeared by Zoom video on behalf of Defendant.

At the hearing, the Court and parties discussed the proposed settlement terms and identified revisions to the proposed notice of settlement.  The Court requested that Plaintiffs submit an amended proposed notice of settlement and supplemental briefing on the following

issues:  (1) designation of class representatives; (2) Rule 23 conditional class certification for settlement purposes; (3) procedures for class notice; (4) a summary or cursory lodestar for anticipated attorneys' fees; (5) documentation of costs; (6) appointment of Rust Consulting, Inc. as Settlement Administrator; and (7) information supporting proposed enhancement payments to the class representatives.  (Doc. 95.)  Plaintiffs filed supplemental briefing and a revised proposed class notice on May 3, 2024.  (Doc. 104.)

For the following reasons, the Court GRANTS the motion for preliminary approval of class action settlement and sets a Final Approval Hearing for **October 29, 2024, at 9:00 AM** in Courtroom 8 (BAM) before Magistrate Judge Barbara A. McAuliffe.

## BACKGROUND

**A.  Relevant Procedural History**

This is a class and collective action initially brought under the Fair Labor Standards Act ("FLSA") and California law. On February 23, 2021, Plaintiffs Heather Boone and Roxanne Rivera filed their complaint against Amazon.com Services, LLC ("Amazon").  Plaintiffs alleged that Amazon implemented an illegal policy requiring its non-exempt workers to undergo a COVID-19 screening each shift without pay.  Plaintiffs claimed this examination constituted compensable time and they therefore forwarded claims for (1) violations of the California Labor Code for failure to pay for all hours worked, failure to pay overtime, failure to furnish timely, accurate, itemized wage statements, and failure to pay all wages upon separation, (2) violation of California's Unlawful/Unfair Competition Law ("UCL"), and (3) and failure to pay overtime under the FLSA.  (Doc. 1.)

Plaintiffs filed a First Amended Complaint on May 14, 2021, and a Second Amended Complaint on January 14, 2022, which added a representative claim under the Private Attorneys General Act ("PAGA"). (Docs. 23, 36.)

On March 11, 2022, the district court dismissed Plaintiffs' claim for violation of the UCL with leave to amend, but denied the motion to dismiss in all other respects.  (Doc. 39.)  Following Plaintiffs' notice that they did not intend to file a third amended complaint, Amazon answered the Second Amended Complaint on April 11, 2022.  (Doc. 43.)  Amazon also filed a motion for

1   certificate of appealability regarding the FLSA claim, which was not dismissed by the district

2   court.  (Doc. 44.)

3       On April 15, 2022, the Court continued various dates, including the briefing schedule on

4   the motion for certificate of appealability, pending the parties' scheduled mediation on September

5   8, 2022.  (Doc. 49.)  The dates for a scheduling conference and briefing were continued two

6   additional times.  (Docs. 54, 58.)

7       On March 10, 2023, Plaintiffs filed a motion for appointment of interim class counsel.

8   (Doc. 62.)  Plaintiffs sought the appointment of the law office of Hodges & Foty, LLP as interim

9   class counsel, indicating that ten months after filing this lawsuit, another law firm filed a similar

10  action that seeks to represent the same class for the same claims in the matter of *Barrera v.*

11  *Amazon.cm Services, LLC*, No. 1:22-cv-0146-ADA-BAM.  The Court required Plaintiffs to

12  provide notice of the motion to counsel in the *Barrera* matter and required the parties to address

13  why the actions should not be consolidated.  (Doc. 64.)

14      On May 8, 2023, pursuant to the stipulation of the relevant parties, the district court

15  consolidated the *Barrera* matter with this action.  (Doc. 70.)

16      On May 11, 2023, the Court held a status conference with the parties to address

17  consolidation, the motion to appoint interim counsel, the motion for certificate of appealability,

18  and potential settlement.  (Doc. 72.)

19      On May 30, 2023, the Court issued findings and recommendations that recommended

20  appointing Hodges & Foty, LLP as interim class counsel.  (Doc. 74.)

21      On June 6, 2023, the parties filed a stipulation that Amazon's motion to dismiss (or in the

22  alternative stay) *Barrera* is moot and that Amazon has preserved all its issues raised in that

23  motion.  (Doc. 75.)

24      On August 22, 2023, the parties filed a notice of settlement.  (Doc. 76.)  Thereafter, the

25  Court set a deadline for filing dispositional papers, which was continued multiple times, and

26  vacated all other dates and matters.  (Doc. 77.)

27      On October 18, 2023, the district court adopted the pending findings and

28  recommendations and granted the motion to appoint Hodges & Foty, LLP as interim class

counsel.  (Doc. 80.)

On February 16, 2024, with Amazon's consent, Plaintiffs Boone, Rivera, and Cristian Barrera filed a Third Amended Complaint, which removed their collective action claims brought under the FLSA.  (See Doc. 88; Doc. 89-1, SA ¶ 40.)  On the same date, Plaintiffs filed the instant motion for preliminary approval of class action settlement.  (Doc. 89.)  By the motion, Plaintiffs seek: (1) preliminary approval of the terms of the settlement and a stay of all non-settlement related activity in this case; (2) approval of the Notice Packet to be sent to the class members: (3) approval of the parties' agreed-upon deadlines for the class members to exercise their rights in connection with the proposed Settlement; and (4) entry of a Preliminary Approval Order setting a Final Approval Hearing and directing the Notice Packet to be sent to the class members.  (*Id.* at 4.)

**B.  Events Leading to Settlement**

On April 6, 2023, the parties attended a full-day mediation with Lisa Klerman, an experienced professional mediator. The matter did not resolve, but the parties continued negotiations with the assistance of Ms. Klerman.  The process culminated in a tentative settlement at the end of August 2023.  (Doc. 89 at 8.)

**1.      Settlement of Class Claims**

Plaintiffs negotiated the settlement of behalf of all current and former non-exempt employees of Amazon in California who underwent one or more COVID-19 temperature screenings.  (Doc. 89-1, Class Action Settlement Agreement and Release ("SA" or "Settlement Agreement") ¶ 39.)

Plaintiffs also negotiated settlement on behalf of non-California FLSA opt-in plaintiffs— Taylor Bouie, Camryn McSweeney, Omar Ramirez Vasquez, and George Werito—related to allegations of the failure to pay overtime in violation of the Fair Labor Standards Act.  (SA ¶¶ 15, 20.)

Further, Plaintiffs negotiated settlement of the PAGA claims on behalf of all non-exempt employees of Amazon in California during the relevant PAGA period who underwent one or more COVID-19 temperature screenings.  (SA at 5 and ¶¶ 25, 26.)

### 2. Other Related Cases

Plaintiff Barrera also has a separate action under PAGA pending in Orange County Superior Court, based on the same allegations:  *Barrera v. Amazon.com Services LLC* (Orange County Sup. Ct. Case No. 30-2022-01242167-CU-OE-CXC).  (Doc. 89 at 7.)  As part of the settlement, the parties agree that the *Barrera* state court action will be dismissed with prejudice within fourteen days after entry of a final order approving the Settlement Agreement.  They also will make all reasonable efforts to ensure that the state court action remains stayed pending approval of the settlement agreement.  (*See* Doc. 89-1, SA ¶ 81.)

## C. Summary of Proposed Settlement

### 1. Settlement Class

Plaintiffs seek to certify the following settlement class, which Amazon does not challenge:

> All current and former non-exempt employees of Amazon.com Services, LLC in California who underwent one or more COVID-19 temperature screenings during the period of April 1, 2020 through July 17, 2021 for individuals who did not work at the facility known as OAK4 in Tracy, California, or the period of April 1, 2020 through February 23, 2022 for those individuals who worked at the facility known as OAK4 in Tracy, California.

(Doc. 89-1, Ex. A to Settlement Agreement, Notice of Class Action Settlement ¶ A.)  There are believed to be approximately 250,000 Settlement Class Members.  (Doc 89-2, Ex. A to Foty Decl. at 10; Doc. 104 at 9.)

### 2. Monetary Relief Under the Settlement

Amazon has agreed to pay $5,500,000.00 to settle this action (the "Gross Settlement Fund"). (SA at ¶ 15.)  The $5,500,000 Gross Settlement Fund is to be allocated as follows:

(1) Class Representative Enhancement Payments of $10,000 to each of the three named plaintiffs for a total of $30,000.  (SA ¶¶ 7, 45.)

(2) Non-California Payments totaling $200, representing $50 to each of the four Non-California FLSA Opt-In Plaintiffs:  Taylor Bouie, Camryn McSweeney, Omar Ramirez Vasquez, and George Werito.  (SA ¶¶ 20, 21, 46.)

(3) Class Counsel Award of attorneys' fees of not more than one third (1/3) of the Gross Settlement Fund ($1,833,333.33) and costs and expenses not to exceed

$100,000.   (SA ¶¶ 2, 44.)

(4) Settlement Administration Costs not to exceed $392,341.00 to the settlement administrator.  (SA ¶ 37.)

(5) The PAGA Settlement Amount of $100,000 to be allocated as follows:  (1) $75,000 California Labor and Workforce Development Agency ("LWDA") penalty; and (2) $25,000 employee payment to PAGA settlement members on a pro rata basis based on the number of weeks worked or workweeks during the PAGA  period.  (SA ¶¶ 25, 48.)

(*See* SA ¶ 19 (defining "Net Settlement Amount").)

**3.  Net Settlement Amount**

If the allocations are awarded in full, the Net Settlement Amount available for distribution is an estimated $3,044,125.67.  Amazon maintains no reversionary right to any portion of the Net Settlement Amount.  (SA ¶¶ 43, 49.)  If the Court reduces the enhancement payments, the non-California payments, the class counsel award, the PAGA settlement amount, and/or the settlement administration costs, then the Net Settlement Amount will increase and will be distributed to participating class members.  (*Id.*)  No portion of the Net Settlement Amount will revert to Amazon.

The settlement share for each participating class member will be calculated on a pro rata basis depending on the number of "weeks worked" or "workweeks" (defined as any calendar week during the Class Period) in which a class member performed at least one day of work for Amazon.  (SA ¶ 50.)  Individual PAGA payments will be calculated and apportioned from the 25% portion of the PAGA settlement amount on the same basis.  (SA ¶ 50.)

Federal Rule of  Civil Procedure 23 ("Rule 23") class members will not be required to submit a claim form to participate and receive their settlement amount, but they may submit a request to opt out. (SA ¶¶ 50, 60.)  Settlement checks will be valid for 180 days.  If a check remains uncashed, then the funds from the uncashed check will be sent to the State Controller's Office under the Unclaimed Property Law Statutes.  (SA ¶ 69.)

///

**4.  Scope of Release**

"Released Class Claims" means all claims, actions, demands, causes of action, suits, debts, obligations, demands, rights, liabilities, or legal theories of relief, that are based on the facts and legal theories asserted in the operative complaints of the Actions, or which relate to the primary rights asserted in the operative complaints, including without limitation claims for (1) failure to pay all wages in violation of Labor Code §§ 204, 1194, 1194.2, 1197, 1197.1, 1198, (2) failure to pay overtime wages in violation of Labor Code §§ 510, 558, and IWC Wage Order 42001, (3) failure to provide accurate itemized wage statements in violation of Labor Code § 226, (4) failure to maintain accurate records in violation of Labor Code §§ 226 and 1174, (5) failure to pay wages upon separation of employment in violation of Labor Code §§ 201-203, 218, (6) engaging in unlawful, unfair and/or fraudulent business practices in violation of Business & Professions Code §§ 17200 et seq., and (7) failure to pay overtime wages in violation of 29 U.S.C. § 207. Notwithstanding the above, the Released Class Claims shall only include claims related to or arising from COVID-19 screenings. The period of the Released Class Claims shall extend to the limits of the Class Period. The res judicata effect of the Judgment will be the same as that of the Release.  (SA ¶ 31.)

Each class member who has not opted out shall release all claims during the class period related to or arising from COVID-19 screenings.  (SA ¶¶ 31, 63.a.)

Plaintiffs also agree to a general release of claims arising out of their employment with Amazon as of the date of execution of the Settlement Agreement.  (SA ¶ 63.c.)  Plaintiffs also agree to release all PAGA claims on behalf of themselves and all PAGA employees that accrued through the end of the PAGA period or that could have been asserted in this action based on claims related to or arising from COVID-19 screenings.  (SA ¶¶ 33, 63.b.)

**5.  Notice**

The parties have designated Rust Consulting, Inc. as the settlement administrator.  (SA ¶ 38.)  Based upon the declaration of Eric Bishop, a vice president in the labor and employment section, Rust Consulting is a highly experienced administration firm specializing in large-scale class action settlements.  Its services include project and data management, notification, contact

center and websites, claims processing, fund management and distribution, and tax reporting. (Doc. 104-6, Declaration of Eric Bishop  ¶ 4.)  Further, its dedicated labor and employment operations team has administered over 3,700 labor and employment cases involving wage-and-hour, FLSA, discrimination, ERISA, and PAGA matters.  (*Id.*, ¶ 9.)

Rust Consulting will notify class members as follows:  Within thirty (30) calendar days after preliminary approval by the Court, Amazon will provide a Class List to the Settlement Administrator.  Within thirty (30) calendar days after receiving the class list, the Settlement Administrator will send the notice to all settlement class members using the most current, known personal email addresses identified in the Class List.  If there is no personal email address in the Class List, then the Settlement Administrator will mail the notice by first class mail.  Within sixty (60) calendar days after emailing or mailing of the class notice, class members must opt-out or object to the settlement.   (SA ¶¶ 36, 55-56.)

**6. Opt-outs (Exclusions) and Objections**

There is no claim form for the Rule 23 class.  Class members are given sixty (60) calendar days after emailing or mailing of the notice to opt out in writing.  (SA ¶¶ 36, 60.)  As delineated in the revised class notice, requests for exclusion must be submitted to the Settlement Administrator.  (Doc. 104-1, Ex. 1 to Supplemental Brief, Revised Notice of Class Action Settlement ("Notice Packet") ¶ F.)  There is no right to exclude from the PAGA claims and any Rule 23 class member that timely submits a request for exclusion will still receive an individual PAGA payment representing their portion of the PAGA Settlement Amount.  (SA ¶ 60.)

Class members also are given sixty (60) calendar days to object to the Settlement Agreement.  (SA ¶ 66.)  Per the revised class notice, to object to the settlement, a class member must sign and file a written objection to the settlement by either (a) sending it to the Court with a postmark on or before the deadline; or (b) filing it with the Court on or before the deadline.  (Doc. 104-1, Ex. 1, Notice Packet ¶ G.)  Class members who object to the settlement may appear at the Final Approval Hearing with their own attorney.  (*Id.*)  Class members who fail to object will be deemed to have waived all objections and will be foreclosed from making any objections unless they appear at the Final Approval Hearing.  Class members who fail to object may still appear at

the Final Approval Hearing and present their objections.  (SA ¶ 66.)

Class members also have an opportunity to dispute the workweek information provided in their notice by contacting the Settlement Administrator.  (SA ¶ 59.)

**7.  PAGA Settlement**

The settlement contemplates a PAGA Settlement Amount of $100,000 to be allocated as follows:  (1) $75,000 LWDA penalty; and (2) $25,000 employee payment to PAGA settlement members on a pro rata basis based on the number of weeks worked or workweeks during the PAGA period.  (SA ¶¶ 25, 48.)

**8.  Class Representative Enhancement Awards**

Plaintiffs request that the Court approve enhancement payments of $10,000 to each of the three named plaintiff for a total of $30,000.  (SA ¶¶ 7, 45.)

According to Plaintiff Boone's declaration, she has actively participated in this case during the past three years by assisting the attorneys and their staff in the investigation and in information gathering.  (Doc. 104-3, Declaration of Heather Boone ("Boone Decl.") ¶ 6.)  The following matters describe her assistance to the attorneys in this matter:  providing information about her work experience with Amazon to her attorneys, reviewing her pay and work records, providing statements of factual details to her attorneys to assist them in understanding her work experience with Amazon and the potential damages, engaging in discussions with her attorneys and their staff about the potential lawsuit during the initial investigation, and after the case was filed, discussing the complaint with the attorneys and the claims that were alleged, consulting with her attorneys regarding the status of the case during the lawsuit, and discussing mediation with her attorneys and potential resolution of this action. (Boone Decl. ¶ 7.)  Plaintiff Boone further declares that she has spent considerable time trying to help the class of Amazon employees recover compensation from Amazon and believes that she has spent approximately 40 hours of her time trying to help vindicate the rights of the Class Members.  (Boone Decl. ¶ 9.) Plaintiff Boone also indicates that she was "at risk of negative reputational consequences and adverse employment action."  (Boone Decl. ¶ 13.)

According to Plaintiff Rivera's declaration, she likewise has actively participated in this

case during the past three years by assisting the attorneys and their staff in the investigation and in information gathering associated with this action.  (Doc. 104-4, Declaration of Roxanne Rivera ("Rivera Decl.") ¶ 6.)  Plaintiff Rivera describes her assistance to the attorneys in this matter to be similar to those engaged in by Plaintiff Boone.  (Rivera Decl. ¶ 7.)  Plaintiff Rivera declares that she has spent considerable time trying to help the class of Amazon employees recover compensation from Amazon and believes that she has spent approximately 55 hours of her time trying to help vindicate the rights of the Class Members.  (Rivera Decl. ¶ 9.)  Plaintiff Rivera also indicates that she was "at risk of negative reputational consequences and adverse employment action."  (Rivera Decl. ¶ 13.)

Plaintiff Barrera details similar time, efforts, and tasks in assisting with this action.  (Doc. 104-5, Declaration of Cristian Barrera ("Barrera Decl.") at ¶¶ 6-7.)  In particular, Plaintiff Barrera estimates spending approximately 20-30 hours of time trying to help vindicate the rights of the Class Members.  (Barrera Decl. ¶ 8.)  Additionally, Plaintiff Barrera asserts "considerable risk" by bringing this lawsuit and being "exposed to the negative reputational consequences of . . . being tied to a class action lawsuit against one of the largest companies in the country."  (Barrera Decl. ¶ 9.)

In addition to working with counsel, Plaintiffs have agreed to a full general release of their claims against Amazon, which is broader than the release that applies to the Class Members.  (SA ¶¶ 63.c. and 63.d.)

**9.  Attorneys' Fees and Costs**

Class Counsel (identified above) seek preliminary approval of their request for attorneys' fees in the amount of $1,833,333.33 (1/3 of the Gross Settlement Fund), and litigation costs not to exceed $100,000. (SA ¶¶ 2, 44.)

**10. Other Notable Terms of Settlement**

Amazon has the option to terminate the settlement agreement if ten percent (10%) or more of all individuals eligible to become members of the Settlement Class submit timely and valid Requests for Exclusion or are otherwise deemed by the Court not be bound by the Settlement. (SA ¶ 62.)  No portion of the Net Settlement Amount will revert to or be retained by Amazon.

1  (SA ¶¶ 43, 49.)

2  **LEGAL STANDARDS**

3  Court approval of a class action settlement requires a two-step process—a preliminary

4  approval followed by a later final approval. *See Tijero v. Aaron Bros., Inc.*, No. C 10–01089

5  SBA, 2013 WL 60464, at *6 (N.D. Cal. Jan. 2, 2013) ("The decision of whether to approve a

6  proposed class action settlement entails a two-step process."); *West v. Circle K Stores, Inc*., No.

7  CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) ("[A]pproval of

8  a class action settlement takes place in two stages."). At the preliminary approval stage, the court

9  "must make a preliminary determination on the fairness, reasonableness, and adequacy of the

10  settlement terms." Fed. R. Civ. P. 23(e). However, the "settlement need only be potentially fair,

11  as the Court will make a final determination of its adequacy at the hearing on Final Approval."

12  *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original);

13  *Gruber v. Grifols Shared Services North America, Inc*., No. 2:22-CV-02621-SPG-AS, 2023 WL

14  8610504, at *3 (C.D. Cal. Nov. 2, 2023).

15  **A.**   **Certification of the Class**

16  To certify a class, a party must demonstrate that all of the prerequisites of Federal Rule of

17  Civil Procedure 23(a), and at least one of the requirements of Rule 23(b) has been met. *Wang v.*

18  *Chinese Daily News, Inc*., 737 F.3d 538, 542 (9th Cir. 2013); *see also Valentino v. Carter-*

19  *Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Under Rule 23(a), the four requirements that

20  must be met for class certification are: "(1) the class is so numerous that joinder of all members is

21  impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

22  defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

23  representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P.

24  23(a)(1)–(4).  These factors are known as "numerosity," "commonality," "typicality," and

25  "adequacy," respectively.  Assessing these requirements involves "rigorous analysis" of the

26  evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, (2011).

27  Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk of

28  substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the

class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(1)– (3). Rule 23(b)(3) "requires only that the district court determine after rigorous analysis whether the common question predominates over any individual questions, including individualized questions about injury or entitlement to damages." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (en banc). Rule 23(c)(1) permits a court to make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date. *Dukes v. Wal-Mart Stores, Inc.*, No. C 01-02252 CRB, 2012 WL 4329009, at *4 (N.D. Cal. Sept. 21, 2012).

**B.    Court Approval of Class Settlement Agreements**

Rule 23(e)(2) mandates that any settlement in a class action may only be approved by the court after finding that the settlement is "fair, reasonable, and adequate" upon consideration of whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D). The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to consider the settlement as a whole. *Lane v. Facebook, Inc.,* 696 F.3d 811, 818–19 (9th Cir. 2012), reh'g denied, 709 F.3d 791 (9th Cir. 2013). In reviewing a proposed settlement, the court represents those class members who were not parties to the settlement negotiations and agreement. *In re Toys R Us-Delaware, Inc.— Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 448 (C.D. Cal. 2014).   The

Ninth Circuit has recognized a strong judicial policy favoring settlement, particularly of complex class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Nevertheless, even where a proposed settlement is unopposed, the court must fully examine whether the proposed settlement class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819 (quotation and citation omitted).

### DISCUSSION – RULE 23 REQUIREMENTS

**A.      Numerosity**

Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no absolute number or cut-off for determining numerosity, and the specific facts of each case may be examined. *Schwarm v. Craighead*, 233 F.R.D. 655, 660 (E.D. Cal. 2006); *Cervantez v. Celestica Corp*., 253 F.R.D. 562, 569 (C.D. Cal. 2008) ("Courts have not required evidence of specific class size or identity of class members to satisfy the requirements of Rule 23(a)(1)."). "A reasonable estimate of the number of purported class members satisfies the numerosity requirement of Rule 23(a)(1)." *In re Badger Mountain Irr. Dist. Sec. Litig*., 143 F.R.D. 693, 696 (W.D. Wash. 1992).

Here, the proposed class consists of approximately 250,000 members.  (Doc 89-2, Ex. A to Foty Decl. at 10; Doc. 104 at 9.)  The Court finds that the proposed class therefore satisfies the numerosity requirement as joinder of such members is impracticable.  *See also Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) (noting "courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer."); *Cervantez*, 253 F.R.D. at 569 ("Courts have held that numerosity is satisfied when there are as few as 39 potential class members.")

///

1    **B.      Commonality**

2          Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P.

3    23(a)(2). Parties seeking class certification must prove their claims depend on a common

4    contention of such a nature it is capable of class-wide resolution, meaning the determination of its

5    truth or falsity will resolve an issue central to the validity of each claim at once. *Wal-Mart*, 564

6    U.S. at 350. Class-wide proceedings must generate common answers to common questions of law

7    or fact apt to drive resolution of the litigation. *Id.* The parties must demonstrate class members

8    have suffered the same injury. *Id.* at 349-350.

9          Plaintiffs appear to suggest that the commonality requirement is satisfied because the case

10   primarily involves resolution of a central issue:  whether the time spent waiting in line and

11   completing the COVID-19 screening is compensable under California.  Plaintiffs contend that

12   resolution of this issue can be resolved on a class basis because the policies and procedures for

13   screening were the same for all class members and there is common proof applicable to all class

14   members.  (Doc. 89 at 18.)

15         In their supplemental briefing, Plaintiffs indicate that they are challenging Amazon's

16   COVID-19 screening compensation policy that affected all class members.  First, as indicated,

17   they claim that the time spent waiting in line and completing the COVID-19 screenings is

18   compensable under California law.  Second, they claim that as a result of Amazon's decision not

19   to automatically compensate employees for time spent undergoing COVID-19 screenings,

20   Amazon's wage statements were legally deficient.  Plaintiffs assert that each of these claims

21   challenges Amazon's conduct that affected all Class Members in precisely the same way.  (Doc.

22   104 at 11-12.)

23         Plaintiffs also explain that the process for conducting the screenings was similar across all

24   Amazon fulfillment centers and distribution centers.  Under Amazon's company-wide policy,

25   every hourly employee was required to  (1) report to a designated location at an Amazon facility,

26   (2) wait in line standing six feet apart from other employees, (3) answer questions about whether

27   they had any signs or symptoms of the Coronavirus, (4) have their temperature taken, (5) wear an

28   Amazon approved mask, and (6) pass the health examination to work that day. (Doc. 89-1 at 6.)

1    The Court finds that the commonality requirement is met because Plaintiffs are

2    challenging Amazon's COVID-10 compensation policy that applied to all class members.

3    **C.     Typicality**

4         Rule 23 also requires that "the claims or defenses of the representative parties are typical

5    of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Under Rule 23's permissive

6    standard, claims "need not be substantially identical," but are typical if the representative's claims

7    are "reasonably co-extensive with those of the absent class members." *Parsons v. Ryan*, 754 F.3d

8    657, 685 (9th Cir. 2014) (quoting *Hanlon*, 150 F.3d at 1020). Typicality is based on the "nature of

9    the claim or defense of the class representative, and not to the specific facts from which it arose or

10   the relief sought." *Parsons*, 754 F.3d at 685 (quoting *Hanon v. Dataproducts Corp.,* 976 F.2d

11   497, 508 (9th Cir. 1992)). Typicality tests "whether other members have the same or similar

12   injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

13   whether other class members have been injured by the same course of conduct." *Id.* (quoting

14   *Hanon*, 976 F.2d at 508).  The requirements of commonality and typicality occasionally merge,

15   and "[b]oth serve as guideposts for determining whether under the particular circumstances

16   maintenance of a class action is economical and whether the named plaintiff's claim and the class

17   claims are so interrelated that the interests of the class members will be fairly and adequately

18   protected in their absence." *Id.* (quoting *Wal-Mart*, 564 U.S. at 349 n.5).

19        As with the commonality requirement, the Court finds the typicality requirement is

20   satisfied because Plaintiffs' claims arise from the same factual bases and are premised upon the

21   same legal theories as those applicable to the purported class members. Plaintiffs, like every other

22   class member, were non-exempt hourly employees of Amazon, who were required to complete

23   the COVID-19 screenings, who were subject to the same screening policies and procedures, and

24   who performed the screenings off the clock.

25   **D.     Adequacy of Representation**

26        The Court must ensure "the representative parties will fairly and adequately protect the

27   interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether the named plaintiffs will

28   adequately represent the class, courts must resolve two questions: "(1) do the named plaintiffs and

1  their counsel have any conflicts of interest with other class members and (2) will the named

2  plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco*

3  *Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

4  "Adequate representation depends on, among other factors, an absence of antagonism between

5  representatives and absentees, and a sharing of interest between representatives and absentees."

6  *Ellis*, 657 F.3d at 985 (citing *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003)). Class

7  representatives "must be part of the class and possess the same interest and suffer the same injury

8  as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (internal

9  quotations and citations omitted). This factor also tends to merge with the commonality and

10  typicality criteria of Rule 23. *Id.* at 626 n.20.

11        Here, Plaintiffs and the class share common injuries and generally possess the same

12  interests.  They are suing for the same damages arising out of the same course of conduct.

13  Plaintiffs do not appear have a conflict of interest with the purported class.  (*See* Boone Decl. ¶ 6;

14  Rivera Decl. ¶ 6; Barrera Decl. ¶ 6.)

15        The Court must also consider the adequacy of representation by Class Counsel.  As

16  previously indicated, the Court has already approved the appointment of Hodges & Foty, LLP as

17  interim class counsel.  (Doc. 80.)  In making that determination, the Court found that Hodges &

18  Foty, LLP had experience in handling class actions and the types of claims asserted here.  For the

19  same reasons previously identified by the Court, Hodges & Foty, LLP should be appointed class

20  counsel.  (*See* Doc. 74.)

21        Accordingly, the Court finds Plaintiffs have demonstrated they will adequately and fairly

22  protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  For purposes of settlement only, the

23  Court hereby appoints Plaintiffs Boone, Rivera, and Barrera as Class Representatives.  Similarly,

24  the Court appoints Hodges & Foty, LLP as Class Counsel in this matter.

25  **E.        Rule 23(b)(3) Requirements**

26        Both the predominance and superiority requirements are satisfied under Rule 23(b)(3).

27        *1.        Predominance*

28        "The first requirement of Rule 23(b)(3) is predominance of common questions over

individual ones." *Valentino*, 97 F.3d at 1234.  The predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement," and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod.,* 521 U.S. at 594. If a common question will drive the resolution of the litigation, the class is sufficiently cohesive. *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020) (court must determine which questions are likely "to drive the resolution of the litigation).

Plaintiffs indicate that the claims are based on resolution of a central issue:  whether the time spent waiting in line and completing the COVID-19 screening is compensable under California law.  Plaintiffs contend that resolution of this issue can be resolved on a class basis because the policies and procedures for screening were the same for all class members and there is common proof applicable to all class members.  (Doc. 89 at 18.)

The Court finds that the claims asserted all arise from Amazon's screening policy and issues related to this policy predominate over any individual issues.

*2       Superiority*

The class action mechanism is the superior method for adjudicating this lawsuit. Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino*, 97 F.3d at 1234–35. Factors relevant to the superiority requirement include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Zinser v. Accufix Rsch. Inst., Inc*., 253 F.3d 1180, 1190 (9th Cir.),

1   opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001) ("In determining superiority,

2   courts must consider the four factors of Rule 23(b)(3).") "A consideration of these factors

3   requires the court to focus on the efficiency and economy elements of the class action so that

4   cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a

5   representative basis." *Zinser*, 253 F.3d at 1190. However, where "confronted with a request for

6   settlement-only class certification, a district court need not inquire whether the case, if tried,

7   would present intractable management problems, for the proposal is that there be no trial."

8   *Amchem Prod., Inc.,* 521 U.S. at 620.

9          Resolution of the claims of approximately 250,000 total class members in one class action

10   settlement is far superior to individual lawsuits because it promotes consistency and efficiency of

11   adjudication. Further, the Court finds a class action avoids the inefficiency of each class member

12   litigating similar claims individually. Therefore, the Court finds that a class action is the superior

13   method for adjudicating the claims in this action.

14          For the foregoing reasons, the Court finds Plaintiffs have sufficiently met the requirements

15   of Rule 23(a) and (b).  The Settlement Class is preliminarily certified for purposes of settlement,

16   subject to a final fairness hearing and certification of the settlement class under the Federal Rules

17   of Civil Procedure and related case law.

## DISCUSSION – PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT

20          Having concluded that class treatment appears to be warranted, the Court now considers

21   whether the proposed settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2); *In re*

22   *Bluetooth Headset Products Liab. Litigation.*, 654 F.3d 935, 946 (9th Cir. 2011). The role of the

23   district court in evaluating the fairness of the settlement is not to assess the individual

24   components, but to consider the settlement as a whole. *Lane*, 696 F.3d at 818–19. Preliminary

25   approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed

26   settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the

27   settlement falls within the range of possible approval, has no obvious deficiencies, and does not

28   improperly grant preferential treatment to class representatives or segments of the class. *In re*

1  *Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing *Schwartz v.*

2  *Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)).

3          In making this inquiry, the Court should weigh: (1) the strength of the plaintiff's case; (2)

4  the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining

5  class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of

6  discovery completed and the stage of the proceedings; (6) the experience and views of counsel;

7  (7) the presence of a governmental participant; and (8) the reaction of the class members of the

8  proposed settlement.  *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d at 946. Some of these

9  eight factors cannot be fully assessed until the court conducts its final fairness hearing. *Zwicky v.*

10  *Diamond Resorts Mgmt. Inc.,* 343 F.R.D. 101, 119 (D. Ariz. 2022).  Thus, at the preliminary

11  approval stage, courts need only evaluate "whether the proposed settlement [1] appears to be the

12  product of serious, informed, non-collusive negotiations, [2] has no obvious-deficiency, [3] does

13  not improperly grant preferential treatment to class representatives or segments of the class and

14  [4] falls within the range of possible approval."  *Zwicky*, 343 F.R.D. at 119; *accord Collins v.*

15  *Cargill Meat Sols. Corp*., 274 F.R.D. 294, 301-303 (E.D. Cal. 2011) (citing *In re Tableware*

16  *Antitrust Litig.*, 484 F. Supp. 2d at 1079).  Because collusion may not be evident on a settlement's

17  face, courts must be vigilant for subtle signs "class counsel have allowed pursuit of their own

18  self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*

19  *Headset Prod. Liab. Litig*., 654 F.3d at 947.

20          At this juncture, the Court will review the parties' Settlement Agreement according to the

21  four *Zwicky* considerations listed above and conduct a cursory review of its terms in deciding

22  whether to order the parties to send the proposed notice to Class Members and conduct the final

23  approval hearing.

24  **A.      The Proposed Settlement Appears to be the Product of Serious, Informed, Non-**

25  **Collusive Negotiations**

26          The Ninth Circuit observed that "the very essence of a settlement is compromise, 'a

27  yielding of absolutes and an abandoning of highest hopes.' " *Officers for Justice v. Civil Serv.*

28  *Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when

analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625, 628.  The Court must look at the means and negotiations by which the parties settled the action in addition to reviewing the Proposed Settlement Agreement for obvious deficiencies.  *Zwicky*, 343 F.R.D. at 120.

As Plaintiffs indicate, the parties reached a settlement after participating in a mediation and subsequent settlement negotiations.  Plaintiffs indicate that the Settlement Agreement is the product of extensive, arm's-length negotiations, which were lengthy and in-depth.  (Doc. 89 at 13.)  The parties discussed the merits of the case, class certification, and damages.  (*Id.*)  Plaintiffs indicate that counsel were able to make an informed assessment regarding the merits of their claims and defenses.  (*Id.*)  Further, negotiations were informed by the knowledge of Plaintiffs' counsel gained through informal discovery, with the aid of a statistics expert who calculated an estimated amount owed.  (*Id.*)  Plaintiffs' counsel evaluated the merits of the case, but recognized that there were challenges in the litigation that could pose significant risks.  (*Id.* at 14.)

## B.  Obvious Deficiencies

Obvious deficiencies in a settlement agreement include "any subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021) (quoting *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019)). The Ninth Circuit has identified three such "subtle signs," which it refers to as the *Bluetooth* factors: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis*, 16 F.4th at 607–08 (citation omitted); *In re Bluetooth*, 654 F.3d at 947 (internal quotation and citation omitted).

### 1.  Disproportionate Distribution of the Settlement to Counsel

Here, Class Counsel seek 1/3 of the Gross Settlement Fund for attorneys' fees.  As explained more fully below, the Court does not consider this request a deficiency.

2. *Clear-sailing Arrangement for Attorneys' Fees*

There does not appear to be a clear-sailing arrangement for attorneys' fees.

3. *Reversion of Unawarded Fees to the Defendant*

Here, the Settlement Agreement states that there will be no reversion of unpaid settlement funds to Amazon.

## C.   Does Not Grant Preferential Treatment

The proposed settlement appears to treat class members equally.  Individual settlement payments will be calculated and apportioned on a pro rata basis depending on the number of "weeks worked" or "workweeks" (defined as any calendar week during the Class Period) in which a Settlement Class Member performed at least one day of work for Amazon.  (SA ¶ 50.) Aside from the Class Representative Enhancement Payments, discussed below, all of the class members are subject to the same payment calculations based on the number of weeks worked or workweeks.

## D.   The Settlement Falls Within the Range of Possible Approval

"To determine whether a settlement 'falls within the range of possible approval' a court must focus on 'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Collins*, 274 F.R.D. at 302 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080). The Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625, 628.

Here, the total proposed settlement is for $5,500,000. Plaintiffs contend that the settlement provides for recovery that is, as calculated by Plaintiffs, approximately 100% of the amount of unpaid wages that in Plaintiffs' view is owed to the Class Members for spending approximately one minute off-the-clock as a result of the COVID-19 screenings.  (Doc. 89 at 15.)

Per Plaintiffs, Amazon produced substantial visual evidence of the COVID-19 screenings collected by security cameras at several facilities in California. Additionally, Amazon produced the payroll data and time clock data for the California Class. Plaintiffs then retained three experts:

21

1   (1) Chad Staller (economist), (2) Nichols Briscoe (economist), and (3) Richard Drogin, Ph.D.

2   Plaintiffs produced to Amazon two expert reports and a damages analysis.  The expert reports

3   provided an evaluation of the surveillance data and the amount of time spent undergoing the

4   COVID-19 screenings.  (Foty Decl. ¶ 15.)

5        Based upon a review the surveillance data produced by Amazon, Plaintiffs believe that the

6   reasonable range of time spent waiting-in line and being screened was between 58 seconds and

7   one minute and nine seconds.  The median amount of time was identified by Plaintiffs' expert at

8   48 seconds and the average amount of time was identified at one minute and three seconds.  The

9   settlement provides a recovery of approximately one minute of screening time.

10        Plaintiffs assert the settlement is reasonable because it provides for a recovery that is, as

11   calculated by Plaintiffs, approximately 100% of the amount of unpaid wages that in Plaintiffs'

12   view is owed to the Class members for spending approximately one minute off-the-clock as a

13   result of the COVID-19 screenings.  (Doc. 89 at 15.)  For this reason, the Court finds that the

14   settlement amount appears to be fair and adequate as it provides for 100% of the expected

15   recovery based on Plaintiffs' own calculations.  The proposed settlement amount is well above

16   the general range of percentage recoveries that California courts—including this one—have found

17   to be reasonable.  *See Cavazos v. Salas Concrete Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 WL

18   506005, at *15 (E.D. Cal. Feb. 18, 2022) (examining cases approving settlements ranging from

19   12% to 35% of estimated maximum damages).

20        Plaintiffs' motion represents that there are 250,000 class members.  This case equates to a

21   pre-tax recovery of approximately $22.00 per class member for one minute of time based on the

22   Gross Settlement Fund ($5,500,000.00 / 250,000 = $22.00).  The net recovery, from the Court's

23   review, equates to a pre-tax recovery of approximately $12.18 for one minute of time based on

24   the Net Settlement Amount ($3,044,125.67 / 250,000 = $12.18).

25        "[I]t must not be overlooked that voluntary conciliation and settlement are the preferred

26   means of dispute resolution [, especially] in complex class action litigation...."  *In re Syncor*

27   *ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (quoting *Officers for Justice*, 688 F.2d at 625).

28   Thus, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain

1 results." *Munoz v. Giumarra Vineyards Corp.*, No. 1:09-cv-00703-AWI-JLT, 2017 WL 2665075,

2 at *9 (E.D. Cal. June 21, 2017).

3 **E.      PAGA Penalty**

4         Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor

5 code violations on behalf of himself and other current or former employees. Cal. Lab. Code §

6 2699(a). A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law

7 enforcement agencies." *Arias v. Superior Ct.*, 95 Cal. Rptr. 3d 588, 600 (Cal. 2009). A PAGA

8 plaintiff thus has "the same legal right and interest as state labor law enforcement agencies" and

9 the action "functions as a substitute for an action brought by the government itself"; therefore, "a

10 judgment in that action binds all those, including nonparty aggrieved employees, who would be

11 bound by a judgment in an action brought by the government." *Id*. A plaintiff bringing a

12 representative PAGA action not only owes a duty to their "fellow aggrieved workers," but "also

13 owes responsibility to the public at large; they act, as the statute's name suggests, as a private

14 attorney general." *O'Connor v. Uber Techs., Inc*., 201 F. Supp. 3d 1110, 1133–34 (N.D. Cal.

15 2016).

16         Under PAGA, civil penalties collected are distributed between the aggrieved employees

17 (25%) and the LWDA (75%). Cal. Lab. Code § 2699(i). Any settlement of PAGA claims must be

18 approved by the court. Cal. Lab. Code § 2699(l)(2). The proposed settlement must also be sent to

19 the agency at the same time that it is submitted to the court. Cal. Lab. Code § 2699(l)(2).

20         While PAGA requires a trial court to approve a PAGA settlement, district courts have

21 noted there is no governing standard to review PAGA settlements. *Scott v. Blackstone Consulting,*

22 *Inc.*, No. 21-CV-1470-MMA-KSC, 2024 WL 271439, at *8 (S.D. Cal. Jan. 24, 2024) (collecting

23 cases).  District courts have applied "a Rule 23-like standard" asking whether the settlement of

24 the PAGA claims is "fundamentally fair, reasonable, and adequate."  *Id.*

25         First, in accordance with the statutory requirements, the Settlement Agreement required

26 defense counsel to notify the LWDA of this Settlement Agreement upon the filing of the motion

27 for preliminary approval.  (SA ¶ 54.)  LWDA will have an opportunity to file a response to the

28 proposed settlement.  The Settlement Agreement provides for a $100,000 PAGA payment.  This

1    amount represents 1.8% of the Gross Settlement Fund.

2           District courts have approved a broad range of PAGA penalties.  *See Magadia v. Wal-*

3    *Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1101 (N.D. Cal. 2019) (collecting cases in which

4    settlements providing for $10,000 in PAGA penalties were preliminarily or finally approved

5    despite total settlement amounts of $900,000 and $6.9 million), *rev'd in part, vacated in part on*

6    *other grounds*, 999 F.3d 668 (9th Cir. 2021); *see also Alcala v. Meyer Logistics, Inc*., No. CV 17-

7    7211 PSG (AGRx), 2019 WL 4452961, at *9 (C.D. Cal. June 17, 2019) (collecting cases in which

8    PAGA penalties within the zero to two percent range were approved by courts); *Scott*, 2024 WL

9    271439, at *8 (approving 5 percent PAGA settlement).  The PAGA payment of approximately

10   1.8% of the Gross Settlement Fund falls within the range of penalties approved by courts.

11   Further, the Settlement Agreement provides that 75% of the PAGA Penalty will be paid to the

12   LWDA and 25% will be paid to the PAGA Settlement Members.  (SA ¶¶ 25, 48.)

13   **F.      Enhancement Awards to Plaintiffs**

14          Incentive payments are to be evaluated individually, and the court should look to factors

15   such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which

16   the class has benefitted from those actions, ... the amount of time and effort the plaintiff expended

17   in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at

18   977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

19          Plaintiffs request that the Court approve Enhancement Payments to Plaintiffs in the total

20   amount of $30,000, representing $10,000 to each of the three named plaintiffs.  (SA ¶¶ 7, 45.)

21          A service award of $5,000 is presumptively reasonable.  *See Harris v. Vector Marketing*

22   *Corp*., No. C-08-5198 MEC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases).

23   But courts have preliminarily approved higher amounts subject to additional documentation from

24   class representatives detailing the time and effort expended and actions taken to benefit the

25   settlement class prior to final approval.  *See, e.g., Howell v. Advantage RN, LLC,* No. 17-CV-883

26   JLS (BLM), 2020 WL 3078522, at *5 (S.D. Cal. June 9, 2020)  (preliminarily approving service

27   award of $10,000 subject to submission of additional information from plaintiff before final

28   approval); *Jamil v. Workforce Res.*, LLC, No. 18-CV-27 JLS (NLS), 2020 WL 3079221, at *8

(S.D. Cal. June 9, 2020) (preliminarily approving the proposed $10,000 service award to each named plaintiff, but requesting plaintiffs provide documentation detailing the time and effort they expended in pursuit of the litigation and the actions they took to benefit the settlement class before final approval of the service award); *Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *17 (E.D. Cal. Apr. 27, 2020) (preliminarily approving proposed $15,000.00 incentive award on the condition that plaintiff demonstrate at the final approval stage that the requested award is commensurate with and does not dwarf the average or median award received by the class and FLSA members). In assessing the appropriateness of class representative enhancements or incentive payments, the Court must consider factors such as: (1) the actions the plaintiff took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in pursuing litigation; and (4) any notoriety or personal difficulties encountered by the representative plaintiff. *See Khanna v. Intercon Sec. Systems, Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014).

In supplemental briefing, Plaintiffs submitted declarations for each named plaintiff in support of preliminary approval. (Docs. 104-3, 104-4, 104-5.) Each of the declarations describe the actions the individual Plaintiffs engaged in to support counsel and the approximate amount of time spent. (*See*, *e.g.*, Boone Decl. ¶¶ 6-7, 9; Rivera Decl. ¶¶ 6-7, 9; Barrera Decl. ¶¶ 6-8.)

At this stage, there is no indication the service awards constitute an improper award to defeat preliminary approval. Based on the foregoing and for purposes of this preliminary approval of the settlement, the Court finds the settlement terms are "within the range of possible approval."

### G.     Attorneys' Fees

Class Counsel seeks approval of an attorneys' fee award up to 1/3 of the Gross Settlement Fund ($1,833,333.33). (SA ¶¶ 44.) Pursuant to the Settlement Agreement, Amazon will not be responsible for attorneys' fees for or costs and expenses incurred by counsel for the named plaintiffs that is not Class Counsel. Payment to Parmet PC and The Nourmand Law Firm will be

1   made from the Class Counsel award.  (*Id.*)

2        "In a certified class action, the court may award reasonable attorneys' fees and nontaxable

3   costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Where a

4   settlement produces a common fund for the benefit of the entire class, courts have discretion to

5   employ either the lodestar method or the percentage-of-recovery method" when determining the

6   reasonableness of a request for attorneys' fees. *Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at

7   942; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (concluding district court

8   has discretion in a common fund case to choose either the lodestar method or the percentage-of-

9   the-fund method when calculating reasonable attorneys' fees). Under the percentage-of-recovery

10  method, 25% of a common fund is the benchmark for fee awards. *See*, *e.g.*, *In re Bluetooth*, 654

11  F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee

12  award, providing adequate explanation in the record of any 'special circumstances' justifying a

13  departure."). Under the lodestar method, a "lodestar figure is calculated by multiplying the

14  number of hours the prevailing party reasonably expended on the litigation (as supported by

15  adequate documentation) by a reasonable hourly rate for the region and for the experience of the

16  lawyer." *Id.* at 941 (citing *Staton,* 327 F.3d at 965). The product of this computation, the

17  "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d

18  1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

19  The Ninth Circuit has recommended that district courts apply one method but cross-check the

20  appropriateness of the amount by employing the other as well. *See Bluetooth*, 654 F.3d at 944.

21       The 25% benchmark may be adjusted upward or downward based on (1) the results

22  achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the

23  contingent nature of the fee; (5) the burdens carried by counsel; and (6) the awards made in

24  similar cases. *Vizcaino*, 290 F.3d at 1048–50.

25       *Results Achieved*

26       Courts have recognized that the result achieved for the class is a major factor to be

27  considered in making a fee award. *Hensley v. Eckerhart* 461 U.S. 424, 436 (1983); *Wilcox v. City*

28  *of Reno*, 42 F.3d 550, 554 (9th Cir. 1994). The Ninth Circuit has observed that "[e]xceptional

1    results are a relevant circumstance" to an adjustment from the benchmark award. *Vizcaino*, 290

2    F.3d at 1048.

3         Plaintiffs' Counsel contends that the fee request is justified because that they achieved a

4    positive result and obtained significant monetary relief for the Class.  Counsel reiterates that the

5    settlement provides a recovery of approximately 100% of the amount owed, assuming one minute

6    was spent off-the-clock as a result of the COVID screenings.  (Doc. 104 at 28-29.)  Additionally,

7    counsel notes that this recovery provides significant relief for the Class given the complexity of

8    the issues, the risk and uncertainty inherent in class action litigation, and the myriad factual and

9    legal defenses advanced by Amazon.  (*Id.* at 29.)

10        *Risks of Litigation*

11        Risk is a relevant circumstance. *See In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th

12   Cir.1995) (holding fees justified "because of the complexity of the issues and the risks").

13        According to Plaintiffs' Counsel, they have taken considerable risk in litigating this case,

14   not only because it was done on a contingency basis, but also because complex, wage-and-hour

15   litigation is an ever-developing area of the law that poses significant risks. (Doc. 104 at 29.)

16        With respect to the liability issues, Plaintiffs indicate that Amazon argued that the amount

17   of time spent undergoing the screenings was a matter of seconds. Amazon implemented thermal

18   scanners that it contends allowed for a seamless screening process. Additionally, Amazon

19   allowed its employees to download an app on their cell phones which allowed them to clock-in

20   prior to the start of their screenings. These facts presented hurdles to the Plaintiffs' claims.   (Doc.

21   104 at 29.)

22        With respect to class certification, Plaintiffs indicate that Amazon asserted that the claims

23   raised by the Plaintiffs were not certifiable. With respect to certifiability of the derivative wage

24   statement claim, Amazon argued that class certification was tied to the certifiability of the

25   underlying claims and are thus subject to the same risks. Success by Plaintiffs on any of these

26   issues was not a foregone conclusion at any time. Nevertheless, Plaintiffs' Counsel "persevered at

27   great risk (while foregoing other profitable work) on a contingency basis, against a large,

28   nationwide employer and brought this case to stellar resolution for the Class. As such, these

27

1    numerous litigation risks further justify the sought fees award."  (Doc. 104 at 29.)

2          *Skill and Quality of the Work*

3          The Court does not doubt Class Counsel are experienced and skilled litigators.

4          *Contingent Nature of the Fee and Burdens Carried*

5          "It is an established practice in the private legal market to reward attorneys for taking the

6    risk of non-payment by paying them a premium over their normal hourly rates for winning

7    contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299

8    (9th Cir. 1994). Thus, whether counsel have taken the case on a contingency fee basis must be

9    considered when deciding to vary from the 25% benchmark.  Here, Class Counsel have

10   prosecuted this case wholly on a contingency basis.  (Doc. 104 at 31.)

11         *Burdens Carried by Class Counsel*

12          Class Counsel have provided information as to the costs in prosecuting this action,

13   indicating that they have incurred $69,881.64 in actual out-of-pocket expenses. (Doc. 104 at 32;

14   Doc. 104-2, Supplemental Declaration of Dan Foty ("Foty Suppl. Decl.") ¶¶ 38-40.)  Counsel

15   indicates that the amount represents approximately 1.2% of the total settlement.  Plaintiffs'

16   Counsel have demonstrated their burden as to incurred costs over the course of this litigation.

17         *Awards Made in Similar Cases*

18         As noted above, 25% is the Ninth Circuit's "benchmark award for attorney[s'] fees."

19   *Hanlon*, 150 F.3d at 1029.  To support their claim for 1/3 of the Gross Settlement Fund, Plaintiffs

20   argue that courts routinely approve attorney's fees of percentages equal to or greater than that

21   sought by Plaintiffs in this action.  (Doc. 104 at 38.)  Plaintiffs cite cases in which courts

22   approved common fund fee awards equivalent to or greater than the percentage requested here.

23   (Doc. 104 at 26); *see, e.g.*, *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-00474,

24   2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017) (approving an award of attorneys' fees equal to

25   one-third of the total fund); *Villalpando v. Exel Direct Inc.*, No. 3:12-cv-04137-JCS, 2016 WL

26   7740854, at *2 (N.D. Cal. Dec. 12, 2016) (approving attorneys' fee award of one-third of the

27   common fund).

28         Given that the percentage of the fund is above the Ninth Circuit's benchmark, the Court

1  will conduct a cursory lodestar cross check. If a court applies the percentage method, it then

2  typically calculates the lodestar as a "cross-check to assess the reasonableness of the percentage

3  award." *See, e.g.*, *Weeks v. Kellogg Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25

4  (C.D. Cal. Nov. 23, 2013); *Suarez v. Bank of Am., Nat'l Ass'n*, No. 18-CV-01202-LB, 2024 WL

5  150721, at *3 (N.D. Cal. Jan. 11, 2024). To guard against an unreasonable result, the Ninth

6  Circuit has encouraged district courts to cross-check any calculations done in one method against

7  those of another method. *See Vizcaino*, 290 F.3d at 1050–51.  The "lodestar" approach calculates

8  attorney fees by multiplying the number of hours reasonably expended by a reasonable hourly

9  rate. *Gonzalez*, 729 F.3d at 1202; *Camacho*, 523 F.3d at 978.  Where, as here, the lodestar is

10  employed to cross-check a percentage-of-fund determination, courts may do a rough calculation.

11  *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295

12  F.R.D. 438, 460 (C.D. Cal. 2014).

13       In their supplemental briefing, Plaintiffs submitted information about the number of hours

14  worked and the attorney hourly rates for both Hodges & Foty, LLP and the Nourmand Law Firm.

15  The following chart provides a summary of the lodestar as calculated based on the rates and hours

16  provided by Plaintiffs' counsel:

| NAME | EXPERIENCE[1] | RATE | HOURS | TOTAL |
|---|---|---|---|---|
| David Hodges (Attorney) | 1996 | $1,057 | 47 | $49,679.00 |
| Don Foty (Attorney) | 2006 | $900 | 972.2 | $874,980.00 |
| Michael Nourmand (Attorney) | 1998 | $900 | 126 | $113,400.00 |
| Heather Heartfield (Attorney) | [1995] | $900 | 110.7 | $99,630.00 |
| William Hogg (Attorney) | [2013] | $850 | 12.8 | $10,880.00 |
| James De Sario (Attorney) | 2009 | $600 | 93 | $55,800.00 |

---

[1] The Court takes judicial notice of the State Bar of California website, which shows that Attorney Nourmand was admitted to practice in December 1998, and has close to 26 years of experience. Experience for Attorneys Heartfield and Hogg are based on law school graduation years.  The Court notes that Attorney Hogg is admitted to practice in both Texas and California and, according to the State Bar of California website, was admitted to practice in California in July 2021.  (Doc. 104-2, Foty Suppl. Decl. ¶¶ 20, 22.)

| | | | | |
|---|---|---|---|---|
| Patty Barnes (Paralegal) | 3 years | $239 | 78.9 | $18,857.10 |
| Ricardo Guzman (Paralegal) | 6 years | $239 | 3.2 | $764.80 |
| Marta Ponce (Paralegal) | 7 years | $239 | 9.1 | $2,174.90 |
| D'Yonna Pitter (Paralegal) | | $239 | 7 | $1,673.00 |
| Marlana Armendariz (Paralegal) | 2 years | $239 | 6.8 | $1,625.20 |
| JoAnna Valdez (Paralegal) | 3 years | $239 | 10.3 | $2,461.70 |
| | | | | |
| TOTAL | | | 1,477 | $1,231,925.70 |

(*See* Doc. 104-2, Foty Suppl. Decl. ¶ 35.)

The hourly rates provided by Plaintiffs' counsel are largely based upon the Adjusted Laffey Matrix for the District of Colombia. Plaintiffs assert that this matrix has been used by California district courts in determining reasonable hourly rates. (Doc. 104 at 33 n.9 (citing cases).)

In the Fresno Division of the Eastern District of California, attorneys with twenty or more years of experience are awarded $350.00 to $400.00 per hour. *See, e.g.*, *Leprino Foods Co. v. JND Thomas Co., Inc.*, No. 1:16-CV-01181-LJO-SAB, 2017 WL 128502, at *13 (E.D. Cal. Jan. 12, 2017), *report and recommendation adopted in part*, No. 1:16-CV-01181-LJO-SAB, 2017 WL 432480 (E.D. Cal. Feb. 1, 2017) (finding $400.00 per hour a reasonable hourly rate for attorney with more than thirty years of experience); *Sanchez v. Frito-Lay, Inc.*, No. 1:14-CV-00797-AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), *report and recommendation adopted*, No. 1:14-CV-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (finding reasonable rate for attorney with twenty years of experience was $350 per hour in a wage and hour class action). Generally, "$300 is the upper range for competent attorneys with approximately a decade of experience." *Barkett v. Sentosa Props. LLC*, No. 1:14-CV-01698-LJO, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015) (O'Neill, J.) (citing *Silvester v. Harris*, No. 1:11-CV-2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17, 2014). For attorneys with "less than ten years

1  of experience ... the accepted range is between $175 and $300 per hour." *Silvester*, 2014 WL

2  7239371 at *4 (citing *Willis v. City of Fresno*, 1:09-cv-01766-BAM, 2014 WL 3563310 (E.D.

3  Cal. July 17, 2014).

4       Recent cases in this district have maintained the same hourly rates. *Accord Deerpoint*

5  *Grp., Inc. v. Agrigenix, LLC*, No. 1:18-cv-00536-AWI-BAM, 2022 WL 16551632, at *19 (E.D.

6  Cal. Oct. 31, 2022); *Langer v. Cooke City Raceway, Inc.*, No. 1:21-CV-01488-JLT-BAK, 2022

7  WL 2966172, at *16 (E.D. Cal. July 27, 2022), *report and recommendation adopted*, No. 1:21-

8  cv-01488-JLT-BAK, 2022 WL 3348015 (E.D. Cal. Aug. 12, 2022); *Webb v. Cty. of Stanislaus*,

9  No. 1:19-cv-01716-DAD-EPG, 2022 WL 446050, at *6 (E.D. Cal. Feb. 14, 2022) ("In the Fresno

10 Division of the Eastern District of California, generally, attorneys with twenty or more years of

11 experience are awarded $325.00 to $400.00 per hour, attorneys with ten to twenty years of

12 experience are awarded $250.00 to $325.00, attorneys with five to ten years of experience are

13 awarded $225.00 to $250.00, and less than $200.00 for attorneys with less than five years of

14 experience.") Finally, "[t]he current reasonable hourly rate for paralegal work in the Fresno

15 Division ranges from $75 to $150, depending on experience." *Silvester,* 2014 WL 7239371, at *4

16 (citations omitted); *cf. Franco v. Ruiz Food Prods.*, Inc., No. 1:10-cv-02354-SKO, 2012 WL

17 5941801, at *20 (E.D. Cal. Nov. 27, 2012) (approving a rate of "$100 per hour" for "legal

18 assistants").

19       The rates Plaintiffs propose range from $600 per hour, at the low end, to $1,057 per hour,

20 at the high end.  Counsels' stated rates are high and above the upper limit of rates generally

21 accepted in this District.  Therefore, the rates will be adjusted for purposes of the lodestar

22 calculation with a rate of $400 for David Hodges (47 hours), Michael Nourmand (126 hours), and

23 Heather Heartfield (110.7 hours), a rate of $325 for Dan Foty (972.2 hours), William Hogg (12.8

24 hours), and James De Sario (93 hours), a rate of $150 for paralegals Guzman (3.2 hours) and

25 Ponce (9.1 hours), and a rate of $100 for paralegals Barnes (78.9 hours), Pitter (7 hours),

26 Armendariz (6.8 hours), and Valdez (10.3 hours).

27       In addition, the Court must also consider the reasonable number of hours spent.  The total

28 number of hours worked is 1,477, which includes 115.3 hours of paralegal time.  Given the three-

year span of this litigation, the hours expended appear reasonable for purposes of preliminary approval.

Therefore, a rough lodestar calculation using the hourly rates identified by the Court yields $475,975.00 in fees ($400 x 283.7 hours = $113,480.00; $325 x. 1,078 hours = $350,350.00; $150 x 12.3 hours = $1,845.00; $100 x 103 hours = $10,300.00).

Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, the court may enhance the lodestar with a multiplier. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also Vizcaino*, 290 F.3d at 1051–54 and n.6 (affirming a 28% fee recovery, explaining that the 3.65 multiplier "was within the range of multipliers applied in common fund cases" and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of 24 class action suits surveyed); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (citation omitted); *Ferrell v. Buckingham Prop. Mgmt.*, No. 1:19-cv-00332-JLT-BAK (EPG), 2022 WL 224025, at *3 (E.D. Cal. Jan. 25, 2022). Based on the Court's lodestar crosscheck, a multiplier of approximately 3.86 is necessary to reach the $1,833,333.33 in fees Class Counsel is requesting in this action. This multiplier is within the range commonly approved. The Court therefore concludes that the lodestar crosscheck warrants an upward departure from the Ninth Circuit's 25% benchmark. Class Counsel's requested 33% is reasonable, and the Court preliminarily approves attorneys' fees at the rate of 1/3 of the common fund ($1,833,333.33).

**H.     Costs**

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting the case. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92

1   (1970)); *see also Staton*, 327 F.3d at 974.  The Ninth Circuit has held that an award to a

2   prevailing party "can include reimbursement for out-of-pocket expenses including ... travel,

3   courier and copying costs." *Grove v. Wells Fargo Fin. Cal., Inc*., 606 F.3d 577, 580 (9th Cir.

4   2010). Other recoverable expenses include expenses related to discovery and expenses related to

5   computerized research. *See Harris v. Marhoefer*, 24 F.3d 16, 19–20 (9th Cir. 1994) (noting that

6   "expenses related to discovery" are recoverable); *Trs. Of Constr. Indus. & Laborers' Health &*

7   *Welfare Trust v. Redland Ins. Co*., 460 F.3d 1253, 1258-59 (9th Cir. 2006) (holding that

8   "reasonable charges for computerized research may be recovered."); *Hartless v. Clorox Co.,* 273

9   F.R.D. 630, 646 (S.D. Cal. 2011) (holding that consulting fees as costs were reasonable because

10   the evidence was necessary to negotiate a settlement).

11   Plaintiffs seek up to $100,000 in costs.  (SA ¶ 2, 44.)  As previously noted, Class Counsel

12   indicate that they have incurred $69,881.64 in actual out-of-pocket expenses. (Doc. 104 at 32;

13   Doc. 104-2, Foty Suppl. Decl. ¶¶ 38-40.)  Class Counsel identify these costs to include amounts

14   expended for experts, mediation, filing and service fees, research, and copying.  (Foty Suppl.

15   Decl. ¶¶ 38-40.)  Having considered the supplemental declaration, the Court approves the request

16   for costs on a preliminary basis.

17   **I.      Notice Requirements**

18   Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is

19   practicable under the circumstances, including individual notice to all members who can be

20   identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule directs:  The notice

21   must clearly and concisely state in plain, easily understood language: (i) the nature of the action;

22   (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class

23   member may enter an appearance through an attorney if the member so desires; (v) that the court

24   will exclude from the class any member who requests exclusion; (vi) the time and manner for

25   requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule

26   23(c)(3).  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient

27   detail to alert those with adverse viewpoints to investigate and to come forward and be heard."

28   *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation and internal

1     quotations omitted).

2        The proposed, amended Notice Packet here complies with Rule 23(c)(2).  (Doc. 104-1,

3     Ex. 1, Notice Packet.)  The Notice Packet includes the nature of the action, the class definition,

4     the class claims, the terms of the settlement, and information that the class member may be

5     represented by an attorney, the binding effect of the class judgment, how and when to opt-out,

6     and how to object to the settlement.  The Rule 23 notice also provides information regarding the

7     final approval hearing.

8        In addition, the parties agree the "best form of notice practicable" is to send the Notice

9     Packet via email.  (SA ¶ 56; Doc. 104 at 16-17.)  Rust Consulting will send a Notice Packet to all

10     class members using the most current, known personal email addresses of class members as

11     identified by Amazon in the Class List.  (SA ¶¶ 55, 56.)  If there is no personal email address,

12     Rust Consulting will mail a Notice Packet via regular First-Class U.S. Mail, using the most

13     current, known mailing addresses identified in the class list.  (SA ¶ 56.)  Rust Consulting will use

14     the National Change of Address Database to verify the accuracy of addresses on the Class List for

15     class members who do not have personal email addresses before mailing.  (SA ¶ 57.)

16        With respect to any Notice Packets sent via email for which Rust Consulting receives an

17     auto-reply indicating that the email was non-deliverable, a Notice Packet will be sent promptly

18     via regular First-Class U.S. Mail within five (5) business days of receipt of the auto-reply. Any

19     Notice Packets sent via regular First-Class U.S. Mail and returned to the Rust Consulting as non-

20     deliverable, will be sent promptly via regular First-Class U.S. Mail within five (5) business days

21     of receipt to any forwarding address. If no forwarding address is provided, the Settlement

22     Administrator will promptly attempt to determine the correct address using a skip-trace or other

23     search using the name, address, and/or Social Security number of the class member involved, and

24     will then perform a single re-mailing within five (5) business days of receipt. (SA ¶ 57.)

25        Rust Consulting will provide all counsel with a weekly report that identifies the number of

26     Class Members who have submitted a valid Request for Exclusion, Objection, and whether any

27     Class Member submitted a challenge to any information contained in the Notice Packet.  (SA ¶

28     67.)

The Court finds the notice and the method of delivery are appropriate and appear to be the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The Court also finds it significant that there is no opt-in procedure here, as Class Members do not have to confirm workweeks or take other action to have a check mailed to them, and there is no reversion to Amazon.

## CONCLUSION AND ORDER

For the reasons stated, the Court will grant Plaintiffs' motion for preliminary approval of the settlement. The Court preliminarily concludes that the proposed settlement, on the current record, is "fair, reasonable, and adequate" within the meaning of Rule 23(e)(2).

Accordingly, IT IS HEREBY ORDERED that:

1. The motion for preliminary approval of the class action settlement (Doc. 89), as supplemented, is GRANTED;

2. A hearing on the Final Approval of the settlement ("Final Approval Hearing") will be held before the Honorable Barbara A. McAuliffe in Courtroom 8 of the United States District Court for the Eastern District of California located at 2500 Tulare Street, Sixth Floor, Fresno, California, 93721 on **October 29, 2024, at 9:00 a.m.** to determine: whether the proposed Settlement, on the terms and conditions provided for in the Settlement Agreement, is fair, reasonable, and adequate and whether said Settlement should be finally approved by the Court. The Court may adjourn or continue the Final Approval Hearing without further notice to the Class Members;

3. The following persons are conditionally certified as Class Members solely for the purpose of entering a settlement in this matter:

> All current and former non-exempt employees of Amazon.com Services, LLC in California who underwent one or more COVID-19 temperature screenings during the period of April 1, 2020 through July 17, 2021 for individuals who did not work at the facility known as OAK4 in Tracy, California, or the period of April 1, 2020 through February 23, 2022 for those individuals who worked at the facility known as OAK4 in Tracy, California.

4. The Court finds that, for settlement purposes only, the settlement class meets the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure in that: (1)

the class is ascertainable and so numerous that joinder of all members of the class is impracticable; (2) there are common questions of law and fact, and the questions of law and fact common to the class predominate; (3) Plaintiffs' claims are typical of the claims of the members of the class; (4) Plaintiffs will fairly and adequately protect the interests of the members of the class; and (5) a class action is superior to other available methods for the efficient adjudication of the controversy.

5. The Court finds that, on a preliminary basis, that the Settlement Agreement, entered into among the parties and their counsel, is fair, adequate and reasonable. It further appears to the Court that the parties conducted investigation and research, and that they were able to reasonably evaluate their position and the strengths and weaknesses of the claims. The parties have provided the Court with enough information about the nature and magnitude of the claims being settled, as well as the impediments to recovery, to make an independent assessment of the reasonableness of the terms to which the parties have agreed.  Settlement now will avoid additional and potentially substantial litigation costs, as well as delay and risks if the parties were to continue to litigate this case. It further appears that the Settlement Agreement has been reached as the result of intensive, serious, and non-collusive arms-length negotiations, and was entered into in good faith.

6. The Court preliminarily finds that the settlement, which provides for a Gross Settlement Fund of $5,500,000 for approximately 250,000 Class Members, appears to be within the range of reasonableness of a settlement that could ultimately be given final approval by this Court. The Gross Settlement Fund includes all attorneys' fees, litigation costs, Settlement Administration Costs, and Class Representative Enhancement Payments.

7. The Court hereby preliminarily approves Class Counsel's request for attorneys' fees in the amount of 1/3 of the Gross Settlement Fund ($1,833,333.33) and costs in an amount up to $100,000.00 to be paid out of the Gross Settlement Fund

8. The Court hereby preliminarily approves the Class Representative Enhancement Payments in the total amount of $30,000 to be paid out of the Gross Settlement Fund.

9.  Rust Consulting, Inc. is appointed to act as the Settlement Administrator, pursuant to the terms set forth in the Settlement Agreement.

10. Plaintiffs Heather Boone, Roxanne Rivera, and Cristian Barrera are appointed as the Class Representatives and the representatives of the Settlement Class for settlement purposes only;

11. Plaintiffs' Counsel Hodges & Foty, LLC are appointed Class Counsel; Class Counsel are authorized to act on behalf of the Class Representatives and the Settlement Class with respect to all acts or consents required by or which may be given pursuant to the Settlement and such other acts reasonably necessary to consummate the Settlement; the authority of Class Counsel includes entering into any necessary modifications or amendments to the Settlement on behalf of the Class Representatives and the Settlement Class which they deem appropriate;

12. The settlement of Plaintiffs' PAGA claim is fair and reasonable, and the Court preliminarily approves the Settlement and release of that claim as well as the PAGA Allocation in the amount of $100,000, which includes payment to the LWDA and to the PAGA Settlement Class Members;

13.  The Court preliminarily approves the Non-California Payments totaling $200 for the Non-California FLSA Opt-In plaintiffs.

14.  The Court hereby approves, as to form and content, the Notice Packet (Doc. 104-1, Ex. 1) accompanying Plaintiffs' Supplemental Briefing  The rights of any potential objectors to the proposed Settlement are adequately protected in that they may exclude themselves from the Settlement and proceed with any alleged claims they may have against Amazon, or they may object to the Settlement and appear before this Court. However, to do so, they must follow the procedures outlined in the Settlement Agreement which are set out in the Notice Packet.

///
///
///
///
///
///
///

37

15. The Court finds that the emailing and/or mailing of the Notice Packet substantially in the manner and form as set forth in the Settlement Agreement and this Order meets the requirements of Federal Rules of Civil Procedure, Rule 23 and due process, and is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.

IT IS SO ORDERED.

Dated: __**May 22, 2024**__          ____/s/ *Barbara A. McAuliffe*____

UNITED STATES MAGISTRATE JUDGE

38