MATTHEW S. PARMET, SBN 296742
  matt@parmet.law
PARMET PC
340 S. Lemon Ave., #1228
Walnut, CA 91789
Telephone: 713.999.5228
Facsimile: 713.999.1187

*Local Counsel for Plaintiffs
Boone and Rivera*

*DON J. FOTY
  dfoty@hftrialfirm.com
*DAVID W. HODGES
  dhodges@hftrialfirm.com
HODGES & FOTY, LLP
2 Greenway Plaza, Suite 250
Houston, TX 77046
Telephone: 713.523.0001
Facsimile: 713.523.1116

*Attorneys for Plaintiffs Boone and Rivera*

MICHAEL NOURMAND, SBN 198439
  mnourmand@nourmandlawfirm.com
JAMES A. DE SARIO, SBN 262552
  jdesario@nourmandlawfirm.com
THE NOURMAND LAW FIRM, APC
8822 West Olympic Boulevard
Beverly Hills, CA 90211
Telephone: 310.553.3600
Facsimile: 310.553.3603

*Attorneys for Plaintiff Barrera*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## FRESNO DIVISION

| | |
|---|---|
| HEATHER BOONE and ROXANNE RIVERA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>CRISTIAN BARRERA, individually,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>Defendant. | Case: 1:21-CV-0241-KES-BAM-LEAD<br><br>Case: 1:22-CV-0146-KES-BAM-MEMBER<br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT<br><br>Hearing:      October 29, 2024<br>Time:         9:00 a.m.<br>Courtroom:  8<br>Floor:        6<br>Judge:       Hon. Barbara A. McAuliffe |

## **NOTICE OF MOTION**

PLEASE TAKE NOTICE that on October 29, 2024 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8, Sixth Floor, before the Honorable Barbara A. McAuliffe, Plaintiffs Heather Boone, Roxanne Rivera, and Christian Barrera ("Plaintiffs") will move this Court for an Order: (1) granting final approval of the proposed class action settlement of this action (the "Settlement"); (2) approving the attorney's fees, costs, and service awards that are sought; and (3) dismissing this action with prejudice.  The proposed Settlement creates a fund of Five Million Five Hundred Thousand Dollars ($5,500,000.00) to be paid by Defendant for the benefit of the Class Members. If approved, the proposed Settlement would resolve all of the claims raised in this lawsuit. The Court should approve the Settlement because it is fair and reasonable for the Class Members.

This Motion is based on the Memorandum of Points and Authorities submitted below, (1) the accompanying Declaration of Don Foty, (2) the Declarations of Plaintiffs Heather Boone, Roxanne Rivera, and Christian Barrera, (3) the Declaration of Amanda Myette from Rust Consulting, Inc., (4) the previously filed Motion for Preliminary Approval, (5) the previously filed Supplemental Brief in Support of Plaintiffs' Motion for Preliminary Approval – which includes the briefing on Plaintiffs' request for approval of attorney's fees, costs, and service Awards, (Dkt. 104), and (6) all papers on file in this action.

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bellinghausen v. Tractor Supply Co.*,
  303 F.R.D. 611 (N.D. Cal. 2014) ................................................................................. 11

*Boyd v. Bechtel Corp.*,
  485 F.Supp. 610 (N.D. Cal. 1979) ............................................................................... 12

*Browne v. American Honda Motor Co., Inc.*,
  2010 WL 9499072 (C.D. Cal. July 29, 2010) .............................................................. 13

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ...................................................................................... 14

*Carlin v. DairyAmerica, Inc.*,
  380 F. Supp. 3d 998 (E.D. Cal. 2019) .......................................................................... 13

*Chem. Bank v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ...................................................................................... 14

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .......................................................................................... 6

*Cohorst v. BRE Properties, Inc.*,
  2012 WL 153754 (S.D. Cal. Jan. 18, 2012) ................................................................. 15

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ...................................................................................... 11

*Duncan v. Aliera Cos., Inc.*,
  2024 WL 169158 (E.D. Cal. Jan. 16, 2024) ................................................................. 16

*Dunk v. Ford Motor Co.*,
  48 Cal. App. 4th 1794 (1996) ......................................................................................... 6

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ...................................................................................................... 15

*Frame v. Hillman*,
  2002 WL 34520817 (S.D. Cal. July 31, 2002) ............................................................ 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 ............................................................................................................. 6, 7

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 .................................................................................... 7, 13

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .............................................................................. 7

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................................... 13

*In re NVIDIA Corp. Derivative Litig.*,
  2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................................................ 9

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... 9, 10

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ............................................................................. 16

*In re Pacific Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ........................................................................... 6, 13

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 7, 11

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  396 F.3d 922 (8th Cir. 2005) ............................................................................. 10

*Knight v. Red Door Salons, Inc.*,
  2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .......................................................... 12

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ............................................................................. 16

*Martin v. AmeriPride Servs.*,
  2011 WL 2313604 (S.D. Cal. June 9, 2011) ......................................................... 13

*Martinez v. Knight Transp.*,
  2023 U.S. Dist. LEXIS 51757 (quotation omitted) ................................................ 14

*Morgan v. Pub. Storage*,
  301 F. Supp. 3d 1237 (S.D. Fla. Mar. 9, 2016) .................................................... 16

*Nat'l Rural Telecomm. v. DirectTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .............................................................. 9, 10, 12

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Officers for Justice v. Civil Serv. Comm'n of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................ Passim

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................................... 13, 15

*Satchell v. Fed. Express Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................................... 7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ......................................................................... 6

*Swinton v. SquareTrade, Inc.*,
    No. 4:18-CV-00144-SMR-SBJ, 2019 U.S. Dist. LEXIS 25458 (S.D. Iowa Feb. 14, 2019)..... 16

*Thieriot v. Celtic Ins. Co.*,
    2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ............................................... 9

*Thomas v. Cognizant Tech. Sols. U.S. Corp.*,
    2013 WL 12371622 (C.D. Cal. June 24, 2013) ............................................. 11

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (2002) .................................................................................. 10


Statutes

29 U.S.C. § 201 ....................................................................................................... 3

California Business & Professions Code §§ 17200 ............................................... 2

California Labor Code § 226 ............................................................................... 2, 5

California Labor Code § 2802 ............................................................................... 2

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

III.    PROCEDURAL HISTORY ................................................................................ 2

IV.     MEDIATION ...................................................................................................... 4

V.      SETTLEMENT TERMS ..................................................................................... 4

VI.     PRELIMINARY APPROVAL ........................................................................... 5

VII.    DISSEMINATION OF THE NOTICE ............................................................... 5

VIII.   THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL ............. 6

        A.    The Settlement Agreement Resulted from Arm's-Length Negotiations by Experienced Class Action Lawyers and was Based on Significant Investigation and Discovery..... 7

        B.    The Strength of Plaintiffs' Claims and Defendant's Defenses Favor Final Approval.  9

        C.    The Expense, Complexity, and Likely Duration of Further Litigation Favor Final Approval. ........................................................................................ 9

        D.    Risk of Maintaining Class Action Status Through Trial Favors Approval. ............... 10

        E.    The Amount of the Settlement Favors Final Approval.............................................. 11

        F.    The Stage of the Proceedings and Extent of Discovery Favor Final Approval. ......... 12

        G.    The View of Experienced Counsel Favors Final Approval. ...................................... 12

        H.    The Class's Reaction to the Settlement Favors Final Approval. ............................... 13

        I.     The Court Should Grant Final Approval. .................................................................. 13

IX.     THE NOTICE TO THE CLASS MEMBERS SATISFIED DUE PROCESS ................. 15

CONCLUSION..................................................................................................... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Boone, Rivera, and Barrera respectfully seek final approval of the $5,500,000 non-reversionary Settlement. Final approval is warranted here because the Settlement Agreement is fair, reasonable, and adequate. The Settlement was reached following a thorough evaluation of the claims and facts alleged in this action, and after mediation with an experienced mediator – Lisa Klerman.  The Settlement is an excellent result obtained without the risks, expenses, and delay of further litigation.

After the Court granted preliminary approval of the Settlement, 249,598 people were sent the Notice of the Settlement.  In a testament to the fairness and reasonableness of the Settlement, not a single Class Member objected.  Additionally, only 16 individuals excluded themselves. 16 people out of 249,598 is 0.00006%.  In other words, 99.99994% of the Class Members have chosen to participate in the Settlement.  That virtually all Class Members chose to participate in the Settlement and none objected to it further demonstrates that the Settlement is fair and reasonable.

If the Court approves the Settlement, the Class Members will each receive a monetary payment that is proportionally based on their dates of employment and weeks worked. It includes no claims procedure, and no reversion to Amazon for uncashed checks issued to the Class Members.  A copy of the Settlement Agreement is attached as Exhibit 1.

Plaintiffs believe that the proposed settlement is fair and reasonable and will provide a benefit to the Class Members.  While the Parties have different views on the merits of the case, the Settlement provides monetary relief to each Class Member that is, as calculated by Plaintiffs, approximately 100% of the amount of unpaid wages that are owed as a result of completing COVID-19 screenings off the clock at approximately one minute per shift.  This recovery is significant given that Defendant maintains that it complied with the law at all times, that the time spent completing COVID-19 screenings is not compensable, and even if it was, that the amount of time associates spent off the clock because of the COVID-19 screenings was a matter of seconds. Therefore, the Parties believe that this non-reversionary settlement of $5,500,000 to the Class is fair, reasonable, and adequate.

## II.     FACTUAL BACKGROUND

Plaintiffs allege that following the outbreak of the COVID-19 pandemic, Amazon instituted a company-wide policy requiring its hourly, non-exempt employees at its fulfillment centers and distributions centers to undergo a COVID-19 screening prior to the start of their scheduled shifts. (Dkt. 1).  The screenings were required by Amazon, were conducted on the premises of Amazon, and were controlled by Amazon. (*Id*.)  Amazon did not automatically pay for the time spent by its employees completing the COVID-19 screenings. (*Id*.)

The process for conducting the screenings was similar across all Amazon fulfillment centers and distributions centers.  Under Amazon's company-wide policy, every hourly employee was required to (1) report to a designated location at an Amazon facility, (2) wait in line standing six feet apart from other employees, (3) answer questions about whether they had any signs or symptoms of the Coronavirus, (4) have their temperature taken, (5) wear an Amazon approved mask, and (6) pass the health examination to work that day.  (*Id*.)

After passing the screening, employees at Amazon were allowed to clock-in for the day. The time clocks at the Amazon facilities were located at different distances from the screening area.  Additionally, some employees clocked-in on a mobile app before they began the screening process, and were thus on the clock during the screening process.  During approximately 20% of the shifts, Amazon employees clocked-in before the screening process began.

Amazon maintains that its employees rarely, if ever, had to wait prior to completing the screening, particularly after it installed thermal scanners soon after it implemented COVID-19 screening procedures.  Amazon asserts that with the introduction of the body scanners, workers spent at most a few seconds being screened.

## III.     PROCEDURAL HISTORY

On February 23, 2021, Plaintiffs Heather Boone and Roxanne Rivera filed the lead case in these consolidated actions alleging that Amazon (1) failed to pay them for all hours worked, (2) failed to pay them overtime wages, (3) provided to them invalid wage statements, and (4) a derivative violation of California Business & Professions Code §§ 17200 *et seq.* (through violation of California Labor Code § 2802 and/or California Labor Code § 226).  (*See* Dkt. 1.).  Boone and

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Rivera filed this lawsuit as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. and as a Rule 23 Class Action under the California Labor Code. *Id.* They sought damages on their own behalf and on behalf of a putative class. *Id.* Boone and Rivera later added to their lawsuit representative claims under PAGA. On November 12, 2021, Plaintiff Cristian Barrera filed a class action against Defendant in California state court based on the same allegations, which was later removed to federal court and consolidated with *Boone. Barrera v. Amazon.com Services LLC*, Case No. 1:22-cv-00146 (E.D. Cal.) (*Barrera I*). On January 25, 2022, Barrera filed a separate action under PAGA in Orange County Superior Court, also based on the same allegations. *Barrera v. Amazon.com Services LLC* (Orange County Sup. Ct. Case No. 30-2022-01242167-CU-OE-CXC) (*Barrera II*) (collectively with *Boone* and *Barrera I*, the "Actions").

Since the inception of this case, Amazon disputed all liability. In June 2021, Amazon filed a Motion to Dismiss arguing that the time spent undergoing Covid screenings is not compensable under the law. (Dkt. 24). On March 11, 2022, the Court granted in part and denied in part Amazon's Motion to Dismiss. (Dkt. 39). In the decision, the Court held that the facts as pled by the Plaintiffs establish that the time spent in the COVID-19 screenings are compensable under both the California Labor Code and the Fair Labor Standards Act ("FLSA"). (*See id.*) Afterwards, Amazon sought an interlocutory appeal under section 1292(b) (Dkt. 44), which the parties have fully briefed and is pending. Boone and Rivera's Counsel also moved to be appointed by the Court as interim class counsel. (Dkt. 62). Findings and Recommendations recommending that the Court grant the motion for appointment as interim class counsel were issued on May 30, 2023. (Dkt. 74). On October 18, 2023, the Court adopted that recommendation in full and granted the *Boone* plaintiffs' motion to appoint their counsel as interim class counsel. (Dkt. 80).

Along with this motion practice, the Parties engaged in informal merits-based and class discovery for settlement purposes. Amazon produced substantial visual evidence of the COVID-19 screenings collected by security cameras at several facilities in California. (Ex. "2" – Declaration of Don Foty at ¶ 15). Additionally, Amazon produced the payroll data and time clock data for the California Class. (*Id.*) Plaintiffs retained three experts: (1) Chad Staller (economist),

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

(2) Nichols Briscoe (economist), and (3) Richard Drogin, Ph.D. (*Id*.)  Plaintiffs then produced to Amazon two expert reports and a damages analysis.  (*Id*.)  The expert reports provide an evaluation of the surveillance data and the amount of time spent undergoing the COVID-19 screenings.  (*Id*.)  This procedural history demonstrates that significant issues pertaining to liability, damages, and class certification were fully developed and explored prior to reaching this Settlement.

## IV.    MEDIATION

On April 6, 2023, the Parties attended a full-day mediation with experienced mediator Lisa Klerman. (*Id*. at ¶ 16).  Ms. Klerman is a well-regarded mediator who has mediated hundreds of class action cases involving claims under the California Labor Code. (*Id*.)  Based on the discovery and investigation undertaken, Plaintiffs were able to engage in well-informed settlement negotiations with Defendant. (*Id*.)  Negotiations between the Parties were rigorous and conducted at arms-length. Indeed, the mediation on April 6, 2023 was unsuccessful. (*Id*.)  Nevertheless, the Parties continued to negotiate with the assistance of Ms. Klerman. (*Id*.)  Ms. Klerman played an active role in the settlement negotiations, including identifying each side's strengths, weaknesses, and risks. (*Id*.)  Ms. Klerman also had the benefit of detailed briefs, dozens of exhibits (including statistical modeling), and hours of in-person discussions with the Parties and their counsel. (*Id*.)  This process culminated in a settlement at the end of August 2023. (*Id*.)

## V.    SETTLEMENT TERMS

The Settlement provides for significant monetary relief to the Class Members.   The Settlement is for $5,500,000.00.  After deductions discussed below, the remaining amount of the Settlement is to be divided amongst the Class Members proportionally based on their dates of employment and weeks worked.  Defendant will also pay the employer's share of the applicable payroll taxes in addition to the gross settlement amount.  There will be no claims process because the Settlement Administrator will process checks for everyone who has not requested to be excluded.

The release of claims is a limited release that applies only to the claims asserted in this lawsuit. (Ex. "1").  Specifically, the release of claims is for all California law claims alleged in this action based on Plaintiffs' claim that Amazon failed to pay its non-exempt hourly workers for the

time they spent completing COVID-19 screenings through the date of final approval of the Settlement. (*Id.*)[1] Additionally, the Settlement at issue provides for a resolution of the claims raised under PAGA. (*Id.*) The PAGA claims raised in this lawsuit will be released by all Class Members. (*Id.*)

The Settlement provides for an enhancement award of $10,000 to each of the three Named Plaintiffs. (*Id.*) Further, the Settlement provides for fees of 1/3 plus costs to Plaintiffs' Counsel. Plaintiffs' Counsel has previously submitted briefing as to the request for approval of attorney's fees, costs, and the service awards. (Dkt. 104).

## VI.    PRELIMINARY APPROVAL

On May 22, 2024, the Court granted Preliminary Approval of the Settlement. (Dkt. 105). The Court noted that "the parties reached a settlement after participating in a mediation and subsequent settlement negotiations." (*Id.* at p. 20). The Court then found "the settlement amount [] to be fair and adequate as it provides for 100% of the expected recovery based on Plaintiffs' own calculations." (*Id.* at p. 22). The Court preliminarily certified the Settlement Class. (*Id.* at p. 18). The Court also approved Settlement Notice and authorized it to be distributed to the Class Members. (*Id.* at p. 33-34).

## VII.   DISSEMINATION OF THE NOTICE

On July 22, 2024, the Settlement Administrator – Rust Consulting, Inc. – emailed to 249,378 Class Members the Class Notice. (Ex. "3" at ¶ 13). Additionally, between July 22 and July 29, 2024, the Settlement Administrator mailed to 7,722 Class Members the Class Notice via first class mail. (*Id.* at ¶¶ 12, 14). Further, the Settlement Administrator set up a website with the address www.boonecovidsettlement.com. (*Id.* at ¶ 8). The website included a description of the

---

[1] The Release at issue also covers Plaintiffs' claims under California Labor Code 226 for invalid wage statements. This claim was based primarily on the assertion that Amazon identified the hours worked inaccurately on the wage statements by not including the amount of time spent in the COVID screenings. The Settlement at issue takes into consideration the fact that this wage statement claim is a derivative claim from the underlying wage claim and that there were risks to pursuing this claim given that Amazon argued that there was a good faith dispute as to whether the additional time was worked by the Class Members and should have been listed on the wage statements at all.

lawsuit and the claims raised in it, the Class Notice, Preliminary Approval Order, and the Settlement Agreement for all to view, download, and print at any time. (*Id*.). No Class Member has objected to the Settlement. Only 16 Class Members have opted out of the Settlement. (*Id*. at ¶ 20).

## VIII.   THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL

A settlement of a class action requires approval of the court. Fed. R. Civ. P. 23(e). To warrant final approval, a class settlement must be fair, adequate, and reasonable. *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003) citing *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998); *In re Pacific Enters. Sec. Litig*., 47 F.3d 373, 377 (9th Cir. 1995). The purpose of this requirement is to "prevent fraud, collusion or unfairness to the class." *Dunk v. Ford Motor Co*., 48 Cal. App. 4th 1794, 1800-01 (1996). The court has broad discretion in determining whether to approve or reject a proposed settlement, but generally, there is a strong judicial preference for pre-trial settlement of complex class actions. *See Officers for Justice v. Civil Serv. Comm'n of S.F*., 688 F.2d 615, 625 (9th Cir. 1982).

In evaluating the settlement, the court need not address whether the settlement is ideal or the best outcome, but is only to determine whether the settlement is fair, free of collusion and consistent with the plaintiffs' fiduciary obligations to the class. *See Hanlon, supra*, 150 F.3d at1027. The following are the factors the court may consider in order to approve a class action settlement:

(1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of governmental participants; and (8) the reaction of the class members to the proposed settlement.

*Officers for Justice, supra*, 688 F.2d at 625; *Churchill Vill., LLC v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004) citing *Hanlon, supra*, 150 F.3d at 1026. The Settlement satisfies the above requirements.

A. **The Settlement Agreement Resulted from Arm's-Length Negotiations by Experienced Class Action Lawyers and was Based on Significant Investigation and Discovery.**

The Court should look to whether the proposed settlement appears to be the product of collusion among the negotiating parties. *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 458 (9th Cir. 2000), as amended (June 19, 2000). In applying this factor, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *See In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007); *see also Hanlon*, 150 F.3d at 1027 (courts are deferential "to the private consensual decisions of the parties.") (citing *Officers for Justice v. Civil Serv. Comm 'n*., 688 F.2d 615, 625 (9th Cir. 1982)). Indeed, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable. *See Tableware*, 484 F. Supp. 2d at 1080; *City P'ship*, 100 F.3d at 1043 ("When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement.").

To that end, the courts have recognized "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp*., No. C03-cv-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *In re Immune Response Sec. Litig*., 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007.

Here, the Parties only attended mediation after they exchanged significant information and Amazon's Motion to Dismiss was resolved. In particular, Amazon produced substantial visual evidence of the COVID-19 screenings collected by security cameras at several facilities in California. (Ex. "2" at ¶ 15). Additionally, Amazon produced the payroll data and time clock data for the California Class. (*Id*.) Further, Plaintiffs produced to Amazon two expert reports and a damages analysis. (*Id*.) The expert reports provided an evaluation of the surveillance data and the amount of time spent undergoing the COVID-19 screenings. (*Id*.) Indeed, by the time the Parties participated in mediation, Amazon's Motion to Dismiss was resolved, the Parties had exchanged significant data, Plaintiffs had produced their expert reports, and Plaintiffs provided their damages

analysis.  Accordingly, when the Parties engaged in settlement talks, the record was developed through fact and expert analysis.

The proposed Settlement here is the product of extensive, arm's-length negotiations, which included an all-day mediation session with Lisa Klerman -- a private mediator experienced in class action matters. (*Id*. at ¶ 16).  Counsel were thus able to make informed assessments regarding the merits of their claims and defenses. *See In re Charles Schwab Corp. Sec. Litig*., No. C 08-01510 WHA, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011) ("the class settlements were reached [] when class counsel had completed discovery and had conducted extensive motion practice and were thus well aware of the issues and attendant risks involved in going to trial as well as the adequacy of the amount of the class settlement."). The negotiations were informed by the knowledge Plaintiffs' Counsel gained through informal discovery, with the aid of experts who calculated an estimate of the amount owed. Based on their familiarity with the factual and legal issues, and armed with a thorough understanding of the strength and weaknesses of the claims at issue, the Parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The negotiations were at all times hard-fought and have produced a result that the Parties believe to be in their respective interests.  (Ex. "2" at ¶ 16).  In fact, at first, the mediation was unsuccessful. (*Id*.).  However, Ms. Klerman continued to engage with the Parties for the next several months and the settlement was reached with her assistance. (*Id*.); *see also Zynga, Inc*., 2015 WL 6471171, at *9 ("The use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'").

Moreover, Plaintiffs' Counsel carefully evaluated the merits of the case, but recognize that there exist challenges in this litigation that could pose significant risks regarding their ability to prevail and the scope of damages available if the case were to proceed to trial, and thereafter, an appeal before the Ninth Circuit.  Even if Plaintiffs emerged victorious after appeal, there can be no doubt that the appeal would be lengthy and costly for all sides. *Charles Schwab Corp. Sec. Litig*., 2011 WL 1481424, *5 (approving settlement; "prosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

recovery"). As such, Plaintiffs' Counsel believes the Settlement is fair and reasonable. (Ex. "2" at ¶¶ 19-22). *See*, *e.g.*, *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (counsel's recommendation weighed in favor of settlement, given counsel's familiarity with the dispute and significant experience in securities litigation).

**B.** **The Strength of Plaintiffs' Claims and Defendant's Defenses Favor Final Approval.**

To determine the fairness of the proposed Settlement, the strength of the plaintiff's case on the merits is balanced against the settlement offer. *Nat'l Rural Telecomm. v. DirectTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Even where the plaintiff's case might be strong, litigation poses risks, especially where the defendant denies liability and opposes certification. *See Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011). This case involves a range of disputed issues including the merits of Plaintiffs' claims, how much time was spent waiting in line and completing the screening, how much time was spent walking to the time clocks following the screening, the number of shifts when screenings occurred, the number of instances when Amazon employees clocked-in before the start of the screening process, and whether the time spent walking to the time clocks at Amazon facilities is compensable. While Plaintiffs believe that the Class Members have meritorious claims, Defendant denies, and continues to deny, each and all of the claims and contentions asserted by Plaintiffs. Likewise, Defendant disputes Plaintiffs' damages calculation. Although Plaintiffs are confident in their position, they acknowledge that there are certain weaknesses in their legal claims.

**C.** **The Expense, Complexity, and Likely Duration of Further Litigation Favor Final Approval.**

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm.*, 221 F.R.D. at 526, citing 4A Conte & H. Newberg, Newberg on Class Actions, §11:50 at 155 (4th

ed. 2002). In analyzing this factor, the Court should compare the uncertainties of prolonged litigation with the immediate benefits that the settlement provides to the Class Members. *Id*.

Here, if this action progressed further, Plaintiffs would incur costs in conducting additional discovery, bringing and/or defending further dispositive motions, bringing and/or defending *Daubert* motions, and (potentially) preparing for, and conducting trial. Plaintiffs' success on the merits is in no way guaranteed, as noted earlier.  Further, any judgment reached at trial would not necessarily end this litigation, as the losing party would likely appeal. Appeals before the Ninth Circuit can take years. Absent a settlement, this litigation could have continued for years before the Class Members would see any recovery, if any recovery at all. *Frame v. Hillman*, 2002 WL 34520817, at *6 (S.D. Cal. July 31, 2002) (stating that the risks and expenses of prolonged litigation tip the scale in favor of the settlement approval).

Conversely, the Settlement at issue disposes of all litigation risks and uncertainties. Courts have acknowledged that settlements of class actions are favored when they provide immediate benefits to the class without the risk and expense involved in continued litigation. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig*., 396 F.3d 922, 933 (8th Cir. 2005). That is certainly the case here.  This factor favors final approval.

**D. <u>Risk of Maintaining Class Action Status Through Trial Favors Approval.</u>**

The risk that further litigation might result in no recovery for Plaintiffs is an important factor to consider. *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1046-47 (N.D. Cal. 2008); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (2002). Here, the class was certified for the purpose of settlement only. Class certification beyond this purpose is by no means guaranteed. While Plaintiffs believe that class certification is appropriate for the reasons stated in their Supplemental Brief in Support of Preliminary Approval, (Dkt. 104), Amazon, which did not oppose certification for the purpose of settlement only, and did not brief certification issues before this Court, maintains that this case is not certifiable. Defendant has argued that this action involves several individualized inquiries for establishing injury, including because its COVID-19 screening procedures varied over time and by facility; that in many instances, its employees experienced no delay in entering its facilities caused by COVID-19 screening; and that Plaintiffs will have

difficulty identifying and excluding from any class associates who were on the clock while going through screening, and therefore already compensated for this time, on a class-wide basis. Thus, Plaintiffs face significant risk that their claims would not be certified, and/or that they would not prevail at trial, should this litigation continue. Accordingly, this factor weighs in favor of final approval.

**E.  The Amount of the Settlement Favors Final Approval.**

As the Ninth Circuit observed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Thus, when evaluating the amount offered in settlement, the Court should consider "the complete package taken as a whole," and the amount should "not be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id*. at 625-28.

When evaluating the adequacy of a settlement, courts balance a plaintiff's expected recovery against the value of the offer. *Tableware*, 484 F. Supp. 2d at 1080; *Portal Software*, 2007 WL 1991529, at *6. Here, the Settlement is fair and reasonable because it provides for a recovery that is approximately 100% of the amount of unpaid wages owed to the Class Members at nearly one minute of off-the-clock work as a result of the COVID screenings. (Ex. "2" at ¶¶ 23-25). The recovery to the Class Members is fair, reasonable, and adequate. *See Bellinghausen v. Tractor Supply Co*., 303 F.R.D. 611, 623-24 (N.D. Cal. 2014) (finding settlement amount of a wage and hour class action that equaled between 9% and 27% of the total potential liability was fair, adequate and reasonable given the uncertainty of continued litigation); *Thomas v. Cognizant Tech. Sols. U.S. Corp*., 2013 WL 12371622, at *6 (C.D. Cal. June 24, 2013) (granting final approval in wage and hour action where settlement encompassed between 4.4% and 5% of the maximum estimated liability figure).

Also, the Settlement Amount is non-reversionary and does not require Class Members to submit a claim; accordingly, the entire Net Settlement Fund is available for automatic payment to Class Members who did not opt out of the Settlement. This factor warrants final approval.

**F.    The Stage of the Proceedings and Extent of Discovery Favor Final Approval.**

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop*., 221 F.R.D. at 527 (quoting 5 W. Moore, Moore's Federal Practice, §23.85[2][e] (Matthew Bender 3d ed.)).

Here, before settling this action, the Parties had a thorough understanding of their respective claims and defenses.  In June 2021, Amazon filed a Motion to Dismiss arguing that the time spent undergoing Covid screenings is not compensable under the law.  (Dkt. 24).  On March 11, 2022, the Court granted in part and denied in part Amazon's Motion to Dismiss.  (Dkt. 39).  In the decision, the Court held that the facts as pled by the Plaintiffs establish that the time spent in the COVID-19 screenings are compensable under both the California Labor Code and the Fair Labor Standards Act ("FLSA").  (*See id*.)  Afterwards, Amazon sought an interlocutory appeal under section 1292(b) (Dkt. 44), which the Parties fully briefed.

In addition to this motion practice, the Parties exchanged significant information.  Amazon produced visual evidence of the COVID-19 screenings collected by security cameras at several facilities in California.  (Ex. "2" at ¶ 15).  Additionally, Amazon produced the payroll data and time clock data for the California Class.  (*Id*.)  Plaintiffs retained three experts: (1) Chad Staller (economist), (2) Nicholas Briscoe (economist), and (3) Richard Drogin, Ph.D. (*Id*.)  Plaintiffs then produced to Amazon two expert reports and a damages analysis.  (*Id*.)  The expert reports provide an evaluation of the surveillance data and the amount of time spent undergoing the COVID-19 screenings.  (*Id*.)  Therefore, at the time the Settlement Agreement was finalized, the Parties had been diligently litigating this action for over two years. This factor supports final approval.

**G.    The View of Experienced Counsel Favors Final Approval.**

In contemplating the approval of a proposed settlement, "[t]he recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009), citing *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979). In fact, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome

in litigation." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 967 (9th Cir. 2009) (citing *In re Pac. Enters. Sec. Litig., supra*, 47 F.3d at 378); *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *8 (N.D. Cal. Mar. 18, 2013).

      Plaintiffs' counsel has extensive experience litigating complex class actions. (*See* Ex. "2"). Plaintiffs' Counsel believe that the Settlement is fair and reasonable and ask that the Court grant final approval. (*Id.*) Plaintiffs' Counsel's views on this Settlement are aligned with the views of the independent mediator, because this Settlement was reached with the mediator's assistance. Accordingly, this factor weighs in favor of final approval.

### H. The Class's Reaction to the Settlement Favors Final Approval.

      The reaction from the Class Members to the Settlement has been overwhelmingly favorable.  Not one Class Member objected to the Settlement.  Further, only 16 Class Members out of approximately 250,000 excluded themselves.  That means approximately 99.99% of the Class Members decided to participate in the Settlement. The absence of any objections to the proposed class action settlement raises a strong presumption that the terms of the settlement are favorable. *Martin v. AmeriPride Servs*., 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011); *In re Omnivision Techs., supra*, 559 F. Supp. at 1043 ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."); *Browne v. American Honda Motor Co., Inc*., 2010 WL 9499072, at *15 (C.D. Cal. July 29, 2010) ("The comparatively low number of opt-outs...indicates that generally, class members favor the proposed settlement and find it fair."); *In re Immune Response Sec. Litig*., 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007); *see also Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1013 (E.D. Cal. 2019).

      This factor supports final approval of the Settlement.

### I. The Court Should Grant Final Approval.

      "Ultimately, the district court's determination [regarding the fairness and adequacy of a proposed settlement] is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (citation omitted). "[I]t must be not overlooked that voluntary conciliation and settlement are preferred means of dispute

resolution. This is especially true in complex class action litigation." *Id*. Here, all relevant factors, individually, and taken as a whole, weigh in favor of final approval of the Settlement.

Indeed, in evaluating the fairness of a settlement, "the settlement's benefits must be considered by comparison to what the class actually gave up by settling." *Martinez v. Knight Transp.*, 2023 U.S. Dist. LEXIS 51757, at *30 (quoting *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020)). To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Martinez v. Knight Transp.*, 2023 U.S. Dist. LEXIS 51757, at *30 (quotation omitted); *see also Harris*, 2011 U.S. Dist. LEXIS 48878, at *11 (noting that courts "must estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount" in determining "the value of the settlement against the expected recovery at trial").

But the court "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Cashon*, 2023 U.S. Dist. LEXIS 169355, at *10 (quoting *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992)). Rather, the court should weigh, among other factors, the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the extent of discovery completed; and the value of the settlement offer. *Id*.

Here, the amount of the Settlement is fair and adequate when viewed in light of the risks and delays associated with continued litigation. Based upon a review the surveillance data produced by Amazon, Plaintiffs believe that the reasonable range of time spent waiting-in line and being screened was between 58 seconds and one minute and nine seconds. The median amount of time was identified by Plaintiffs' expert at 48 seconds and the average amount of time was identified at one minute and three seconds. The settlement provides a recovery of approximately one minute of screening time. (Ex. "2" at ¶ 23).

Additionally, the Settlement "does not improperly grant preferential treatment to the [Plaintiffs] or segments of the class." *Portal Software*, 2007 WL 1991529, at *5. Plaintiffs will be receiving their proportionate share of the Class Damages according the same formula as the rest

of the Class Members.  *See NASDAQ*, 176 F.R.D. at 102 (settlement may be approved preliminarily where it does not improperly grant preferential treatment to class representatives or segments of the class").  While the Settlement does anticipate that the Plaintiffs will receive enhancement awards, the Settlement is in no way conditioned on them receiving this award.  This demonstrates that the Settlement is fair and reasonable to all.  Further, attached hereto as Exhibits "4," "5," and "6" are the Declarations of Plaintiffs Boone, Rivera, and Barrera who ask that the Court grant final approval. (*See* Ex. "4," "5," and "6").

Moreover, the Settlement resolves the claims raised by Plaintiffs under PAGA and allocates a fair amount to the State of California. The amount allocated to the State of California is fair and reasonable because had this case proceeded to trial, the Court could exercise its discretion to award a minimal PAGA penalty given the small amount of time allegedly at issue.

In light of these facts, the Court should grant final approval of the Settlement.

## IX.    THE NOTICE TO THE CLASS MEMBERS SATISFIED DUE PROCESS

A notice of settlement must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. Proc. 23(c)(2)(B). "The hallmark of an adequate notice is reasonableness." *Cohorst v. BRE Properties, Inc.*, 2012 WL 153754, at *2 (S.D. Cal. Jan. 18, 2012), citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 165 (1974). The manner of giving notice and the content of the notice should "present information about a proposed settlement neutrally, simply, and understandably." *Rodriguez, supra* 563 F.3d at 962.

Here, the Notice was sent to the Class Members by electronic mail and first class mail. (Ex. "3" at ¶¶ 12-14).  These methods were the most practicable under the circumstances.  Rule 23 expressly authorizes email notice. *See* Fed. R. Civ. P. 23(c)(2)(B) (listing "electronic means" as permissible manner of providing notice of class action settlement). Indeed, the Advisory Committee Notes to the 2018 Amendments to Rule 23 "recognize contemporary methods of giving notice to class members" and that "technological change" has "introduced other means of communication that may sometimes provide a reliable additional or alternative means of giving

notice" other than first class mail. Advisory Committee Notes to 2018 Amendments to Rule 23(c)(2).

The benefits of email notice are well known. In our modern society, people tend to change email addresses much less frequently than they change physical addresses. Because email travels with the individual, it is often a more accurate and effective form of notice than regular mail. For this reason alone, courts consistently approve notice plans that rely principally on email for reaching former-employee class members, for whom a defendant is unlikely to have a current residential address. This is especially true here, where the class includes former employees who worked for Amazon as far back as April 2020. Given the fact that Amazon's address records for some of these individuals are already over four years old, there is a real risk that these addresses are out of date. This is but one reason why courts, including the Ninth Circuit,[2] courts in this district, and other California federal district courts, "consistently approve notice programs where notice is provided primarily through email." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1262-64 (S.D. Fla. Mar. 9, 2016) (email notice provided to more than 90% of class members was "best practicable notice and was reasonably calculated to apprise them of their rights"); *accord Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144-SMR-SBJ, 2019 U.S. Dist. LEXIS 25458, at *41 (S.D. Iowa Feb. 14, 2019) ("Courts consistently approve of email as a primary method of notice."); *see also Duncan v. Aliera Cos., Inc.*, 2024 WL 169158, at *2 (E.D. Cal. Jan. 16, 2024) (approving settlement where notice was sent primarily through email).

"In fact, email notice in class actions is becoming the preferred method of notification not only because it is reliable but it is actually more likely to be received by the Class members." *Morgan*, 301 F. Supp. 3d at 1261. For example, in *Merante v. American Institute for Foreign Study, Inc.*, the Northern District of California approved a primarily-email notice plan, finding it

---

[2] *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941, 946 (9th Cir. 2015) (affirming district court's approval of notice plan, consisting of email notice and notice by mail if email noticed bounced back); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (affirming district court's approval of class action settlement notice procedure, which was an email to class members, as well as a notice posted in a section of members' personal Facebook accounts and in the national edition of USA Today).

"constitutionally sound," and "the best notice practicable" under the circumstances, particularly given the transient nature of the employees/class members in that case. No. 21-cv-03234-EMC, 2022 U.S. Dist. LEXIS 131833, at *5 (N.D. Cal. July 25, 2022). The same reasoning applies here, where the four-year old mailing addresses Amazon retains for its former employees are likely stale.

Additionally, among the reasons courts give for approving notice provided primarily through email is that email is inexpensive, especially compared to First Class U.S. mail. *See, e.g.*, *Morgan*, 301 F. at 1262-64. Here, email notice also provided costs savings to the Class Members. *See In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *228 (N.D. Ga. Mar. 17, 2020), *reversed in part on other grounds*, 999 F.3d 1247 (11th Cir. 2021) ("In the Court's estimation, it would have been extremely wasteful to spend a significant portion of the settlement fund sending direct mail notice to . . . class members . . . . That would have needlessly reduced the money available to pay for the benefits to the class."); *Swinton*, 2019 U.S. Dist. LEXIS 25458, at *43-44 (expressing concern for "unreasonable" estimated cost of mail notice to class members for whom email was undeliverable, in light of amounts at issue).

Nevertheless, the notice was also sent to thousands of individuals by first class mail. The notice was sent by first class mail when an email address was unavailable or when the email address that was used was returned as undeliverable. Sending the notice by first class mail was an additional means of ensuring that the Class Members received the notice.

Ultimately, the Court-approved Notice plan was followed. On July 22, 2024, the Settlement Administrator emailed to 249,378 Class Members the Class Notice. (Ex. "3" at ¶ 13). Additionally, between July 22 and July 29, 2024, the Settlement Administrator mailed via first class mail the Class Notice to 7,722 Class Members. (*Id*. at ¶¶ 12, 14). The Settlement Administrator also set up a website with the address www.boonecovidsettlement.com. (*Id*. at ¶ 8). The website included the Class Notice, Preliminary Approval Order, and the Settlement Agreement for all to view, download, and print. (*Id*.). The website also reminded the Class Members of important settlement deadlines, as well as their ability to obtain case relevant documents or contact case representatives with any case related questions. (*See id*.)

The Notice package was highly informative, as it advised the Class Members in simple terms of: (1) the factual and procedural background of this action, (2) the terms of the Settlement, (3) the method of allocation of Settlement payment amongst the Class Members, (4) the Class Members' right to exclude themselves from, or object to this Settlement, or dispute the number of estimated workweeks, and (5) the Class Members' right to attend the final approval hearing. The Class Notice also informed the Class Members of the amounts that were being requested for attorneys' fees, costs, and the service awards. Further, Plaintiffs' Supplemental Brief in Support of Preliminary Approval which addressed Plaintiffs request for attorney's fees, costs, and service awards was filed on May 3, 2024. (Dkt. 104).  The Class Members had the opportunity to review said Brief and object to the fees, costs, and service awards being requested. No Class Member did so.

In sum, the Notice plan was carefully tailored to apprise the Class Members of the Settlement. Thus, the Class Notice satisfies due process.

## CONCLUSION

In the judgment of Plaintiffs and Class Counsel, the proposed Settlement is fair, reasonable and adequate, and provides substantial benefits to Class Members. Plaintiffs respectfully request that the Court grant final approval of this Settlement.

Dated: October 1, 2024

HODGES & FOTY, LLP

By: /s/ Don J. Foty
Don J. Foty *(Pro Hac Vice)*

*Attorney for Lead Case Plaintiffs Heather Boone and Roxanne Rivera, and Putative Class Members*

Dated: October 1, 2024

THE NOURMAND LAW FIRM, APC

By: /s/  James Desario
James Desario

*Attorney for Member Case Plaintiff Cristian Barrera*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

This is to certify that on October 1, 2024, a true and correct copy of the foregoing instrument was served via the Court's electronic filing system.

/s/ Don J. Foty
Don J. Foty

## CERTIFICATE OF CONFERENCE

This is to certify that Plaintiffs have conferred with Defendant and Defendant is unopposed to the relief sought in this Motion.

/s/ Don J. Foty
Don J. Foty