MATTHEW S. PARMET, SBN 296742
  matt@parmet.law
PARMET PC
340 S. Lemon Ave., #1228
Walnut, CA 91789
Telephone: 713.999.5228
Facsimile: 713.999.1187

*Local Counsel for Plaintiffs*
*Boone and Rivera*

*DON J. FOTY
  dfoty@hftrialfirm.com
*DAVID W. HODGES
  dhodges@hftrialfirm.com
HODGES & FOTY, LLP
2 Greenway Plaza, Suite 250
Houston, TX 77046
Telephone: 713.523.0001
Facsimile: 713.523.1116

*Attorneys for Plaintiffs Boone and Rivera*

MICHAEL NOURMAND, SBN 198439
  mnourmand@nourmandlawfirm.com
JAMES A. DE SARIO, SBN 262552
  jdesario@nourmandlawfirm.com
THE NOURMAND LAW FIRM, APC
8822 West Olympic Boulevard
Beverly Hills, CA 90211
Telephone: 310.553.3600
Facsimile: 310.553.3603

*Attorneys for Plaintiff Barrera*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| HEATHER BOONE and ROXANNE RIVERA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>CRISTIAN BARRERA, individually,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>Defendant. | Case: 1:21-CV-0241-KES-BAM-LEAD<br><br>Case: 1:22-CV-0146-KES-BAM-MEMBER<br><br>PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS<br><br>Hearing Date: October 29, 2024<br>Time:          9:00 a.m.<br>Courtroom:  8<br>Floor:          6<br>Judge:         Hon. Barbara A. McAuliffe |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 29, 2024 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8, Sixth Floor, before the Honorable Barbara A. McAuliffe, Plaintiffs Heather Boone, Roxanne Rivera, and Christian Barrera ("Plaintiffs") will move this Court for an Order approving Plaintiffs' Counsel's fees and costs and the service awards to Plaintiffs.

The settlement at issue creates a fund of Five Million Five Hundred Thousand Dollars ($5,500,000.00) to be paid by Defendant for the benefit of the proposed Class Members. If finally approved, the proposed settlement would resolve all of the claims raised in this lawsuit. From the settlement, Plaintiffs seek a 1/3 fee for attorney's fees, an additional amount for reimbursement of litigation costs, and a total of $30,000 for service awards to the Named Plaintiffs. These amounts are fair and reasonable given the results achieved in this case.

This Motion is based on the Memorandum of Points and Authorities submitted below, the accompanying Declaration of Don Foty, Declaration of Michael Nourmand, Declaration of Heather Boone, Declaration of Roxanne Rivera, and Declaration of Christian Barrera.

Respectfully submitted,

Dated: October 25, 2024                     **HODGES & FOTY, LLP**

By: /s/ Don J. Foty
    Don J. Foty

*Attorney for Lead Case Plaintiffs Heather Boone and Roxanne Rivera, and Putative Class Members*

Dated: October 25, 2024                     **THE NOURMAND LAW FIRM, APC**

By: /s/ Michael Nourmand
    Michael Nourmand

*Attorney for Member Case Plaintiff Cristian Barrera*

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................... 1

II.  FACTUAL BACKGROUND ....................................................................... 2

III.  ARGUMENTS AND AUTHORITIES....................................................... 4

  A.  The Court should approve the service awards to the Named Plaintiffs. ...................... 4

    1.  The proposed enhancement/service awards are fair and reasonable given the risks involved in commencing this lawsuit. ........................................................... 4

    2.  The proposed enhancement/service award is fair and reasonable given that it represents a very small percentage of the total settlement fund. ................................. 5

    3.  The proposed enhancement/service is award is fair and reasonable given that the Named Plaintiffs have signed a general release............................................ 6

    4.  The proposed enhancement/service award is fair and reasonable given the efforts taken by the Named Plaintiffs in prosecuting this lawsuit............................................. 6

  B.  The Court should approve Plaintiffs' Counsel's attorneys' fees. ................................ 8

    1.  An award of attorney's fees to Plaintiffs' Counsel of one-third of the settlement amount is reasonable and should be approved............................................... 10

    2.  The requested fee award fairly spreads the litigation costs among the Class. ............ 14

    3.  The lodestar cross-check further confirms the reasonableness of the requested fee. . 16

  C.  The court should approve Plaintiffs' Counsel's out-of-pocket expenses as they are fair and reasonable............................................................................ 18

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Acosta v. Evergreen Moneysource Mortg. Co.*,
    No. 2:17-cv-00466-KJM-DB, 2019 U.S. Dist. LEXIS 198728 (E.D. Cal. Nov. 14, 2019) ........ 7

*Aldapa v. Fowler Packing Co.*,
    No. 1:15-cv-00420-ADA-SAB, 2023 U.S. Dist. LEXIS 98344 (E.D. Cal. June 5, 2023) ........ 11

*Almanzar v. Home Depot U.S.A., Inc.*,
    No. 2:20-cv-0699-KJN, 2024 U.S. Dist. LEXIS 1453 (E.D. Cal. Jan. 2, 2024) ........................ 5

*Amaro v. Gerawan Farming Inc.*,
    No. 1:14-cv-00147-DAD-SAB, 2020 U.S. Dist. LEXIS 189529 (E.D. Cal. Oct. 12, 2020) ...... 4

*Benitez v. W. Milling, LLC*,
    No. 1:18-cv-01484-SKO, 2020 U.S. Dist. LEXIS 108900 (E.D. Cal. June 19, 2020) .............. 7

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................................................ 8

*Bowen v. Jea Senior Living Health & Welfare Ben. Plan, LLC*,
    No. 2:20-cv-2318-KJN, 2023 U.S. Dist. LEXIS 218839 (E.D. Cal. Dec. 8, 2023) ................. 11

*Cavazos v. Salas Concrete, Inc.*,
    No. 1:19-cv-00062-DAD-EPG, 2022 U.S. Dist. LEXIS 132056 (E.D. Cal. July 25, 2022) ... 5, 7

*Chambers v. Whirlpool Corp.*,
    2016 WL 5922456 (C.D. Cal. Oct. 11, 2016) ........................................................................ 9

*Chavez v. Netflix, Inc.*,
    162 Cal.App.4th 43 (2008) ................................................................................ 10, 15, 16

*Cicero v. DirecTV, Inc.*,
    No. 07-1182, 2010 U.S. Dist. Lexis 86920 (C.D. Cal. 2010) ................................................. 10

*Connelly v. Starbucks Corp.*,
    No. 1:21-cv-00746-SAB, 2023 U.S. Dist. LEXIS 175711 (E.D. Cal. Sept. 28, 2023) .............. 6

*Dakota Med., Inc. v. RehabCare Grp., Inc.*,
    No. 1:14-CV-2081-DAD-BAM, 2017 U.S. Dist. LEXIS 154458 (E.D. Cal. Sept. 20, 2017) .. 11

*Earley v. Super. Ct.*,
    79 Cal. App. 4th 1420 (2000) ........................................................................... 15, 18

*Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*,
   250 F.3d 1234 (9th Cir. 2001) ................................................................... 9

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ................................................................... 14

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ................................................................... 18

*Hartley v. On My Own, Inc.*,
   No. 2:17-cv-00353-KJM-EFB, 2020 U.S. Dist. LEXIS 154315 (E.D. Cal. Aug. 25, 2020) .. 5, 7

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................... 16

*In Re Activision Secs. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................... 17

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cr. 2011) ................................................................... 9

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................... 15

*Kabasele v. Ulta Salon*,
   No. 2:21-cv-1639 WBS KJN, 2024 U.S. Dist. LEXIS 21589 (E.D. Cal. Feb. 6, 2024) .......... 11

*Ketchum v. Moses*,
   24 Cal.4th 1122 (2001) ................................................................... 14

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. 2009) ................................................................... 10

*Laffitte v. Robert Half Int'l., Inc.*,
   231 Cal.App.4th 860 (2014) ................................................................... 8, 9

*Laffitte v. Robert Half Int'l*,
   1 Cal. 5th 480 (2016) ................................................................... 8, 16, 17

*Lealao v. Beneficial California, Inc.*,
   82 Cal. App. 4th 19 (2000) ................................................................... 12, 15, 16

*Mangold v. Cal. Public Util. Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) ................................................................... 9

PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS

*Martinez v. Knight Transp., Inc.*,
  No. 1:16-cv-01730-SKO, 2023 U.S. Dist. LEXIS 51757 (E.D. Cal. Mar. 24, 2023) ................ 4

*Martinez v. Knight Transp., Inc.*,
  No. 1:16-cv-01730-SKO, 2023 U.S. Dist. LEXIS 160285 (E.D. Cal. Sept. 8, 2023) ................ 5

*McCown v. City of Fontana*,
  565 F.3d 1097 (9th Cir. 2009) ............................................................................................ 12

*Melendres v. City of Los Angeles*,
  45 Cal. App. 3d 267 (1975) ................................................................................................ 15

*Newell v. Ensign United States Drilling Cal. Inc.*,
  No. 1:19-cv-01314-JLT-BAK, 2022 U.S. Dist. LEXIS 123377 (E.D. Cal. July 12, 2022) ........ 7

*Nw. Energetic Servs., LLC v. Cal. Franchise Tax Bd.*,
  159 Cal. App. 4th 841 (2008) ............................................................................................ 14

*Press v. Lucky Stores, Inc.*,
  34 Cal.3d 311 (1983) ......................................................................................................... 16

*Rider v. County of San Diego*,
  11 Cal. App. 4th 1410 (1992) ............................................................................................ 18

*Rodriguez v. Kraft Foods Grp.*,
  No. 1:14-cv-1137-LJO-EPG, 2016 U.S. Dist. LEXIS 138652 (E.D. Cal. Oct. 4, 2016) ........... 7

*Serrano v. Priest*,
  20 Cal. 3d 25 (1977) .............................................................................................. 12, 14, 18

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000) ................................................................................. 10

*Stetson v. Grissom*,
  821 F.3d 1157 (9th Cir. 2016) ............................................................................................ 18

*Taylor v. FedEx Freight, Inc.*,
  No. 1:13-cv-01137-DAD-BAM, 2016 U.S. Dist. LEXIS 142202 (E.D. Cal. Oct. 12, 2016) ..... 5

*Turk v. Gale/Triangle, Inc.*,
  No. 2:16-cv-00783-MCE-DB, 2017 U.S. Dist. LEXIS 154631 (E.D. Cal. Sept. 20, 2017) ....... 7

*Van Vranken v. Atlantic Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) .................................................................................... 17

*Vandervort v. Balboa Capital Corp.*,
 8 F.Supp.3d 1200 (C.D. Cal. 2014) .......................................................................... 10

*Vasquez v. Leprino Foods Co.*,
 No. 1:17-CV-796-JLT-BAM, 2024 U.S. Dist. LEXIS 24274 (E.D. Cal. Feb. 12, 2024) ......... 11

*Villalpando v. Exel Direct Inc.*,
 2016 WL 7740854 (N.D. Cal. Dec. 12, 2016) ............................................................. 9

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ..................................................................... 8, 10, 12, 17

*Wershba v. Apple Computer, Inc.*,
 91 Cal. App. 4th 224 (2001) .................................................................................. 17

*Wren v. RGIS Inventory Specialists*,
 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............................................................. 11


Statutes

29 U.S.C. § 201 ......................................................................................................... 2

California Business & Professions Code §§ 17200 ........................................................ 2

California Labor Code § 226 ....................................................................................... 2

California Labor Code § 2802 ..................................................................................... 2


Other Authorities

Rubenstein, Conte and Newberg, Newberg on Class Actions at § 14:6 ....................... 10

PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On May 22, 2024, this Court granted the Plaintiffs' Motion for Preliminary Approval of the class action settlement that was reached in this case. (Dk. 105). The settlement at issue creates a settlement fund of $5.5 million. There is no reversion to Amazon and each Class Members will receive a monetary payment that is proportionally based on their dates of employment and weeks worked. The settlement provides substantial benefits to the Class Members. The settlement provides monetary relief to each Class Member that is, as calculated by Plaintiffs, approximately 100% of the amount of unpaid wages that is owed as a result of completing COVID-19 screenings off the clock at approximately one minute per shift. This recovery is significant given that Amazon maintains that it complied with the law at all times, that the time spent completing COVID-19 screenings is not compensable, and even if it was, that the amount of time employees spent off the clock because of the COVID-19 screenings was a matter of seconds.

In addition to filing Plaintiffs' Motion for Preliminary Approval, Plaintiffs also submitted a brief asking the Court to approve their requested attorneys' fees and costs and the service awards to the Named Plaintiffs. (Dkt. 103). Plaintiffs' Counsel submitted their lodestar and a summary of their hourly rates in support of their request for approval of attorneys' fees. (*See id*.). Plaintiffs' Counsel also submitted their request for approval of the service awards to the Named Plaintiffs. (*See id*.) The Court granted preliminary approval of Plaintiffs' Counsel's fee request, request for reimbursement of costs, and request for approval of the service awards. (Dk. 105).

After the Court granted preliminary approval of the settlement, 249,598 people were sent the Notice of the Settlement. (*See* Dkt. 108-3). Not a single Class Member objected to the settlement, including to the attorneys' fees, costs, or service awards that are being sought. Considering the benefits provided to the Class Members and the lack of any objection, Plaintiffs respectfully ask that the Court approve the service awards allocated in the settlement agreement and approve Plaintiffs' Counsel's fees and costs.

## II.    **FACTUAL BACKGROUND**

On February 23, 2021, Plaintiffs Heather Boone and Roxanne Rivera filed the lead case in these consolidated actions alleging that Amazon (1) failed to pay them for all hours worked, (2) failed to pay them overtime wages, (3) provided to them invalid wage statements, and (4) a derivative violation of California Business & Professions Code §§ 17200 *et seq.* (through violation of California Labor Code § 2802 and/or California Labor Code § 226). (*See* Dkt. 1.). Boone and Rivera filed this lawsuit as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. and as a Rule 23 Class Action under the California Labor Code. *Id.* They sought damages on their own behalf and on behalf of a putative class. *Id.* Boone and Rivera later added to their lawsuit representative claims under PAGA. On November 12, 2021, Plaintiff Cristian Barrera filed a class action against Defendant in California state court based on the same allegations, which was later removed to federal court and consolidated with *Boone. Barrera v. Amazon.com Services LLC*, Case No. 1:22-cv-00146 (E.D. Cal.) (*Barrera I*). On January 25, 2022, Barrera filed a separate action under PAGA in Orange County Superior Court, also based on the same allegations. *Barrera v. Amazon.com Services LLC* (Orange County Sup. Ct. Case No. 30-2022-01242167-CU-OE-CXC) (*Barrera II*) (collectively with *Boone* and *Barrera I*, the "Actions").

Since the inception of this case, Amazon disputed all liability. In June 2021, Amazon filed a Motion to Dismiss arguing that the time spent undergoing Covid screenings is not compensable under the law. (Dkt. 24). On March 11, 2022, the Court granted in part and denied in part Amazon's Motion to Dismiss. (Dkt. 39). In the decision, the Court held that the facts as pled by the Plaintiffs establish that the time spent in the COVID-19 screenings are compensable under both the California Labor Code and the Fair Labor Standards Act ("FLSA"). (*See id.*) Afterwards, Amazon sought an interlocutory appeal under section 1292(b) (Dkt. 44), which the parties have fully briefed and is pending. Boone and Rivera's Counsel also moved to be appointed by the Court as interim class counsel. (Dkt. 62). Findings and Recommendations recommending that the Court grant the motion for appointment as interim class counsel were issued on May 30, 2023. (Dkt.

PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS

74). On October 18, 2023, the Court adopted that recommendation in full and granted the *Boone* plaintiffs' motion to appoint their counsel as interim class counsel. (Dkt. 80).

Along with this motion practice, the Parties engaged in informal merits-based and class discovery for settlement purposes. Amazon produced substantial visual evidence of the COVID-19 screenings collected by security cameras at several facilities in California. (Ex. "2" – Declaration of Don Foty at ¶ 34). Additionally, Amazon produced the payroll data and time clock data for the California Class. (*Id.*) Plaintiffs retained three experts: (1) Chad Staller (economist), (2) Nichols Briscoe (economist), and (3) Richard Drogin, Ph.D. (statistician). (*Id.*) Plaintiffs then produced to Amazon two expert reports and a damages analysis. (*Id.*) The expert reports provide an evaluation of the surveillance data and the amount of time spent undergoing the COVID-19 screenings. (*Id.*) This factual history demonstrates that significant issues pertaining to liability, damages, and class certification were fully developed and explored prior to reaching the settlement.

On April 6, 2023, the Parties attended a full-day mediation with experienced mediator Lisa Klerman. (*Id.* at ¶ 35). Ms. Klerman is a well-regarded mediator who has mediated hundreds of class action cases involving claims under the California Labor Code. (*Id.*) Based on the discovery and investigation undertaken, Plaintiffs were able to engage in well-informed settlement negotiations with Defendant. (*Id.*) Negotiations between the Parties were rigorous and conducted at arms-length. The mediation on April 6, 2023 was unsuccessful. (*Id.*) Nevertheless, the Parties continued to negotiate with the assistance of Ms. Klerman. (*Id.*) Ms. Klerman played an active role in the settlement negotiations, including identifying each side's strengths, weaknesses, and risks. (*Id.*) Ms. Klerman also had the benefit of detailed briefs, dozens of exhibits (including statistical modeling), and hours of in-person discussions with the Parties and their counsel. (*Id.*) This process culminated in a settlement at the end of August 2023. (*Id.*)

Therefore, in light of the efforts performed by the Named Plaintiffs and Plaintiffs' Counsel in this case, a settlement was reached that provides significant benefits to the Class Members. Plaintiffs

now respectfully ask that the Court approve the service awards to the Named Plaintiffs and approve Plaintiffs' Counsel's requested fees and costs.

## III.     ARGUMENTS AND AUTHORITIES

### A.  The Court should approve the service awards to the Named Plaintiffs.

Plaintiffs respectfully move the Court for a service award of $10,000 to each of the Named Plaintiffs for a total of $30,000.  Attached hereto as Exhibits "3" – "5" are the Declarations of Named Plaintiffs Boone, Rivera, and Barrera. (*See* Ex. "3" to "5.").  The Named Plaintiffs' Declarations describe their efforts in this litigation, which ultimately resulted in a class settlement benefiting a class of hourly paid employees of Amazon. (*See id*.)

The proposed service awards are fair and reasonable given the results achieved.  Courts in the Eastern District of California have granted service awards more than the amounts sought in this case to plaintiffs who devoted their time and effort towards class action lawsuits. The proposed settlement agreement is not contingent on any enhancement/service award whatsoever. However, the Named Plaintiffs have actively assisted counsel in litigating this case and have provided valuable information to Plaintiffs' Counsel.  For the following reasons the Court should approve the enhancement/service awards.

### 1.  The proposed enhancement/service awards are fair and reasonable given the risks involved in commencing this lawsuit.

"[I]ncentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk in suing their employer. *Martinez v. Knight Transp., Inc.*, No. 1:16-cv-01730-SKO, 2023 U.S. Dist. LEXIS 51757, at *37 (E.D. Cal. Mar. 24, 2023); *accord Amaro v. Gerawan Farming Inc.*, No. 1:14-cv-00147-DAD-SAB, 2020 U.S. Dist. LEXIS 189529, at *27 (E.D. Cal. Oct. 12, 2020).  Here, each of the Named Plaintiffs incurred substantial risk by filing this lawsuit, including the risk of damage to their reputations. (*See* Ex. "3," "4," "5" – Declarations of Boone, Rivera, and Barrera). Amazon is one of the largest and richest corporations in the county with substantial resources. (*See id*.)  Nevertheless, the Named Plaintiffs brought this case to help their

PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS

co-workers recover the unpaid wages they believe are owed to them. (*See id*.) Through their efforts, the Class acquired a significant recovery. (*See id*.)

This Court has acknowledged that named plaintiffs normally face the risk of damage to their reputations and therefore, are entitled to enhancement awards. For instance, in *Almanzar v. Home Depot U.S.A., Inc*., the named plaintiff was awarded $15,000 for an enhancement award after the court determined that he had "opened himself up to certain risks in pursing litigation, such as the risk of stigma by future employers." *Almanzar v. Home Depot U.S.A., Inc.*, No. 2:20-cv-0699-KJN, 2024 U.S. Dist. LEXIS 1453, at *34-35 (E.D. Cal. Jan. 2, 2024). Similarly, in *Taylor v. FedEx Freight, Inc*., the court awarded $15,000 to the named plaintiff after acknowledging the "personal risks associated with the stigma of brining the lawsuit." *Taylor v. FedEx Freight, Inc.*, No. 1:13-cv-01137-DAD-BAM, 2016 U.S. Dist. LEXIS 142202, at *21-23 (E.D. Cal. Oct. 12, 2016); *see also Hartley v. On My Own, Inc.*, No. 2:17-cv-00353-KJM-EFB, 2020 U.S. Dist. LEXIS 154315, at *17 (E.D. Cal. Aug. 25, 2020) (awarding enhancement award to named plaintiff after taking into account risk of adverse employment consequences and financial risks borne by plaintiff as a result of her involvement in the case, including risk of reputational harm in the community and with respect to future employment opportunities as a result of public exposure in the class action). The facts in the present case support the enhancement/service award sought herein.

**2.**  **The proposed enhancement/service award is fair and reasonable given that it represents a very small percentage of the total settlement fund.**

The Court should also find the enhancement award to be fair and reasonable given that it represents a very small percentage of the total settlement fund. $10,000 out of a total settlement of $5,500,000 is 0.18%. This percentage is smaller than what courts in this District have approved in prior cases. For instance, in *Martinez v. Knight Transp., Inc*., the court awarded a service award that constituted 2.5% of the gross settlement amount. *Martinez v. Knight Transp., Inc.*, No. 1:16-cv-01730-SKO, 2023 U.S. Dist. LEXIS 160285, at *39-40 (E.D. Cal. Sept. 8, 2023). In *Cavazos v. Salas Concrete, Inc*., the court awarded a service award that was 5.7% of the total settlement amount. *Cavazos v. Salas Concrete, Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 U.S. Dist. LEXIS 132056, at

*41-42 (E.D. Cal. July 25, 2022) (awarding $10,000 to named plaintiff even though it constituted 5.7% of the gross settlement amount; the court also noted the possible harm to plaintiff's future career prospects due to "existing a public record of him bringing a class action complaint against his employer.") These facts support approval of the enhancement/service award.

**3.** **The proposed enhancement/service is award is fair and reasonable given that the Named Plaintiffs have signed a general release.**

It is also important to note that the Named Plaintiffs have signed a general employment release. This general employment release provides additional consideration for the enhancement/service award. Courts in this District have found service awards to be appropriate when the named plaintiffs signed releases that were broader than those of the class members. *See, e.g., Connelly v. Starbucks Corp.*, No. 1:21-cv-00746-SAB, 2023 U.S. Dist. LEXIS 175711, at *34-35 (E.D. Cal. Sept. 28, 2023) (approving $10,000 to named plaintiff who signed general release of individual claims). Here, the Named Plaintiffs have generally released their employment claims against Amazon, in addition to the COVID screening claims they raised in the lawsuit. The general release they signed supports the enhancement/service award.

**4.** **The proposed enhancement/service award is fair and reasonable given the efforts taken by the Named Plaintiffs in prosecuting this lawsuit.**

The proposed enhancement/service award is fair and reasonable given the efforts undertaken by the Named Plaintiffs. The Named Plaintiffs Boone and Rivera committed between 40 hours and 55 hours each towards the prosecution of this case. (Ex. "3" and "4.") Named Plaintiff Barrera committed a similar amount of time. (Ex. "5."). They undertook the following efforts: (1) providing information about their work experience with Amazon to Plaintiffs' Counsel; (2) providing statements of factual details to Plaintiffs' Counsel to assist in understanding the claims and the potential damages; (3) engaging in discussions with Plaintiffs' Counsel and their staff the during the initial investigation, and after the case was filed; (4) discussing the complaint with the attorneys and the claims that were alleged; (5) consulting with Plaintiffs' Counsel during the lawsuit; and (6) discussing mediation with

Plaintiffs' Counsel and potential resolution of this action, amongst other activities. (Ex. "3," "4," and "5.").

In *Acosta v. Evergreen Moneysource Mortg. Co*., this Court awarded $10,000 to a named plaintiff who spent 40 hours of his time working on the lawsuit. *Acosta v. Evergreen Moneysource Mortg. Co.*, No. 2:17-cv-00466-KJM-DB, 2019 U.S. Dist. LEXIS 198728, at *52-53 (E.D. Cal. Nov. 14, 2019). The *Acosta* Court stated "[t]hese rates, comparatively speaking, are reasonable if not more than reasonable." *Id.* The facts in *Acosta* are similar to the facts in the present case.

Similarly, in *Cavazos v. Salas Concrete, Inc*., the court awarded $10,000 to the named plaintiff who spent 40.32 hours working on the case. *Cavazos v. Salas Concrete, Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 U.S. Dist. LEXIS 132056, at *41-42 (E.D. Cal. July 25, 2022); *see also Rodriguez v. Kraft Foods Grp.*, No. 1:14-cv-1137-LJO-EPG, 2016 U.S. Dist. LEXIS 138652, at *47-48 (E.D. Cal. Oct. 4, 2016) ($10,000 to named plaintiff who conducted 40 hours of work on case); *Turk v. Gale/Triangle, Inc.*, No. 2:16-cv-00783-MCE-DB, 2017 U.S. Dist. LEXIS 154631, at *13 (E.D. Cal. Sept. 20, 2017) ($10,000 to named plaintiff who was "involved in every step of the litigation, has been cooperative and helpful in gathering facts and support, and has taken on a risk by suing his former employer"); *Hartley v. On My Own, Inc.*, No. 2:17-cv-00353-KJM-EFB, 2020 U.S. Dist. LEXIS 154315, at *17 (E.D. Cal. Aug. 25, 2020) ($10,000 to named plaintiff who spent 60 hours working on case; court took into account risk of adverse employment consequences and financial risks borne by plaintiff as a result of her involvement in the case).

Finally, it is important to note that courts in this District have approved service/enhancement awards much higher than the amounts requested herein. *See, e.g*., *Newell v. Ensign United States Drilling Cal. Inc.*, No. 1:19-cv-01314-JLT-BAK, 2022 U.S. Dist. LEXIS 123377, at *31 (E.D. Cal. July 12, 2022) ($35,000 to one named plaintiff and $25,000 to the other); *Watson v. Tennant Co.*, No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 166823, at *19-20 (E.D. Cal. Sept. 11, 2020) ($25,000 to a named plaintiff); *Benitez v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 U.S. Dist. LEXIS 108900, at *33 (E.D. Cal. June 19, 2020) ($20,000 to one of the named plaintiffs); *Almanzar v. Home Depot U.S.A., Inc.*, No. 2:20-cv-0699-KJN, 2024 U.S. Dist. LEXIS 1453, at *35 (E.D. Cal.

Jan. 2, 2024) ($15,000 to named plaintiff).  For these reasons, Plaintiffs respectfully ask that the Court approve the service/enhancement awards.

**B.  The Court should approve Plaintiffs' Counsel's attorneys' fees.**

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorneys' fees from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The California Supreme Court clarified its stance on common fund cases, stating as follows:

> We join the overwhelming majority of federal and state courts in holding that when class action litigation established a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created.

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016). Explaining its ruling, the *Laffitte* Court further held that "[t]he recognized advantages of the percentage method – including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging litigation – convince us the percentage method is a valuable tool that should not be denied by our trial courts." *Id*. (internal citations omitted); *see also Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002).

The California Supreme Court in *Laffitte* affirmed a fee award representing one-third of the fund and rejected the objections of putative class members to this award. *Laffitte*, 1 Cal.5th at 506. Further, the one-third fee was based on a lodestar amount that required a multiplier of 2.13. *Id*. at 487. As the *Laffitte* Court held, only when the multiplier is "extraordinarily high or low [should] the trial court [] consider whether the percentage method should be adjusted so as to bring the imputed multiplier within a justifiable range." *Id*. at 505. Moreover, in the *Laffitte* intermediate court decision, the court observed that "33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits." *Laffitte v. Robert Half Int'l., Inc*. (2014) 231 Cal.App.4th 860, 871.

Federal courts in California, including in this District, have followed *Laffitte* in awarding 1/3 of the common fund. For example, in *Emmons v. Quest Diagnostics Clinical Labs., Inc*., No. 1:13-

CV-00474-DAD-BAM, at *7 (E.D. Cal. Feb. 27, 2017), this court followed *Laffitte* in awarding 33.33% of the common fund. As the court explained, "[t]he California Supreme Court recently held that the percentage-of-fund method of calculating attorneys' fees survives in California courts." *Id*. Further, the Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cr. 2011).

Likewise, the Northern District of California in *Villalpando v. Exel Direct Inc*., No. 3:12-CV-04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016), cited *Laffitte* when awarding 33.33% of the common fund:

> Plaintiffs' fee request of $ 4,500,000 represents one-third of the Settlement Fund, which is reasonable under both applicable law, and in light of the contingent risk, Counsel's documented lodestar, the complex and protracted nature of the case, and strong result for the Class.

*Id*.

Moreover, as reiterated by the Ninth Circuit, courts are obligated to apply California law in diversity jurisdiction cases in awarding attorneys' fees. *Farmers Ins. Exch. v. Law Offices of Conrad Joe Sayas, Jr*., 250 F.3d 1234, 1236 (9th Cir. 2001) ("Because this case is based on diversity jurisdiction, we are obligated to apply California state law regarding attorneys' fees."). Likewise, in *Chambers v. Whirlpool Corp*., No. CV111733FMOJCGX, 2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016), the Central District of California further reiterated that, "[i]n diversity actions....the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees." *Id*. (emphasis added, citing *Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)).

Pursuant to the numerous cases cited above, Plaintiffs respectfully request that the Court apply *Laffitte* and award 1/3 of the common fund. As discussed below, Plaintiffs' Counsel assumed all the risks in working on this case on a contingency basis. Moreover, in prosecuting this action diligently and efficiently, Plaintiffs' Counsel has created an ascertainable fund from which reasonable attorneys' fees can be easily calculated and awarded. The settlement of $5,500,000 will substantially benefit the Class.

1. **An award of attorney's fees to Plaintiffs' Counsel of one-third of the settlement amount is reasonable and should be approved.**

Plaintiffs seek an attorneys' fee award of one-third of the settlement amount. The requested fee award should be approved because: (1) it is consistent with recent Federal and California court awards in similar wage and hour class settlements; (2) it is reasonable in light of the substantial monetary benefits conferred on the Class; (3) it achieves the dual purposes of a common fund award from those who benefited from the settlement while rewarding and encouraging competent counsel to handle complex, contingency, class action cases like this; and (4) the lodestar cross-check, while not required, nevertheless confirms its reasonableness.

i. *The requested 1/3 fee is supported by awards in similar cases.*

The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method, with 20-30% is the usual range in common fund cases where recovery is between $50 and $200 million. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). However, 30-50% is commonly awarded in cases in which the common fund is smaller than $10 million. *See* Rubenstein, Conte and Newberg, Newberg on Class Actions at § 14:6. Indeed, a review of California cases "reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million." *Cicero v. DirecTV, Inc.*, No. 07-1182, 2010 U.S. Dist. Lexis 86920 at *17 (C.D. Cal. 2010). These smaller class actions frequently involve fee awards in the range of one-third because they do not implicate megafunds where a smaller percentage recovery is more appropriate. *See Vandervort v. Balboa Capital Corp.* 8 F.Supp.3d 1200, 1209-10 (C.D. Cal. 2014).[1] In smaller wage-hour class actions like this one, California Federal courts routinely award attorneys' fees of

---

[1] "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 n.11 (2008) (quoting *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000); *see also Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. 2009) ("fee awards in class actions average around one-third of the recovery") (quoting Newberg on Class Actions § 14.6 (4th ed. 2007)).

percentages equal to or greater than that sought by Plaintiffs in this action.[2]  As noted earlier, this court in *Emmons*, 1:13-cv-00474-DAD-BAM, at *7, awarded 1/3 of the common fund pursuant to the California Supreme Court's holding in *Laffitte*.

Additionally, this Court has approved 1/3 (or greater) of the common fund for attorney's fees in other cases. For instance, in *Vasquez v. Leprino Foods Co.,* No. 1:17-CV-796-JLT-BAM, 2024 U.S. Dist. LEXIS 24274, at *52-62 (E.D. Cal. Feb. 12, 2024) the Court awarded 40% of the common fund for attorney's fees.  Similarly, in *Dakota Med., Inc. v. RehabCare Grp., Inc*., No. 1:14-CV-2081-DAD-BAM, 2017 U.S. Dist. LEXIS 154458, at *30 (E.D. Cal. Sept. 20, 2017) the Court awarded 1/3 of the gross settlement for attorney's fees.

Indeed, 33.33% for attorney's fees is common in this District in wage and hour cases. *See, e.g.*, *Kabasele v. Ulta Salon*, No. 2:21-cv-1639 WBS KJN, 2024 U.S. Dist. LEXIS 21589, at *18 (E.D. Cal. Feb. 6, 2024) (awarding attorney's fees of 33%); *Bowen v. Jea Senior Living Health & Welfare Ben. Plan, LLC*, No. 2:20-cv-2318-KJN, 2023 U.S. Dist. LEXIS 218839, at *32 (E.D. Cal. Dec. 8, 2023) (awarding 1/3 of the common fund for attorney's fees); *Aldapa v. Fowler Packing Co.*, No. 1:15-cv-00420-ADA-SAB, 2023 U.S. Dist. LEXIS 98344, at *29-35 (E.D. Cal. June 5, 2023) (same); *Griffin v. Consol. Commc'ns*, No. 2:21-cv-0885 WBS KJN, 2023 U.S. Dist. LEXIS 98743, at *17-18 (E.D. Cal. June 5, 2023) (awarding 35% for attorney's fees); *Razo v. AT&T Mobility Servs.*, No. 1:20-cv-0172 JLT HBK, 2023 U.S. Dist. LEXIS 72755, at *52-72 (E.D. Cal. Apr. 26, 2023) (awarding 1/3 for attorney's fees); *Cavazos v. Salas Concrete, Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 U.S. Dist. LEXIS 132056, at *38 (E.D. Cal. July 25, 2022) (same).

When viewed in the light of the foregoing authorities, Plaintiffs' requested fee award of one-third should be approved.

---

[2] *See, e.g., Wren v. RGIS Inventory Specialists*, No. C-06-05778, JCS, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) (approving fee award that constituted 42% of the common fund in wage and hour class and collective action); *Birch v. Office Depot, Inc*., No. 06cv1690 DMS, at *13 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16,000,000 wage and hour class action settlement).

PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS

> **ii.    An award of 1/3 of the settlement amount is fair and reasonable in light of the monetary benefits obtained for the Class and the risks faced by Plaintiffs' Counsel.**

In addition to these equity and market considerations, courts also look to the following factors to assess the reasonableness of a common fund award: (1) the results achieved; (2) the riskiness of prosecuting the litigation; (3) the skill and work by counsel; and (4) the financial burden carried by Plaintiffs' Counsel in prosecuting the case on a contingency basis. *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977); *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Vizcaino*, 290 F.3d at 1048-50 (internal citations omitted). As discussed below, each of these factors justifies Plaintiffs' fee request.

> **iii.    The fee request is justified by the positive results achieved.**

The ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff." *McCown v. City of Fontana,* 565 F.3d 1097, 1102 (9th Cir. 2009). Here, Plaintiffs' Counsel achieved a positive result and obtained significant monetary relief for the Class, which justifies the requested fee award. The settlement provides a recovery of approximately 100% of the amount owed assuming one minute was spent off-the-clock as a result of the COVID screenings. This recovery provides significant relief for the Class given the complexity of the issues, the risk and uncertainty inherent in class action litigation, and the myriad factual and legal defenses advanced by Amazon. Under the circumstances a fee award of one-third of the settlement is reasonable and appropriate.

> **iv.    The risks associated with this litigation justify the fee request.**

Plaintiffs' Counsel has taken considerable risk in litigating this case—not just because it was done on a wholly contingency basis (as discussed below) but also because complex, wage-and-hour litigation is an ever-developing area of the law that poses significant risks. In this case, recovery is far from guaranteed and could only occur after years of costly litigation that is rife with risk. Amazon asserted numerous defenses, and currently pending is Amazon's request for an interlocutory appeal to the Ninth Circuit.  Amazon is clearly prepared to employ a multipronged attack aimed at both the scope of the Class and the available damages.

With respect to the liability issues, Amazon argued that the amount of time spent undergoing the screenings was a matter of seconds. Amazon implemented thermal scanners that it contends allowed for a seamless screening process. Additionally, Amazon allowed its employees to download an app on their cell phones which allowed them to clock-in prior to the start of their screenings. These facts presented hurdles to the Plaintiffs' claims.

With respect to class certification, Amazon asserted that the claims raised by the Plaintiffs were not certifiable. Indeed, Amazon has defeated class certification in cases involving security screening before this Court. With respect to certifiability of the derivative wage statement claim, Amazon argued that class certification was tied to the certifiability of the underlying claims and is thus, subject to the same risks. Success by Plaintiffs on any of these issues was not a foregone conclusion at any time. Nevertheless, Plaintiffs' Counsel persevered at great risk (while foregoing other profitable work) on a contingency basis, against a large, nationwide employer and brought this case to a stellar resolution for the Class. As such, these numerous litigation risks further justify the fee award.

### v. The skill of Plaintiffs' Counsel and the quality of their work justifies the fee request.

Plaintiffs' Counsel have demonstrated substantial skill, diligence, and high quality of work in achieving the proposed settlement of $5,500,000. The settlement, and the monetary benefits it conveyed upon the Class, was obtained efficiently and effectively without wasted effort or years of needless, costly litigation. As a result of the skill and tremendous effort of Plaintiffs' Counsel, Plaintiffs were well-positioned to reach a favorable settlement for the Class, which itself required significant expertise, a mediation, and protracted and, at times, contentious negotiations to achieve.

### vi. The contingent nature of the fee and financial burden carried by Plaintiffs' Counsel justify the fee request.

A law firm that prosecutes class action cases does not get paid in every case. Sometimes, it gets nothing or is awarded fees equal to only a small percentage of the amount it actually had worked. Where plaintiffs' counsel does succeed, therefore, it is appropriate to compensate the firm for the risks the firm regularly undertakes. As the California Supreme Court has explained:

[A] contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum v. Moses*, 24 Cal.4th 1122, 1132-33 (2001) (internal citations omitted). Accordingly, courts have recognized that "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002).

In this case, Plaintiffs' Counsel have worked diligently against Amazon since February 2021, and in effect, have loaned their legal services to the entire Class since that time. Plaintiffs' Counsel have prosecuted this case wholly on a contingency basis, and have done so at great risk of never receiving any compensation due to the nature of class action litigation in general, and also due to the numerous factual and legal defenses raised by Amazon. Plaintiffs' Counsel took a tremendous risk by taking on this case, and persevered to attain the settlement on behalf of the Class. To date Plaintiffs' Counsel has spent more than 1,500 hours in time, with significant additional work remaining to be done, without receiving any compensation at all. (*See* Ex. "2" at ¶ 38). In doing so, Plaintiffs' Counsel have turned down other opportunities to work on other legal matters and the associated fees that could have been earned. (*Id*. at ¶ 39).

**2.** **The requested fee award fairly spreads the litigation costs among the Class.**

The percentage-of-the-fund approach is an appropriate method for reviewing attorneys' fees because it allows Plaintiffs and Plaintiffs' Counsel to create "a fund from which others will benefit [and] to require those other beneficiaries to bear their fair share of the litigation costs." *Nw. Energetic Servs., LLC v. Cal. Franchise Tax Bd.*, 159 Cal. App. 4th 841, 878 (2008) (citing *Serrano*, 20 Cal. 3d at 35). This approach ensures that the class members, who have accepted the benefits from a common fund recovery, also accept their fair pro rata responsibility to contribute towards the attorneys' fees and

costs that created the fund in the first place. *Earley v. Super. Ct.*, 79 Cal. App. 4th 1420, 1436 (2000). In other words, "[t]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). Accordingly, the percentage-of-the-fund approach is appropriate here.

In addition to spreading the litigation costs among all the beneficiaries, awards of common fund fees are essential to furthering the important societal goal of attracting competent counsel to handle these often-complex contingency cases, "who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if [attorneys are] assured that [they] will be promptly and directly compensated should [their] efforts be successful." *Melendres v. City of Los Angeles*, 45 Cal. App. 3d 267, 273 (1975). "Given the unique reliance of our legal system on private litigants to enforce substantive provisions of law through class and derivative actions, attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it will otherwise be economic for defendants to increase injurious behavior." *Lealao v. Beneficial Calif., Inc.*, 82 Cal. App. 4th 19, 47 (2000). Without such incentives, meritorious class actions such as this would not be brought and thus, the private enforcement of important statutory rights would be undermined.

California courts further recognize "the amount of attorney fees typically negotiated in comparable litigation should be considered in the assessment of a reasonable fee in representative actions in which a fee agreement is impossible." *Id.* at 47. By doing so, courts can ensure that the awarded fee approximates the legal marketplace by being comparable to what clients and counsel would have likely negotiated at the outset of the matter. Notably, the typical contingency fee contract ranges from 20 to 40 percent of the total recovery—leaving Plaintiffs' requested attorneys' fee in the middle of the spectrum. *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 64-65 (2008).

Here, Plaintiffs' requested fee award is fair and reasonable in light of the monetary relief obtained for the Class. Because each Class Member will receive a share of the settlement, equity requires that they also contribute a pro rata share of the attorneys' fees that netted them this positive result. Moreover, the requested fee of one third of the common fund is equal to or less than typical

fees awarded in similar wage and hour class actions like this one and most contingency fee retainer agreements. *Id.* at 64-65. Thus, the requested fee award ensures that Plaintiffs' Counsel receive an appropriate fee for the actual benefit conferred to the Class.

### 3. **The lodestar cross-check further confirms the reasonableness of the requested fee.**

The California Supreme Court has held that trial courts have discretion to award fees as a percentage of the common fund, with or without conducting a lodestar cross-check. *Laffitte v. Robert Half Internat., Inc.*, 1 Cal. 5th at 506 ("We further hold that trial courts have discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee."). Although not required, courts asked to approve fee awards on a common fund percentage basis may perform a "lodestar cross-check" as a means of determining whether the requested percentage is reasonable in relation to the amount and value of the time expended by counsel. *See Lealao*, 82 Cal.App.4th at 47-50. The goal under either the percentage or lodestar approach is the award of a reasonable fee to compensate counsel for their efforts. *Laffitte v. Robert Half Internat., Inc.*, 1 Cal. 5th at 504.

This cross-check starts with the basic lodestar calculation and then to "evaluate the lodestar as a percentage of the recovery and adjust it accordingly if it can be determined that the lodestar is significantly different from the range of percentage fees freely negotiated in comparable litigation." *Lealao*, 82 Cal.App.4th at 50. Under the first step of the cross-check, the "lodestar" figure is calculated by multiplying "the number of hours [the prevailing party] reasonably expended on the litigation [ ] by a reasonable hourly rate." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Press v. Lucky Stores, Inc.*, 34 Cal.3d 311, 322 (1983)

To date, Plaintiffs' Counsel have spent over 1,500 hours towards this litigation. (Ex. "1" at ¶ 38). Plaintiffs' Counsel will also spend significant additional time responding to Class Member inquiries and overseeing the administration of the settlement. (*Id.* at ¶ 41).

With respect to the reasonable hourly rates, this Court previously issued its opinion as to the reasonable hourly rates for Plaintiffs' Counsel. (Dkt. 105 at p. 30-31). The Court found that the reasonable hourly rates for attorneys in this District were between $325 per hour and $400 per hour. (*Id.* at p. 31). Applying these rates yields a total lodestar for Plaintiffs' Counsel of $486,927.50. (Ex.

"1" at ¶ 38).[3]

Under the second step of the analysis, the reasonableness of the requested fee award is confirmed by the application of a modest multiplier. In wage and hour actions, California and Ninth Circuit courts both approve reasonable multipliers to class counsel's lodestar, which range from 2 to 4 times, to reward counsel for accepting the contingent risk of the litigation or obtaining excellent results. *See, e.g.*, *Laffitte v. Robert Half Internat., Inc.*, 1 Cal. 5th at 506 (approving one-third fee award with multiplier between 2.03 and 2.13); *see also Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) (noting that multipliers can range from 2 to 4 or higher); *Contreras v. Bank of Am., N.A.* (S.F. Cnty. Super. Ct. Sept. 3, 2010) No. CGC-07-467749 (approving one-third of common fund fee award, which was 2.73 multiplier of lodestar); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation").

The multiplier in this case is less than four and the Court previously found that this multiplier was in the range of reasonableness. (Dkt. 105 at p. 32). Nevertheless, courts also recognize that where a plaintiff's attorney is able to obtain a settlement prior to overcoming certain hurdles, such as class and collective certification motions, the plaintiff should not be penalized by use of a straight lodestar in determining the reasonableness of their fee request. *See Vizcaino*, 290 F.3d at 1050 n.5 ("We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief."); *In Re Activision Secs. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (noting "[w]here attorneys must depend on a lodestar approach there is little incentive to arrive at an early settlement.").

Here, a multiplier to Plaintiffs' Counsel's lodestar would be justified based on the substantial monetary results and the contingent risk assumed by Plaintiffs' Counsel who agreed to represent Plaintiffs and the Class with no guarantee of payment. Indeed, a district court "must apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk

---

[3] Plaintiffs' Counsel's lodestar has increased since the last time that Plaintiffs' Counsel submitted their lodestar to the Court because additional work has been performed in this matter.

enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky. Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion.'" *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016). *See e.g*., *Emmons*, 1:13-cv-00474-DAD-BAM, at \*8 (E.D. Cal. Feb. 27, 2017).

Given that the lodestar cross-check confirms that the common fund fee request is reasonable and appropriate, Plaintiffs' Counsel's 1/3 fee request should be approved.

**C. The court should approve Plaintiffs' Counsel's out-of-pocket expenses as they are fair and reasonable.**

Reimbursement of Plaintiffs' Counsel's litigation expenses is appropriate for the same reason attorneys' fees should be paid out of the fund: all beneficiaries should bear their fair share of the costs of the litigation, and these are the normal costs of litigation that counsel traditionally bill their paying clients. *See Serrano*, 20 Cal. 3d at 35 (common fund doctrine permits class counsel to recover attorneys' fees and costs from the fund as a whole); *Rider v. County of San Diego*, 11 Cal. App. 4th 1410, 1423 n.6 (1992) (costs are recoverable from the common fund "[o]f necessity, and for precisely the same reasons discussed above with respect to the recovery of attorney fees"); *Earley v. Superior Court*, 79 Cal. App. 4th 1420, 1436 (2000); *see also Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994).

To date, Plaintiffs' Counsel have incurred $69,881.64 in actual out-of-pocket expenses. (Ex. "1" at ¶ 43). The costs incurred are routinely reimbursed litigation costs that are typically charged to fee-paying clients, including filing fees, process server fees, court reporter fees, postage, computerized legal research charges, expert costs, and mediators' fees. *See also Harris*, 24 F.3d at 19 (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency cases). These costs were necessarily incurred and are reasonable in relation to the size and scope of the case.

A summary of the costs is listed below:

- Expert costs: $55,250.00;

- Mediation: $8,000.00;

- Filing and Service Fees: $4,317.55;

- Research: $1,271.71;

- Copy Charges: $494.25;

- Miscellaneous: $548.13.

(*See* Ex. "1" at ¶ 42; Ex. "2" at ¶ 13.)

Plaintiffs respectfully request that the Court approve reimbursement of these costs.

## **CONCLUSION**

Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Approval of Attorney's Fees, Costs, and Service Awards.

Respectfully submitted,

Dated: October 25, 2024                **HODGES & FOTY, LLP**

By: /s/ Don J. Foty
    Don J. Foty

*Attorney for Lead Case Plaintiffs Heather Boone and Roxanne Rivera, and Putative Class Members*

Dated: October 25, 2024                **THE NOURMAND LAW FIRM, APC**

By: /s/  Michael Nourmand
    Michael Nourmand

*Attorney for Member Case Plaintiff Cristian Barrera*

PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS

## **CERTIFICATE OF SERVICE**

This is to certify that on October 25, 2024, a true and correct copy of the foregoing instrument was served via the Court's electronic filing system.

/s/ Don J. Foty

Don J. Foty