1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   HEATHER BOONE, et al.,                    Case No.  1:21-cv-00241-KES-BAM

12               Plaintiffs,                    Member Case: No. 1:22-cv-00146-NODJ-BAM

13        v.                                    **ORDER GRANTING PLAINTIFFS'
                                                MOTION FOR FINAL APPROVAL OF**
14   AMAZON.COM SERVICES, LLC,                  **CLASS ACTION SETTLEMENT**

15               Defendant.                     (Doc. 108)

16

17
         Currently pending before the Court is the motion for final approval of class action
18
     settlement filed by Plaintiffs Heather Boone, Roxanne Rivera, and Cristian Barrera on October 1,
19
     2024.  (Doc. 108.)  Defendant Amazon.com Services, LLC filed a statement of non-opposition.
20
     (Doc. 109.)  The motion was submitted for decision to the assigned Magistrate Judge following
21
     the stipulation and consent of the parties.  (Docs. 90, 91.)  Also pending before the Court is
22
     Plaintiffs' motion for attorneys' fees, litigation costs, and service awards filed on October 25,
23
     2024.  (Doc.113.)
24
         A hearing on the motions was held via Zoom video conference on October 29, 2024,
25
     before the Honorable Barbara A. McAuliffe.  Counsel Don Foty and James De Sario appeared by
26
     Zoom video on behalf of Plaintiffs Heather Boone, Roxanne Rivera, and Cristian Barrera.
27
     Counsel Bradley Hamburger and Andrew Kilburg appeared by Zoom video on behalf of
28
                                            1

Defendant Amazon.com Services, LLC.

Having considered the briefing and record in this case, Plaintiffs' motion for final approval of the class action settlement will be granted.  Additionally, Plaintiffs' motion for attorneys' fees, costs, and class representative service awards will be granted.  Attorneys' fees will be awarded to Class Counsel in the amount of $1,833,333.33, litigation costs will be awarded in the amount of $69,881.64, and class representative enhancement payments will be awarded in the total amount of $30,000.00.

## BACKGROUND

### A.    Relevant Procedural History

This is a class and collective action initially brought under the Fair Labor Standards Act ("FLSA") and California law. On February 23, 2021, Plaintiffs Heather Boone and Roxanne Rivera filed their complaint against Amazon.com Services, LLC ("Amazon").  Plaintiffs alleged that Amazon implemented an illegal policy requiring its non-exempt workers to undergo a COVID-19 screening each shift without pay.  Plaintiffs claimed this examination constituted compensable time and they therefore forwarded claims for (1) violations of the California Labor Code for failure to pay for all hours worked, failure to pay overtime, failure to furnish timely, accurate, itemized wage statements, and failure to pay all wages upon separation, (2) violation of California's Unlawful/Unfair Competition Law ("UCL"), and (3) and failure to pay overtime under the FLSA.  (Doc. 1.)

Plaintiffs filed a First Amended Complaint on May 14, 2021.  (Doc. 23.)  Thereafter, Plaintiffs filed a Second Amended Complaint on January 14, 2022, which added a representative claim under the Private Attorneys General Act ("PAGA"). (Doc. 36.)

On March 11, 2022, the district court dismissed Plaintiffs' claim for violation of the UCL with leave to amend, but denied the motion to dismiss in all other respects.  (Doc. 39.)  Following Plaintiffs' notice that they did not intend to file a third amended complaint, Amazon answered the Second Amended Complaint on April 11, 2022.  (Doc. 43.)  Amazon also filed a motion for certificate of appealability regarding the FLSA claim, which had not been dismissed by the district court.  (Doc. 44.)

On March 10, 2023, Plaintiffs filed a motion for appointment of the law office of Hodges & Foty, LLP as interim class counsel.  (Doc. 62.)  Plaintiffs indicated that ten months after filing this lawsuit, another law firm filed a similar action seeking to represent the same class for the same claims in the matter of *Barrera v. Amazon.cm Services, LLC*, No. 1:22-cv-0146-ADA-BAM.  The Court required Plaintiffs to provide notice of the motion to counsel in the *Barrera* matter and required the parties to address why the actions should not be consolidated.  (Doc. 64.)

On May 8, 2023, pursuant to the stipulation of the relevant parties, the district court consolidated the *Barrera* matter with this action.[1]  (Doc. 70.)

On August 22, 2023, the parties filed a notice of settlement.  (Doc. 76.)  Thereafter, the Court set a deadline for filing dispositional papers and vacated all other dates and matters.  (Doc. 77.)

On October 18, 2023, the district court appointed Hodges & Foty, LLP as interim class counsel.  (Doc. 80.)

On February 16, 2024, with Amazon's consent, Plaintiffs Boone, Rivera, and Cristian Barrera filed a Third Amended Complaint, which removed their collective action claims brought under the FLSA.  (Doc. 88.)

**B.      Events Leading to Settlement**

On April 6, 2023, the parties attended a full-day mediation with Lisa Klerman, a well-regarded mediator who has mediated hundreds of class action cases involving claims under the California Labor Code.  (Doc. 108 at 10.)  The mediation was unsuccessful, but the parties continued to negotiate with the assistance of Ms. Klerman.  The process culminated in a settlement at the end of August 2023.  (*Id.*)

**1.   Settlement of Class Claims**

Plaintiffs negotiated the settlement of behalf of all current and former non-exempt employees of Amazon in California who underwent one or more COVID-19 temperature screenings during the Class Period.  (Doc. 108-1, Ex. 1, Class Action Settlement and Release

---

[1] On June 6, 2023, the parties filed a stipulation that Amazon's motion to dismiss (or in the alternative stay) *Barrera* was moot and that Amazon had preserved all its issues raised in that motion.  (Doc. 75.)

("SA" or "Settlement Agreement") ¶ 39.)

Plaintiffs also negotiated a settlement on behalf of non-California FLSA opt-in plaintiffs—Taylor Bouie, Camryn McSweeney, Omar Ramirez Vasquez, and George Werito—related to allegations of the failure to pay overtime in violation of the Fair Labor Standards Act. (SA ¶¶ 15, 20.)

Further, Plaintiffs negotiated a settlement of the PAGA claims on behalf of all non-exempt employees of Amazon in California during the relevant PAGA period who underwent one or more COVID-19 temperature screenings.  (SA at 5 and ¶¶ 25, 26.)

### 2. Other Related Cases

Plaintiff Barrera also has a separate action under PAGA pending in Orange County Superior Court, based on the same allegations:  *Barrera v. Amazon.com Services LLC* (Orange County Sup. Ct. Case No. 30-2022-01242167-CU-OE-CXC).  (Doc. 108 at 9.)  As part of the settlement, the parties have agreed that the *Barrera* state court action will be dismissed with prejudice within fourteen days after entry of a final order approving the Settlement Agreement. They also will make all reasonable efforts to ensure that the state court action remains stayed pending approval of the settlement agreement.  (SA ¶ 81.)

## C.  Summary of Settlement Terms

### 1. Settlement Class

The settlement class is defined as follows:

> All current and former non-exempt employees of Amazon.com Services, LLC in California who underwent one or more COVID-19 temperature screenings during the period of April 1, 2020 through July 17, 2021 for individuals who did not work at the facility known as OAK4 in Tracy, California, or the period of April 1, 2020 through February 23, 2022 for those individuals who worked at the facility known as OAK4 in Tracy, California.

(*See* Doc. 108-1, Ex. A to Settlement Agreement, Notice of Class Action Settlement ¶ A.)  There are 249,598 potential Class Members.  (Doc. 108 at 11; Doc. 108-2, Declaration of Amanda Myette for Rust Consulting, Inc. ("Myette Decl.") ¶¶ 10-13.)

### 2. Monetary Relief Under the Settlement

Amazon has agreed to pay $5,500,000.00 to settle this action (the "Gross Settlement

Fund"). (SA ¶ 15.) The Gross Settlement Fund will be deposited into a Qualified Settlement Fund[2] to be established by the Settlement Administrator within 30 calendar days of the Effective Date and does not include the employer's share of applicable payroll tax payments, which will be separately paid by Defendants. (SA ¶¶ 14, 15, 42.) Plaintiffs and Class Counsel negotiated an escalator clause to protect Settlement Class Members such that if the number of Class Members or workweeks increases by more than 10%, the Gross Settlement Fund will increase by a proportional amount. (SA ¶ 60.)

The $5,500,000 Gross Settlement Fund is to be allocated as follows:

(1) Class Representative Enhancement Payments of $10,000 to each of the three named plaintiffs for a total of $30,000. (SA ¶¶ 7, 45.)

(2) Non-California Payments totaling $200, representing $50 to each of the four Non-California FLSA Opt-In Plaintiffs: Taylor Bouie, Camryn McSweeney, Omar Ramirez Vasquez, and George Werito. (SA ¶¶ 20, 21, 46.)

(3) Class Counsel Award of attorneys' fees of not more than one third (1/3) of the Gross Settlement Fund ($1,833,333.33) and costs and expenses not to exceed $100,000. (SA ¶¶ 2, 44.)

(4) Settlement Administration Costs not to exceed $392,341.00 to the settlement administrator. (SA ¶ 37.)

(5) The PAGA Settlement Amount of $100,000 to be allocated as follows: (1) $75,000 California Labor and Workforce Development Agency ("LWDA") penalty; and (2) $25,000 employee payment to PAGA settlement members on a pro rata basis based on the number of weeks worked or workweeks during the PAGA period. (SA ¶¶ 25, 48.)

(*See* SA ¶ 19 (defining "Net Settlement Amount").)

///

---

[2] "Qualified Settlement Fund" means a fund, account, or trust satisfying the requirements of 26 C.F.R. § 1.468B-1, established by the Settlement Administrator for the purpose of distributing the Gross Settlement Fund according to the terms of the Settlement Agreement. (SA ¶ 30.)

### 3. Net Settlement Amount

If the allocations are awarded in full, the Net Settlement Amount available for distribution is an estimated $3,044,125.67.  Amazon maintains no reversionary right to any portion of the Net Settlement Amount.  (SA ¶¶ 43, 49.)  If the Court reduces the enhancement payments, the non-California payments, the class counsel award, the PAGA settlement amount, and/or the settlement administration costs, then the Net Settlement Amount will increase and will be distributed to participating class members.  (*Id.*)

The settlement share for each participating class member will be calculated on a pro rata basis depending on the number of "weeks worked" or "workweeks" (defined as any calendar week during the Class Period) in which a class member performed at least one day of work for Amazon.  (SA ¶ 50.)  Individual PAGA payments will be calculated and apportioned from the 25% portion of the PAGA settlement amount on a pro rata basis based on the number of weeks worked or workweeks during the PAGA period.  (SA ¶ 48.)

Federal Rule of  Civil Procedure 23 ("Rule 23") class members are not required to submit a claim form to participate and receive their settlement amount. (SA ¶¶ 50, 60.)  Settlement checks will be valid for 180 days.  If a check remains uncashed, then the funds from the uncashed check will be sent to the State Controller's Office under the Unclaimed Property Law Statutes. (SA ¶ 69.)

### 4. Releases

Class Members who do not timely submit a Request for Exclusion, i.e., Participating Settlement Class Members, will release Defendant from the "Released Class Claims."  (SA ¶ 63.a.)  "Released Class Claims" means:

> all claims, actions, demands, causes of action, suits, debts, obligations, demands, rights, liabilities, or legal theories of relief, that are based on the facts and legal theories asserted in the operative complaints of the Actions, or which relate to the primary rights asserted in the operative complaints, including without limitation claims for (1) failure to pay all wages in violation of Labor Code §§ 204, 1194, 1194.2, 1197, 1197.1, 1198, (2) failure to pay overtime wages in violation of Labor Code §§ 510, 558, and IWC Wage Order 42001, (3) failure to provide accurate itemized wage statements in violation of Labor Code § 226, (4) failure to maintain accurate records in violation of Labor Code §§ 226 and 1174, (5) failure to pay wages upon separation of employment in violation of Labor Code §§ 201-203, 218, (6) engaging in unlawful, unfair and/or fraudulent business practices in

> violation of Business & Professions Code §§ 17200 et seq., and (7) failure to pay overtime wages in violation of 29 U.S.C. § 207. Notwithstanding the above, the Released Class Claims shall only include claims related to or arising from COVID-19 screenings. The period of the Released Class Claims shall extend to the limits of the Class Period. The *res judicata* effect of the Judgment will be the same as that of the Release.

(SA ¶ 31.)  Each class member who has not opted out shall release all claims during the class period related to or arising from COVID-19 screenings.  (SA ¶¶ 31, 63.a.)

Plaintiffs also agree to a general release of claims arising out of their employment with Amazon as of the date of execution of the Settlement Agreement.  (SA ¶ 63.c.)  Plaintiffs further agree to release all PAGA claims on behalf of themselves and all PAGA employees that accrued through the end of the PAGA period or that could have been asserted in this action based on claims related to or arising from COVID-19 screenings.  (SA ¶¶ 33, 63.b.)

Additionally, the Non-California FLSA Opt-In Plaintiffs agree to release their right to pursue claims against Amazon for the "Released Non-California Claims."  (SA ¶¶ 63.e.)  "Released Non-California Claims" means:

> all claims actions, demands, causes of action, suits, debts, obligations, demands, rights, liabilities, or legal theories of relief, that are based on the facts and legal theories asserted in the Second Amended Complaint in *Boone*, or which relate to the primary rights asserted in the Second Amended Complaint in *Boone*, including without limitation claims for failure to pay overtime in violation of 29 U.S.C. §§ 201 *et seq.*  Notwithstanding the above, the Released Non-California Claims shall only include claims related to arising from COVID-19 screenings. The period of the Released Non-California Claims shall extend to the limits of the FLSA period.  The *res judicata*  effect of the Judgment will be the same as that of the Release.

(SA ¶ 33.)

### 5.  Opt-outs (Exclusions) and Objections

The Class Notice explained to class members that they did not have to do anything to participate in the settlement.  (Notice of Class Action Settlement ("Class Notice"), Myette Decl. at Ex. A.)  However, any class member could file objections to the terms of the settlement or request exclusion ("opt-out") from participation in the settlement.  (*Id.*)  The Class Notice explained the procedures to object to the terms of the settlement and informed individuals that any objections were to be sent to the Court with a postmark on or before September 20, 2024, or

filed with the Court on or before September 20, 2024.  (*Id.*)  The Class Notice also explained the procedures to request exclusion and informed individuals that any requests for exclusion were to be postmarked no later than September 20, 2024.  (*Id.*)   Additionally, the Class Notice explained the procedure to dispute the workweek information provided in the notice by contacting the Settlement Administrator.  (*Id.*)

There is no right to exclude from the PAGA claims and any Rule 23 class member that timely submits a request for exclusion will still receive an individual PAGA payment representing their portion of the PAGA Settlement Amount.  (SA ¶ 60.)

**6. Service of the Class Notice and Responses Received**

On June 21, 2024, the Settlement Administrator received the class list from defense counsel with a mailing list containing Class Members' names, last known addresses, Social Security Numbers, and applicable employment information.  (Myette Decl. ¶ 10.)  The Class List contained data for 249,598 potential Class Members.  (*Id.*)

On July 22, 2024, after conducting a National Change of Address Search, the Settlement Administrator sent the Class Notice by first-class mail to 220 Class Members.  These Class Members were mailed notices because they did not have available email addresses.  (Myette Decl. ¶¶ 11-12.)  On the same date, Class Notices were emailed to 249,378 Class Members.  (*Id.* ¶ 13.)  On July 29, 2024, Class Notices were mailed to 7,502 Class Members due to their emailed notice being non-deliverable.  (*Id.* ¶ 14.)  As of the date of the motion, 240 Class Notices remained undeliverable.  (*Id.* ¶ 15.)

The Settlement Administrator also maintained a settlement website, an email address for receiving communications about the settlement, a toll-free telephone number, and a facsimile number.  (Myette Decl. ¶¶ 5-8.)

As previously indicated, the response deadline for opt-outs and objections was September 20, 2024,  The Settlement Administrator received sixteen (16) opt-outs, but received no objections and no disputes of employment information.  (Myette Decl. ¶¶ 18-20.)  No objections have been filed by any Class Member.  No objectors appeared at the hearing.

Individual settlement payments and PAGA settlement amounts will be made by the

1   Settlement Administrator within twenty-one (21) calendar days of the funding date, which is

2   thirty (30) calendar days after final approval in the absence of objections.  (SA ¶¶ 10, 14, 68.)

3                          **APPROVAL OF CLASS SETTLEMENT**

4          When parties settle the action prior to class certification, the Court has an obligation to

5   "peruse the proposed compromise to ratify both the propriety of the certification and the fairness

6   of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Approval of a class

7   settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.*

8   (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must

9   "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.*

10  (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve

11  or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

12  **I.      Certification of the Settlement Class[3]**

13         To certify a class, a party must demonstrate that all of the prerequisites of Federal Rule of

14  Civil Procedure 23(a), and at least one of the requirements of Rule 23(b) has been met. *Wang v.*

15  *Chinese Daily News, Inc*., 737 F.3d 538, 542 (9th Cir. 2013); *see also Valentino v. Carter-*

16  *Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

17         **A.  Rule 23(a) Requirements**

18         Under Rule 23(a), certification of a class is proper if: "(1) the class is so numerous that

19  joinder of all members is impracticable; (2) there are questions of law or fact common to the

20  class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

21  of the class; and (4) the representative parties will fairly and adequately protect the interest of the

22  class." Fed. R. Civ. P. 23(a)(1)–(4).  These factors are known as "numerosity," "commonality,"

23  "typicality," and "adequacy," respectively.  Assessing these requirements involves "rigorous

24  analysis" of the evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, (2011).

25  *///*

26

27  [3] "Because the class was only conditionally certified upon preliminary approval of the Settlement, final
    certification of the Settlement Class is required."  *Conti v. L'Oreal USA S/D, Inc.*, No. 1:19-cv-0769 JLT
28  SKO, 2023 WL 4600532, at *6 n.5 (E.D. Cal. July 18, 2023).

## 1. Numerosity

Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no absolute number or cut-off for determining numerosity, and the specific facts of each case may be examined. *Schwarm v. Craighead*, 233 F.R.D. 655, 660 (E.D. Cal. 2006); *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008) ("Courts have not required evidence of specific class size or identity of class members to satisfy the requirements of Rule 23(a)(1)."). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007); *see also Cervantez*, 253 F.R.D. at 569 ("Courts have held that numerosity is satisfied when there are as few as 39 potential class members.").

The Settlement Administrator reports that there are 249,598 Class Members.  (Myette Decl. ¶ 10.)  The Court finds that numerosity is satisfied as joinder of such members is impracticable.  *See Celano*, 242 F.R.D. at 549; *Cervantez*, 253 F.R.D. at 569.

## 2. Commonality

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Parties seeking class certification must prove their claims depend on a common contention of such a nature it is capable of class-wide resolution, meaning the determination of its truth or falsity will resolve an issue central to the validity of each claim at once. *Wal-Mart*, 564 U.S. at 350. Class-wide proceedings must generate common answers to common questions of law or fact apt to drive resolution of the litigation. *Id.* The parties must demonstrate class members have suffered the same injury. *Id.* at 349-350.

At the preliminary approval stage, Plaintiffs asserted that the commonality requirement is satisfied because they are challenging Amazon's COVID-19 screening compensation policy that affected all class members.  (Doc. 104 at 11-12.)  Plaintiffs also explained that their claims implicate common questions of law and fact because they are premised on one policy (the COVID-19 screening compensation policy) that applied to all Class Members.  All class members were non-exempt hourly employees at Amazon's retail stores, and thus share several common

1  legal questions, including:  (1) whether time spent waiting in line and completing the COVID-19

2  screenings is compensable under the California Labor Code; and (2) whether the format and

3  information on Amazon's wage statements violated the California Labor Code.  (Doc. 104 at 12.)

4      Plaintiffs claim that the time spent waiting in line and completing the COVID-19

5  screenings is compensable under California law.  They also claim that as a result of Amazon's

6  decision not to automatically compensate employees for time spent undergoing COVID-19

7  screenings, Amazon's wage statements were legally deficient.  Plaintiffs assert that each of these

8  claims challenges Amazon's conduct that affected all Class Members in precisely the same way.

9  Plaintiffs explain that the process for conducting screenings was similar across all Amazon

10  fulfillment and distribution centers.  Under Amazon's company-wide policy, every hourly

11  employee was required to (1) report to a designated location at an Amazon facility, (2) wait in

12  line standing six feet apart from other employees, (3) answer questions about whether they had

13  any signs or symptoms of the Coronavirus, (4) have their temperature taken, (5) wear an Amazon

14  approved mask, and (6) pass the health examination to work that day.  (Doc. 108 at 8.)

15      The Court finds that the commonality requirement is met because Plaintiffs are

16  challenging Amazon's COVID-19 compensation policy that applied to all class members.

17              **3.  Typicality**

18      Rule 23 also requires that "the claims or defenses of the representative parties are typical

19  of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Under Rule 23's permissive

20  standard, claims "need not be substantially identical," but are typical if the representative's claims

21  are "reasonably co-extensive with those of the absent class members." *Parsons v. Ryan*, 754 F.3d

22  657, 685 (9th Cir. 2014) (quoting *Hanlon*, 150 F.3d at 1020). Typicality is based on the "nature of

23  the claim or defense of the class representative, and not to the specific facts from which it arose or

24  the relief sought." *Parsons*, 754 F.3d at 685 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d

25  497, 508 (9th Cir. 1992)). Typicality tests "whether other members have the same or similar

26  injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

27  whether other class members have been injured by the same course of conduct." *Id.* (quoting

28  *Hanon*, 976 F.2d at 508).  The requirements of commonality and typicality occasionally merge,

1  and "[b]oth serve as guideposts for determining whether under the particular circumstances

2  maintenance of a class action is economical and whether the named plaintiff's claim and the class

3  claims are so interrelated that the interests of the class members will be fairly and adequately

4  protected in their absence." *Id.* (quoting *Wal-Mart*, 564 U.S. at 349 n.5).

5       As with the commonality requirement, the Court finds the typicality requirement is

6  satisfied because Plaintiffs' claims arise from the same factual bases and are premised upon the

7  same legal theories as those applicable to the purported class members.  Plaintiffs, like every

8  other class member, were (1) hourly paid employees of Amazon (non-exempt), (2) who were

9  required to report a designated location in Amazon warehouses to complete the screenings, (3)

10  were subject to the same screening policies and procedures, and (4) performed the screenings off-

11  the-clock pursuant to Amazon's policy.

12                    **4.  Adequacy of Representation**

13       The Court must ensure "the representative parties will fairly and adequately protect the

14  interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether the named plaintiffs will

15  adequately represent the class, courts must resolve two questions: "(1) do the named plaintiffs and

16  their counsel have any conflicts of interest with other class members and (2) will the named

17  plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco*

18  *Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

19  "Adequate representation depends on, among other factors, an absence of antagonism between

20  representatives and absentees, and a sharing of interest between representatives and absentees."

21  *Ellis*, 657 F.3d at 985 (citing *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003)). Class

22  representatives "must be part of the class and possess the same interest and suffer the same injury

23  as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (internal

24  quotations and citations omitted). This factor also tends to merge with the commonality and

25  typicality criteria of Rule 23. *Id.* at 626 n.20.

26       The Court appointed Plaintiffs Heather Boone, Roxanne Rivera, Cristian Barrera as Class

27  Representatives as the preliminary approval stage.  (*See* Order, Doc. 105 at 37.)  Plaintiffs and the

28  class share common injuries and generally possess the same interests.  Plaintiffs do not have

1   conflicts of interest with the purported class.  The Court therefore finds that Plaintiffs Boone,

2   Rivera, and Barrera have fairly and adequately represented the interests of the class.   (*See* Doc.

3   108-4, Declaration of Heather Boone ("Boone Decl.") ¶ 4; Doc. 108-5, Declaration of Roxanne

4   Rivera ("Rivera Decl.") ¶ 4; Doc. 108-6, Declaration of Cristian Barrera ("Barrera Decl.") ¶ 4.)

5            On October 18, 2023, the Court approved the appointment of Hodges & Foty, LLP as

6   interim class counsel.  (Doc. 80.)  In making that determination, the Court found that Hodges &

7   Foty, LLP had experience in handling class actions and the types of claims asserted here.  For the

8   same reasons, the Court appointed Hodges & Foty, LLP as Class Counsel at the preliminary

9   approval stage.  (*See* Order, Doc. 105 at 16, 37.)  There are no apparent conflicts with the class

10  and no Class Members objected to the appointment.  The Court therefore finds that Class Counsel

11  have met the adequacy requirement.

12           For the foregoing reasons, the Court finds that the requirements of Rule 23(a) are

13  satisfied.

14      **B.  Rule 23(b) Requirements**

15           A class may only be certified if it also is maintainable under Rule 23(b). Fed. R. Civ. P.

16  23(b); *see also Wang*., 737 F.3d at 542 ("A party seeking class certification must satisfy the

17  requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the

18  categories under Rule 23(b).").  Plaintiffs seek class certification under Rule 23(b)(3).  (Doc. 104

19  at 14.)  A class is maintainable under Rule 23(b)(3) if (1) "questions of law or fact common to the

20  members of the class predominate over any questions affecting only individual members" and (2)

21  "a class action is superior to other available methods for fair and efficient adjudication of the

22  controversy." Fed. R. Civ. P. 23(b)(3). These are referred to as the "predominance" and

23  "superiority" requirements.  *Wal-Mart*, 564 U.S. at 363 ("(b)(3) requires the judge to make

24  findings about predominance and superiority before allowing the class").

25          **1.  Predominance**

26           "The first requirement of Rule 23(b)(3) is predominance of common questions over

27  individual ones." *Valentino*, 97 F.3d at 1234.  The predominance inquiry "trains on the legal or

28  factual questions that qualify each class member's case as a genuine controversy, questions that

1    preexist any settlement," and "tests whether proposed classes are sufficiently cohesive to warrant

2    adjudication by representation." *Amchem Prod.,* 521 U.S. at 594. If a common question will drive

3    the resolution of the litigation, the class is sufficiently cohesive. *Jabbari v. Farmer*, 965 F.3d

4    1001, 1005 (9th Cir. 2020) (court must determine which questions are likely "to drive the

5    resolution of the litigation).

6         At the preliminary approval stage, Plaintiffs indicated that the claims are based on

7    resolution of a central issue:  whether the time spent waiting in line and completing the COVID-

8    19 screening is compensable under California law.  They contended that resolution of this issue

9    could be resolved on a class basis because the policies and procedures for screening were the

10   same for all class members and there is common proof applicable to all class members.  (Doc. 89

11   at 18.)  Further, Plaintiffs asserted that Amazon's screening policy predominates over any

12   individualized issue and serves as a common fact uniting the Plaintiffs' individual claims and the

13   claims of Class Members.  (Doc. 104 at 14.)

14        As on preliminary approval, the Court finds that the claims asserted all arise from

15   Amazon's screening policy and that issues related to this policy predominate over any individual

16   issues.

17            **2.  Superiority**

18        "Where classwide litigation of common issues will reduce litigation costs and promote

19   greater efficiency, a class action may be superior to other methods of litigation. A class action is

20   the superior method for managing litigation if no realistic alternative exists." *Valentino*, 97 F.3d

21   at 1234–35. Factors relevant to the superiority requirement under Rule 23(b)(3) include:

22                 (A) The class members' interests in individually controlling the
                       prosecution or defense of separate actions;
23

24                 (B) the extent and nature of any litigation concerning the controversy
                       already begun by or against class members;

25                 (C) the desirability or undesirability of concentrating the litigation of the
                       claims in the particular forum; and
26

27                 (D) the likely difficulties in managing a class action.

28   Fed. R. Civ. P. 23(b)(3); *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.),

14

1    opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001) ("In determining superiority,

2    courts must consider the four factors of Rule 23(b)(3).") "A consideration of these factors

3    requires the court to focus on the efficiency and economy elements of the class action so that

4    cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a

5    representative basis." *Zinser*, 253 F.3d at 1190. However, where "confronted with a request for

6    settlement-only class certification, a district court need not inquire whether the case, if tried,

7    would present intractable management problems, for the proposal is that there be no trial."

8    *Amchem Prod., Inc.,* 521 U.S. at 620.

9                                  a.   Class members' interest in individual litigation

10           First, the Court considers "the class members' interests in individually controlling the

11   prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). This factor is most

12   relevant when class members "suffered sizeable damages or [have] an emotional stake in the

13   litigation." *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 301 (C.D. Cal. 2011). "Where

14   damages suffered by each putative class member are not large, this factor weighs in favor of

15   certifying a class action." *Zinser*, 253 F.3d at 1190.

16           As reported by the Settlement Administrator, there are 16 opt-outs and no objections to

17   the settlement.  (Myette Decl. ¶¶ 19-20.)  There is no indication that the majority of Class

18   Members seek to control this action or litigate a separate action.  The payments to Class Members

19   are asserted to be relatively low amounts, as the settlement provides a recovery of approximately

20   one minute of screening time, per person, per shift.  (*See* Doc. 108 at 17; Doc.108-2, Declaration

21   of Don J. Foty ("Foty Decl.") ¶ 23.)  It is unlikely that individuals would pursue relatively small

22   claims.  *See*, *e.g.*, *Conti*, 2023 WL 4600532, at *9 (concluding it was unlikely individuals would

23   pursue small claims with an estimated average payment of $584.59, with a highest payment of

24   $2,849.49.)  This factor weighs in favor of class certification.

25                                 b.   Other litigation

26           Second, the Court considers "the extent and nature of any litigation concerning the

27   controversy already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B).  Here,

28   Plaintiff Barrera has a separate action under PAGA pending in Orange County Superior Court,

1   based on the same allegations:  *Barrera v. Amazon.com Services LLC* (Orange County Sup. Ct.

2   Case No. 30-2022-01242167-CU-OE-CXC).  (Doc. 108 at 9.)  The Class Notice informed PAGA

3   settlement members of the existence of this matter by indicating that PAGA settlement members

4   would release all claims for civil penalties pursuant to PAGA based on the facts and legal theories

5   asserted in *Barrera v. Amazon.com Services LLC*, Case No. 30-2022-01242167-CU-OE-CXC

6   (Orange County Superior Court.  (Class Notice, Ex. A to Myette Decl.)  This factor does not

7   weigh against class certification.

8               c.   Concentration in one forum

9        Third, the Court considers "the desirability or undesirability of concentrating the litigation

10   of the claims in the particular forum."  Fed. R. Civ. P. 23(b)(3)(C).

11       There is no suggestion the Eastern District is an undesirable forum for the matter, which

12   raises wage and hour claims under California law on behalf of employees who worked at Amazon

13   in California.  *See Conti,* 2023 WL 4600532, at *10 (concluding this factor weighed in favor of

14   certification where settlement raised wage and hour claims under California law on behalf of

15   employees throughout the state).  Further, "[w]ith the parties already having agreed on a proposed

16   Settlement Agreement, the desirability of concentrating the litigation in one forum is obvious."

17   *Wright v. Linkus Enters.*, 259 F.R.D. 468, 474 (E.D. Cal. 2009) (internal quotation marks, citation

18   omitted). This factor therefore weighs in favor of certification.

19               d.   Management of the action

20       Finally, the Court considers "the likely difficulties in managing a class action."  Fed. R.

21   Civ. P. 23(b)(3)(D).  Because the parties reached an agreement for the class claims and identified

22   the Settlement Class, it does not appear there are any problems with managing the action.  *See*

23   *Conti*, 2023 WL 4600532, at *10.  Additionally, resolution of the claims of approximately

24   249,598 total class members in one class action settlement is superior to individual lawsuits

25   because it promotes consistency and efficiency of adjudication. This factor weighs in favor of

26   certification.

27       Taken together, the Court finds that class treatment is superior.  The Court additionally

28   concludes that the relevant factors generally weigh in favor of class certification and that

16

1    Plaintiffs have sufficiently met the requirements of Rule 23(a) and (b).

2    **II.      Evaluation of Settlement Terms**

3           Class actions require court approval prior to settlement. Fed. R. Civ. P. 23(e) ("The

4    claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or

5    compromised only with the court's approval."). A class action settlement may be approved if the

6    Court, after class members have an opportunity to be heard, finds that the settlement is "fair,

7    reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Rule 23(e)(2) directs the Court to consider

8    whether:

9              (A)  the class representatives and class counsel have adequately represented the class;

10             (B)  the proposal was negotiated at arm's length;

11             (C)  the relief provided for the class is adequate, taking into account:

12                       (i)     the costs, risks, and delay of trial and appeal;
                          (ii)    the effectiveness of any proposed method of distributing relief to the class,
13                                including the method of processing class-member claims;
                          (iii)   the terms of any proposed award of attorney's fees, including timing of
14                                payment; and
                          (iv)    any agreement required to be identified under Rule 23(e)(3); and
15

16             (D)  the proposal treats class members equitably relative to each other.

17   Fed. R. Civ. P. 23(e)(2); *see Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)

18   ("Congress and the Supreme Court amended Rule 23(e) to set forth specific factors to consider in

19   determining whether a settlement is 'fair, reasonable, and adequate.'"); *see also Farrar v.*

20   *Workhorse Grp., Inc.*, No. CV 21-02072-CJC (PVCx), 2023 WL 5505981, at *4 (C.D. Cal. July

21   24, 2023) (applying Rule 23(e)(2) factors to evaluate fairness of class action settlement); *Lusk v.*

22   *Five Guys Enterprises LLC*, No. 1:17-cv-0762 JLT EPG, 2023 WL 4134656, at *12 (E.D. Cal.

23   June 22, 2023) (applying Rule 23(e)(2) factors to evaluate whether settlement of class action

24   "fair, reasonable, and adequate"); *Razo v. AT&T Mobility Servs.*, LLC, No. 1:20-cv-0172 JLT

25   HBK, 2022 WL 4586229, at *8 (E.D. Cal. Sept. 29, 2022) (same).

26           District courts in the Ninth Circuit also consider the following non-exhaustive list of

27   factors ("*Churchill* factors"): (1) the strength of the plaintiffs' case; (2) the risk, expense,

28   complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

17

throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hang v. Old Dominion Freight Line, Inc.*, No. 5:21-cv-00287-JWH-DTBX, 2024 WL 2191930, at *3 (C.D. Cal. May 14, 2024) (indicating that in Ninth Circuit courts also consider the eight *Churchill* factors); *Mostajo v. Nationwide Mut. Ins. Co.*, No. 2:17-cv-00350-DAD-AC, 2023 WL 2918657, at *4 (E.D. Cal. Apr. 12, 2023) (citing *Churchill*, 361 F.3d at 575). These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Mostajo*, 2023 WL 2918657, at *4.

### A. Rule 23(e)(2) Factors

#### 1. Representation of the Class

The Court is required to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Because Plaintiffs carried the burden to show the adequacy prerequisite was satisfied under Rule 23(a), the requirement under Rule 23(e)(2) also is satisfied. *See Conti*, 2023 WL 4600532, at *11 (determining Rule 23(e)(2) adequacy requirement satisfied where plaintiffs carried the burden to show the adequacy prerequisite satisfied under Rule 23(a)).

#### 2. Negotiation of the Settlement

The Court must consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The Ninth Circuit also "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in evaluating a proposed class action settlement. *Rodriguez*, 563 F.3d at 965 ("Where a class action is settled prior to class certification, the Court must also consider whether there is evidence of collusion or other conflicts of interest before approving the settlement." *Rodriguez v. Danell Custom Harvesting, LLC*, 327 F.R.D. 375, 389 (E.D. Cal. 2018) (citing *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011)). Examples of signs that a settlement is the product of collusion include "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no

18

monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds ...; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (quoting *In re Bluetooth*, 654 F.3d at 947).

Here, the settlement was presented to the Court only after the parties participated in mediation and then engaged in months of subsequent negotiations with the assistance of the mediator.  (Doc. 108 at 14.)  Prior to engaging in settlement negotiations, the parties exchanged significant information and data and Plaintiffs produced two expert reports, along with a damages analysis.  (*Id.* at 13.)

### a.  Whether there is a disproportionate distribution to counsel

The Settlement Agreement provides that Class Counsel intend to seek attorneys' fees not to exceed 1/3 of the Gross Settlement Fund or one million eight hundred thirty-three thousand three hundred thirty-three dollars and thirty-three cents ($1,833,333.3).  (SA ¶¶ 2, 44.)  In the Ninth Circuit, 25% is considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  The percentage may be adjusted upward or downward based on (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by counsel; and (6) the awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).  As discussed below, the Court does not find that there is a disproportionate distribution to counsel, and the requested fees are reasonable.

### b.  Existence of a "clear sailing" agreement

In general, a "clear sailing" provision is one in which the parties agree to the "payment of attorneys' fees separate and apart from class funds." *In re Bluetooth*, 654 F.3d at 947. A "clear sailing" arrangement also exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to an agreed upon amount. *Id.*

Class Counsel is not seeking attorneys' fees separate and apart from the class funds. Rather, the amount requested is to be deducted from the Gross Settlement Fund.  (SA ¶¶ 2, 15.) There does not appear to be a clear sailing agreement.

19

1          c.   Whether there is a reversion to defendant

2          The parties did not agree or otherwise arrange for unawarded fees to revert to Amazon.

3   Instead, the parties agreed that the Gross Settlement Fund is "non-reversionary."  (SA ¶ 15.)

4   Additionally, the parties agreed that the Net Settlement Amount, which is the portion of the Gross

5   Settlement Fund remaining after deducting enhancement payments, non-California payments,

6   Class Counsel award, administration costs, and the PAGA settlement amount, will be distributed

7   to participating class members.  (SA ¶ 19.)  The Settlement Agreement expressly provides that

8   Amazon will have no reversionary right to any portion of the Net Settlement Amount.  (SA ¶ 43

9   ("Defendant maintains no reversionary right to any portion of the Net Settlement Amount … .").

10  The parties acknowledge that there may be timely opt outs or reductions in the amount in fees and

11  costs awarded, but that any unawarded fees or costs would be included in the Net Settlement

12  Amount and distributed to participating Class Members.  (*Id.*)

13         Based on the foregoing, the Court finds that the settlement was negotiated at arm's length

14  and that there is no evidence of collusion.

15                    **3.  Relief Provided for the Class**

16         The third factor assesses whether the relief provided for the class is adequate, taking into

17  account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed

18  method of distributing relief to the class, including the method of processing class-member

19  claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

20  (iv) any agreement required to be identified under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(C).

21                    a.   Costs, risks, and delays of further litigation

22         "A[ ] central concern [when evaluating a proposed class action settlement] ... relate[s] to

23  the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2), 2018

24  Advisory Comm. Notes.

25         Plaintiffs contend that if this action progressed further, they would incur costs in

26  conducting additional discovery, bringing and/or defending further dispositive motions, bringing

27  and/or defending *Daubert* motions, and (potentially) preparing for and conducting trial.  (Doc.

28  108 at 16.)  Plaintiffs further note that any judgment reached at trial would not necessarily end the

1  litigation, as the losing party likely would appeal.  (*Id.*)  Plaintiffs note that appeals before the

2  Ninth Circuit can take years.   Absent a settlement, Plaintiffs contend that this litigation could

3  have continued for years before the Class Members would see any recovery, if at all.  (*Id.*) This

4  factor weighs in favor of final approval.

5                        b.   Effectiveness of method of distributing relief

6          The Court must next consider "the effectiveness of any proposed method of distributing

7  relief to the class, including the method of processing class-member claims." Fed. R. Civ. P.

8  23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims

9  processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018

10 Advisory Comm. Notes. "A claims processing method should deter or defeat unjustified claims,

11 but the court should be alert to whether the claims process is unduly demanding." *Id.*

12         Class Members are not required to submit a claim to receive their settlement share.  (SA ¶

13 26 ("'Participating Settlement Class Members' means all Settlement Class Members who do not

14 submit timely and valid Requests for Exclusion.") and ¶ 50 ("Settlement Class members do not

15 need to submit a claim to participate and receive their Individual Settlement Payment.").)

16 Instead, Class Members only needed to take action if they wished to exclude themselves from the

17 settlement, object to any of the settlement terms, or dispute the number of workweeks.  (*Id.* ¶¶ 59-

18 60, 66.)  Because submission of a claim form is not required, the proposed method of distribution

19 is not "unduly demanding" upon Class Members and will facilitate payment for legitimate claims.

20 *See Hang*, 2024 WL 2191930, at *5 (finding method for distributing relief adequate as funds

21 would be distributed to class members with no claim form requirement); *Conti*, 2023 WL

22 4600532, at *15 (finding proposed method of distribution not unduly demanding where class

23 members not required to take any action to receive their settlement share).  This factor therefore

24 weighs in favor of final approval.

25                       c.   The terms of any proposed award of attorney's fees, including timing of

26                           payment

27         When evaluating the terms of a settlement, "courts must scrutinize 'the terms of any

28 proposed award of attorney's fees.'" *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir.

1   2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit explained, "the new Rule 23(e)

2   makes clear that courts must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief

3   provided for the class' in determining whether the settlement is 'adequate' for class members."

4   *Id.*, quoting *Briseño*, 998 F.3d at 1024.

5        As discussed below, the fees to which the parties agreed are reasonable.  The Court-

6   approved payment shall be made out of the Gross Settlement Fund by the Settlement

7   Administrator within twenty-one calendar days after the Funding Date.  (SA ¶ 68(a).)  In that

8   same 21-day period, the Settlement Administrator will issue the other approved payments,

9   including to Class Members. (*Id.* ¶¶ 68(b)-(c).)  Thus, Class Counsel will receive their payment in

10  the same period of time as Class Members. This factor weighs in favor of final approval.

11              **4.   Agreement required to be identified**

12       The Court must evaluate any agreement required to be identified under Rule 23(e)(3).

13  Fed. R. Civ. P. 23(e)(2)(C)(iv). Specifically, "parties seeking approval must file a statement

14  identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).

15       Class Counsel have not identified any agreements except for the Settlement Agreement.

16              **5.   Treatment of Class Members**

17       Rule 23(e)(2) requires the Court to consider whether the proposed settlement "treats class

18  members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(D).

19       The Settlement Agreement provides:

20       Individual Settlement Payments will be calculated and apportioned from the Net
21       Settlement Amount to Settlement Class members who do not opt out on a *pro rata*
         basis depending on the number of "weeks worked" or "workweeks" (defined as
22       any calendar week during the Class Period) in which a Settlement Class Member
         performed at least one day of work for Defendant.  Settlement Class members do
23       not need to submit a claim to participate and receive their Individual Settlement
         Payment.

24  (SA ¶ 50.)  The Settlement Agreement provides for pro rata distribution to Class Members based

25  upon their number of workweeks.  The agreement generally treats Class Members equitably, and

26  supports final approval.  *See Conti*, 2023 WL 4600532, at *16 (finding pro rata distribution to

27  class members based upon number of workweeks treated class members fairly and citing cases).

28       Having found that all four factors under Rule 23(e)(2) favor settlement, the Court now

turns to the relevant "*Churchill* factors" to evaluate the fairness of the settlement.

### B.  Relevant *Churchill* Factors

#### 1.  Strength of Plaintiffs' Case

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010).

Plaintiffs indicate that this case involves a range of disputed issues including the merits of Plaintiffs' claims, how much time was spent waiting in line and completing the screening, how much time was spent walking to the time clocks following the screening, the number of shifts when screenings occurred, the number of instances when Amazon employees clocked-in before the start of the screening process, and whether the time spent walking to the time clocks at Amazon facilities is compensable.  (Doc. 108 at 15.)

Although Plaintiffs believe that they have meritorious claims, Amazon denies, and continues to deny, each and all of the claims and contentions asserted by Plaintiffs.  Amazon also disputes Plaintiffs' damages calculation.  Plaintiffs acknowledge that there are certain weaknesses in their legal claims.  (Doc. 108 at 15.)

#### 2.  Risk, Expense, Complexity, and Likely Duration of Further Litigation

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement. *See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  This factor closely mirrors the requirement in Rule 23(e) concerning "the costs, risks, and delay of trial and appeal."  The analysis is not repeated here.

#### 3.  The Amount Offered in Settlement

Plaintiffs indicate that the settlement "provides for a recovery that is approximately 100% of the amount of unpaid wages owed to the Class members at nearly one minute of off-the-clock work as a result of the COVID screenings."  (Doc. 108 at 17.)  The proposed settlement amount is well above the general range of percentage recoveries that California courts—including this one—have found to be reasonable.  *See Cavazos v. Salas Concrete Inc.*, No. 1:19-cv-00062-

1    DAD-EPG, 2022 WL 506005, at *15 (E.D. Cal. Feb. 18, 2022) (examining cases approving

2    settlements ranging from 12% to 35% of estimated maximum damages).

3                    **4.   The Extent of Discovery Completed, and the Stage of the Proceedings**

4           Plaintiffs contend that before settling the case, the parties had a thorough understanding of

5    their respective claims and defenses.  (Doc. 108 at 18.)  Plaintiffs note that Amazon filed a

6    motion to dismiss arguing that time spent undergoing COVID screenings was not compensable

7    under the law.  (Doc. 24.)  The district court partially granted the motion, holding that the facts as

8    pled by Plaintiffs established that the time spent in COVID-19 screenings was compensable under

9    both the California Labor Code and FLSA.  (Doc. 39.)  Amazon then sought an interlocutory

10   appeal, which the parties briefed.  (*See* Docs. 44, 67, 73.)

11          In addition to motion practice, the parties exchanged significant information.  Amazon

12   reportedly produced visual evidence of the COVID-19 screenings collected by security cameras

13   at several facilities in California.  (Doc. 108 at 18.)  Amazon also produced the payroll data and

14   time clock data for the California class.  (*Id.*)  Plaintiffs, on the other hand, retained three experts:

15   (1) Chad Staller (economist), (2) Nicholas Briscoe (economist), and (3) Richard Drogin, Ph.D.

16   (*Id.*) Plaintiffs then produced to Amazon two expert reports and a damages analysis. The expert

17   reports provided an evaluation of the surveillance data and the amount of time spent undergoing

18   the COVID-19 screenings. (*Id.*)

19          Because the parties had a thorough understanding of their respective claims and defenses

20   based on discovery and motions practice and then engaged the services of a professional

21   mediator, the Court finds this factor weighs in favor of final approval. *See Rodriguez v. Danell*

22   *Custom Harvesting*, LLC, 327 F.R.D. 375, 388 (E.D. Cal. 2018) ("The fact that the parties

23   believe they engaged in sufficient discovery to weigh the merits of the action and engaged the

24   services of a professional mediator in settling the action weighs in favor of approving the class

25   action settlement.")

26                    **5.   The Experience and Views of Counsel**

27          The Court is to accord great weight to the recommendation of counsel because they are

28   aware of the facts of the litigation and in a better position than the court to produce a settlement

1   that fairly reflects the parties' expected outcome in the litigation.  *Rodriguez*, 327 F.R.D. at 388–

2   89.  Class Counsel have extensive experience litigating complex class actions.  (Foty Decl. ¶ 3.)

3   Class Counsel believes that Settlement "is fair and reasonable because it provides for a recovery

4   that is approximately 100% of the amount of unpaid wages owed to the Class Members at

5   approximately one minute of additional time worked off-the-clock as a result of the COVID

6   screenings."  (*Id.* ¶ 23.)

### 6.   The Reaction of the Class Members to the Proposed Settlement

8       "It is established that the absence of a large number of objections to a proposed class

9   action settlement raises a strong presumption that the terms of a proposed class settlement action

10   are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221

11   F.R.D. 532, 529 (C.D. Cal. 2004) (citing cases).

12       The response by the class generally has been positive. There were 16 requests for

13   exclusion out of 249,598 class members and no objections.  The absence of any objections is

14   compelling evidence that the settlement is fair, adequate, and reasonable.  *Rodriguez*, 327 F.R.D.

15   at 389).

### 7.   Arm's Length Negotiation and Absence of Collusion

17       As addressed above, the parties engaged in arm's length negotiations and there is no

18   evidence of collusion.

19       Having considered the relevant "*Churchill* factors," and for the reasons discussed, the

20   Court finds that the settlement is fair, adequate, and reasonable.

### APPROVAL OF PAGA SETTLEMENT

22       Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor

23   code violations on behalf of himself and other current or former employees. Cal. Lab. Code §

24   2699(a). A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law

25   enforcement agencies." *Arias v. Superior Ct*., 95 Cal. Rptr. 3d 588, 600 (Cal. 2009). A PAGA

26   plaintiff thus has "the same legal right and interest as state labor law enforcement agencies" and

27   the action "functions as a substitute for an action brought by the government itself"; therefore, "a

28   judgment in that action binds all those, including nonparty aggrieved employees, who would be

1    bound by a judgment in an action brought by the government." *Id.* A plaintiff bringing a

2    representative PAGA action not only owes a duty to their "fellow aggrieved workers," but "also

3    owes responsibility to the public at large; they act, as the statute's name suggests, as a private

4    attorney general." *O'Connor v. Uber Techs., Inc*., 201 F. Supp. 3d 1110, 1133–34 (N.D. Cal.

5    2016).

6            Under PAGA, civil penalties collected are distributed between the aggrieved employees

7    (25%) and the LWDA (75%). Cal. Lab. Code § 2699(i). Any settlement of PAGA claims must be

8    approved by the court. Cal. Lab. Code § 2699(l)(2). The proposed settlement must also be sent to

9    the agency at the same time that it is submitted to the court. Cal. Lab. Code § 2699(l)(2).

10           While PAGA requires a trial court to approve a PAGA settlement, district courts have

11   noted there is no governing standard to review PAGA settlements. *Scott v. Blackstone Consulting,*

12   *Inc.*, No. 21-CV-1470-MMA-KSC, 2024 WL 271439, at *8 (S.D. Cal. Jan. 24, 2024) (collecting

13   cases).  District courts have applied "a Rule 23-like standard" asking whether the settlement of

14   the PAGA claims is "fundamentally fair, reasonable, and adequate." *Id.*

15           In accordance with the statutory requirements, defense counsel provided a copy of the

16   Settlement Agreement, along with the motion for preliminary approval, to the LWDA on

17   February 17, 2024.  (Doc. 110 at 2)  Plaintiffs' counsel also provided the LWDA with a copy of

18   the order granting preliminary approval and Plaintiffs' motion for final approval of the settlement.

19   (*Id.*)  The LWDA had over eight months to comment on the PAGA settlement, but Plaintiffs'

20   counsel has not been contacted by the LWDA.  (*Id.*)  No objections have been received by the

21   Court.  This supports final approval of the PAGA settlement.  *Conti*, 2023 WL 4600532, at *18

22   (E.D. Cal. July 18, 2023) (concluding that final approval of the PAGA settlement supported

23   where no comments from the LWDA were reported by Class Counsel or received by the Court).

24           Additionally, the Settlement Agreement provides for a $100,000 PAGA payment.  This

25   amount represents approximately 1.8% of the Gross Settlement Fund.  District courts have

26   approved a broad range of PAGA penalties.  *See Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp.

27   3d 1058, 1101 (N.D. Cal. 2019) (collecting cases in which settlements providing for $10,000 in

28   PAGA penalties were preliminarily or finally approved despite total settlement amounts of

$900,000 and $6.9 million), *rev'd in part, vacated in part on other grounds*, 999 F.3d 668 (9th Cir. 2021); *see also Alcala v. Meyer Logistics, Inc.*, No. CV 17-7211 PSG (AGRx), 2019 WL 4452961, at *9 (C.D. Cal. June 17, 2019) (collecting cases in which PAGA penalties within the zero to two percent range were approved by courts); *Scott*, 2024 WL 271439, at *8 (approving 5 percent PAGA settlement). The PAGA payment of approximately 1.8% of the Gross Settlement Fund falls within the range of penalties approved by courts. Further, the Settlement Agreement provides that 75% of the PAGA Penalty will be paid to the LWDA and 25% will be paid to the PAGA Settlement Members. (SA ¶¶ 25, 48.) The Court finds final approval of the PAGA settlement appropriate.

## APPROVAL OF SETTLEMENT ADMINISTRATION COSTS

The Court previously appointed Rust Consulting, Inc. to act as the Settlement Administrator. The parties agreed to allocate up to $392,341.00 to Settlement Administration Costs, which will be paid from the Gross Settlement Fund. (SA ¶ 37.)

The Settlement Administrator indicates that the total costs for administration are estimated to be $392,341.00. (Myette Decl. ¶ 21.) Based upon the information provided regarding the tasks performed by the Settlement Administrator (*see generally* Myette Decl.) and the remaining responsibilities of the Settlement Administrator, including issuance of settlement payments, the Court finds the requested Settlement Administration costs reasonable. Therefore, a payment of $392,341.00 for the Settlement Administrator from the Gross Settlement Fund is APPROVED.

## MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS

### I.     Attorneys' Fees

Class Counsel seek renewed approval of their request for an attorneys' fee award in the amount of $1,833,333.33 (1/3 of the Gross Settlement Fund). (Doc. 113 at 17.)

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Settlement Agreement permits Class Counsel to seek attorneys' fees of not more than one third (1/3) of the Gross Settlement Fund, or One Million Eight Hundred Thirty-Three Thousand Three

Hundred Thirty-Three Dollars and Thirty-Three Cents ($1,833,333.33), which shall be paid from the Gross Settlement Fund.  (SA ¶¶ 2, 44.)  However, pursuant to the Settlement Agreement, Amazon will not be responsible for attorneys' fees for, or costs and expenses incurred by, counsel for the named plaintiffs that are not Class Counsel.  Payment to Parmet PC and The Nourmand Law Firm will be made from the Class Counsel award.  (SA ¶ 44.)

The Court preliminarily approved attorneys' fees in the amount of 1/3 of the common fund ($1,833,33.33).  (*See* Order, Doc. 105 at 32.)  In diversity cases, federal courts must apply California law in evaluating attorneys' fees.  *Mangold v. California Public Utilities Com'n*, 67 F.3d 1470, 1578 (9th Cir. 1995) (concluding that in diversity actions, state law determines not only the right to attorneys' fees, but also the method of calculating fees).  The percentage-of-fund method of calculating attorneys' fees is appropriate under California law. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–06 (2016). Thus, under California law a court "may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created." *Id.* at 503. The California Supreme Court has recognized the Ninth Circuit's 25% benchmark for percentage awards in common fund cases, but did not adopt such a benchmark under California law. *Id.* at 495, 503–06 (affirming an attorneys' fee recovery for a wage-and-hour class action of one-third of a $19 million settlement fund and a lodestar cross-check that used a multiplier of between 2.03 and 2.13).

In reviewing the reasonableness of the fee request, including whether the percentage may be adjusted upward or downward, courts consider (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by counsel; and (6) the awards made in similar cases. *See Laffitte*, 1 Cal. 5th at 504 (noting courts may consider risks and potential value of the litigation, the contingency, novelty, and difficulty of the litigation, the skill shown by counsel); *Lealao v. Beneficial Cal., Inc.*, 82 Cal.App.4th 19, 26 (2000); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

Results Achieved

Courts have recognized that the result achieved for the class is a major factor to be

1    considered in making a fee award. *Hensley v. Eckerhart* 461 U.S. 424, 436 (1983).

2            Plaintiffs' Counsel contends that the fee request is justified because they achieved a

3    positive result and obtained significant monetary relief for the Class.  Counsel reiterates that the

4    settlement provides a recovery of approximately 100% of the amount owed, assuming one minute

5    was spent off-the-clock as a result of the COVID screenings.  (Doc. 113 at 19.)  Additionally,

6    counsel notes that this recovery provides significant relief for the class given the complexity of

7    the issues, the risk and uncertainty inherent in class action litigation, and the myriad factual and

8    legal defenses advanced by Amazon.  (*Id.*)  The Court agrees that the result achieved is positive,

9    which favors an upward adjustment from the benchmark.

10           Risks of Litigation

11           Plaintiffs' Counsel contend they have taken considerable risk in litigating this case, not

12   only because it was done on a contingency basis, but also because complex, wage-and-hour

13   litigation is an ever-developing area of the law that poses significant risks. (Doc. 113 at 19.)

14   Plaintiffs indicate that Amazon asserted numerous defenses, and currently pending is Amazon's

15   request for an interlocutory appeal to the Ninth Circuit.  Plaintiffs aver that Amazon "is clearly

16   prepared to employ a multipronged attack aimed at both the scope of the Class and the available

17   damages." (*Id.*)

18           With respect to the liability issues, Amazon argued that the amount of time spent

19   undergoing the screenings was a matter of seconds. Amazon implemented thermal scanners that it

20   contends allowed for a seamless screening process. Additionally, Amazon allowed its employees

21   to download an app on their cell phones which allowed them to clock-in prior to the start of their

22   screenings. These facts presented hurdles to the Plaintiffs' claims.   (Doc. 113 at 20.)

23           With respect to class certification, Amazon asserted that the claims raised by the Plaintiffs

24   were not certifiable. With respect to certifiability of the derivative wage statement claim, Amazon

25   argued that class certification was tied to the certifiability of the underlying claims and are thus

26   subject to the same risks. Success by Plaintiffs on any of these issues was not a foregone

27   conclusion at any time. Nevertheless, Plaintiffs' Counsel "persevered at great risk (while

28   foregoing other profitable work) on a contingency basis, against a large, nationwide employer and

1    brought this case to stellar resolution for the Class. As such, these numerous litigation risks

2    further justify the sought fees award." (Doc. 113 at 20.)  The Court finds that the risks presented

3    here weigh in favor of an upward adjustment.

4            Skill and Quality of the Work

5            The Court does not doubt Class Counsel are experienced and skilled litigators.  This factor

6    also weighs in favor of an upward adjustment.

7            Contingent Nature of the Fee and Burdens Carried

8            "It is an established practice in the private legal market to reward attorneys for taking the

9    risk of non-payment by paying them a premium over their normal hourly rates for winning

10   contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299

11   (9th Cir. 1994).  Here, Class Counsel have prosecuted this case wholly on a contingency basis,

12   and have expended more than 1,500 hours of time, without receiving any compensation.  (Doc.

13   113 at 21.)  Thus, this factor weighs in favor of an upward deviation from the benchmark.

14           Burdens Carried by Class Counsel

15           Class Counsel have provided information as to the costs in prosecuting this action,

16   indicating that Hodges & Foty, LLP, and The Nourmand Law Firm have incurred a total amount

17   $69,881.64 in actual out-of-pocket expenses. (Doc. 113-1, Declaration of Dan Foty ("Second

18   Foty Decl.") ¶¶ 42-43.)  Counsel indicates that the amount represents approximately 1.27% of the

19   total settlement.  (*Id.* ¶ 44.)  Class Counsel have demonstrated their burden as to incurred costs

20   over the course of this litigation, which weighs in favor of an upward adjustment.

21           Awards Made in Similar Cases

22           To support their claim for 1/3 of the Gross Settlement Fund, Plaintiffs argue that courts

23   routinely approve attorneys' fees of percentages equal to or greater than that sought by Plaintiffs

24   in this action.  (Doc. 113 at 17-18.)  Plaintiffs cite cases in which courts approved common fund

25   fee awards equivalent to the percentage requested here. (*Id.* at 15-16, citing *Emmons v. Quest*

26   *Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-00474, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27,

27   2017) (approving an award of attorneys' fees equal to one-third of the total fund); and

28   *Villalpando v. Exel Direct Inc.*, No. 3:12-cv-04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal.

1   Dec. 12, 2016) (approving attorneys' fee award of one-third of the common fund).)

2          Lodestar Cross Check

3          The California Supreme Court and the Ninth Circuit have approved the use of lodestar

4   cross-checks as a way of determining the reasonableness of a particular percentage recovery of a

5   common fund. *See Laffitte*, 1 Cal. 5th at 504 (perceiving no abuse of discretion in court's decision

6   "to double check reasonableness of the percentage fee through a lodestar calculation"); *Vizcaino*,

7   290 F.3d at 1050 ("Where such investment is minimal, as in the case of an early settlement, the

8   lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the

9   lodestar calculation can be helpful in suggesting a higher percentage when litigation has been

10  protracted.").

11         The "lodestar" approach calculates attorneys' fees by multiplying the number of hours

12  reasonably expended by a reasonable hourly rate. *Laffitte*, 1 Cal. 5th at 489; *Gonzalez v. City of*

13  *Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Where, as here, the lodestar is employed to

14  cross-check a percentage-of-fund determination, courts may do a rough calculation. *See In re*

15  *Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D.

16  438, 460 (C.D. Cal. 2014). "Once the court has fixed the lodestar, it may increase or decrease

17  that amount by applying a positive or negative 'multiplier' to take into account a variety of other

18  factors, including the quality of the representation, the novelty and complexity of the issues, the

19  results obtained, and the contingent risk presented." *Laffitte*, 1 Cal. 5th at 489 (quotations and

20  citation omitted).

21         For purposes of the instant motion, Plaintiffs submitted information about the number of

22  hours worked and the attorney hourly rates for both Hodges & Foty, LLP, and The Nourmand

23  Law Firm. At the preliminary approval stage, the Court adjusted the rates for purposes of the

24  lodestar calculation as follows: (1) a rate of $400 for David Hodges (47 hours), Michael

25  Nourmand (126 hours), and Heather Heartfield (110.7 hours); (2) a rate of $325 for Dan Foty

26  (972.2 hours), William Hogg (12.8 hours), and James De Sario (93 hours); (3) a rate of $150 for

27  paralegals Guzman (3.2 hours) and Ponce (9.1 hours); and (4) a rate of $100 for paralegals Barnes

28  (78.9 hours), Pitter (7 hours), Armendariz (6.8 hours), and Valdez (10.3 hours). (*See* Order, Doc.

105 at 31.)  The following chart provides a summary of the lodestar as calculated based on the number of hours spent using the hourly rates the Court found reasonable at the preliminary approval stage:

| NAME | RATE | HOURS | TOTAL |
|---|---|---|---|
| David Hodges (Attorney) | $400 | 47 | $18,800.00 |
| Don Foty (Attorney) | $325 | 1,005.9 | $326,917.50 |
| Michael Nourmand (Attorney) | $400 | 126 | $50,400.00 |
| Heather Heartfield (Attorney) | $400 | 110.7 | $44,280.00 |
| William Hogg (Attorney) | $325 | 12.8 | $4,160.00 |
| James De Sario (Attorney) | $325 | 93 | $30,225.00 |
| Patty Barnes (Paralegal) | $100 | 78.9 | $7,890.00 |
| Ricardo Guzman (Paralegal) | $150 | 3.2 | $480.00 |
| Marta Ponce (Paralegal) | $150 | 9.1 | $1,365.00 |
| D'Yonna Pitter (Paralegal) | $100 | 7 | $700.00 |
| Marlana Armendariz (Paralegal) | $100 | 6.8 | $680.00 |
| JoAnna Valdez (Paralegal) | $100 | 10.3 | $1,030.00 |
| | | | |
| TOTAL | | 1,510.7 | $486,927.50 |

(*See* Second Foty Decl. ¶ 38.; *see also* Order, Doc. 105 at 31.)

Additionally, the Court must also consider the reasonable number of hours spent.  The total number of hours worked is 1,510.7, which includes 115.3 hours of paralegal time.  Given the three-year span of this litigation, the hours expended appear reasonable.  A cursory review of the types of tasks performed substantiates that the hours expended are reasonable.  (Ex. A to Second Foty Decl.)  Therefore, a rough lodestar calculation using the hourly rates identified by the Court, and as illustrated in above chart, yields $486,927.50 in fees.

1      Beyond simply the multiplication of a reasonable hourly rate by the number of hours

2  worked, the Court may enhance the lodestar with a multiplier.  "Multipliers in the 3–4 range are

3  common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl.*

4  *Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*,

5  118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also Vizcaino*, 290 F.3d at 1051–54 and n.6 (affirming

6  a 28% fee recovery, explaining that the 3.65 multiplier "was within the range of multipliers

7  applied in common fund cases" and recognizing that courts applied multipliers of 1.0 to 4.0 in

8  83% of 24 class action suits surveyed); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent*

9  *Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently

10  awarded in common fund cases when the lodestar method is applied.") (citation omitted); *Ferrell*

11  *v. Buckingham Prop. Mgmt.*, No. 1:19-cv-00332-JLT-BAK (EPG), 2022 WL 224025, at *3 (E.D.

12  Cal. Jan. 25, 2022).

13      Based on the Court's lodestar crosscheck, a multiplier of approximately 3.76 is necessary

14  to reach the $1,833,333.33 in fees Class Counsel is requesting in this action.  This multiplier is

15  within the range commonly approved, and because consideration of the relevant factors discussed

16  above favor an upward adjustment, it will be applied.  The Court therefore finds the requested

17  fees reasonable, and the request for attorneys' fees is GRANTED in the amount of $1,833,333.33

18  (1/3 of the Gross Settlement Fund).

19  **II.      Litigation Costs**

20      Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable

21  attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed.

22  R. Civ. P. 23(h). Expense awards "should be limited to typical out-of-pocket expenses that are

23  charged to a fee paying client and should be reasonable and necessary." *In re Immune Response*

24  *Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for:

25  "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing

26  fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8)

27  experts, consultants, and investigators; and (9) mediation fees." *Id.*; *see also Perez v. CVS Health*

28  *Corp.*, No. 1:19-cv-00449-DAD-BAM, 2021 WL 2402950, at *12 (E.D. Cal. June 11, 2021).

1     The Settlement Agreement provides that Class Counsel may seek up to $100,000 in costs.

2  (SA ¶ 2, 44.)  Class Counsel indicate that they have incurred $69,881.64 in actual out-of-pocket

3  expenses. (Second Foty Decl. ¶¶ 42-43; Doc. 113-2, Declaration of Michael Nourmand ¶ 13.)

4  Class Counsel from Hodges & Foty, LLP identify these costs to include amounts expended of

5  approximately $55,250.00 for experts, $8,000.00 for mediation, $1,077.65 for filing and service

6  fees, $1,271.72 for research, and $235.65 for copying.  (Second Foty Decl. ¶ 42.)  The Nourmand

7  Law Firm identifies its litigation costs to include filing, service, and copying fees.  (Doc. 113-2,

8  Declaration of Michael Nourmand ¶ 13.)  The costs incurred are generally permitted litigation

9  expenses.  Having considered the declarations of counsel, the Court finds the request reasonable.

10  Accordingly, the request for litigation expenses and costs is GRANTED in the amount of

11  $69,881.64.

12  **III.     Enhancement Awards to Plaintiffs**

13     Plaintiffs request that the Court approve Enhancement Payments to Plaintiffs in the total

14  amount of $30,000, representing $10,000 to each of the three named plaintiffs.  (SA ¶¶ 7, 45.)

15     A service award of $5,000 is presumptively reasonable.  *See Harris v. Vector Marketing*

16  *Corp.*, No. C-08-5198 MEC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases).

17  Incentive payments are to be evaluated individually, and the court should look to factors such as

18  "the actions the plaintiff has taken to protect the interests of the class, the degree to which the

19  class has benefitted from those actions, ... the amount of time and effort the plaintiff expended in

20  pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at

21  977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)); *see also Conti*, 2023 WL

22  4600532, at *28 (indicating court must consider "'the actions the plaintiff has taken to protect the

23  interests of the class, the degree to which the class has benefitted from those actions, the amount

24  of time and effort the plaintiff expended in pursuing the litigation,' and any financial or

25  reputational risks the plaintiff faced." (citation omitted)).  Further, payments may recognize a

26  plaintiff's "willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.

27     According to Plaintiff Boone's declaration, she has actively participated in this case for

28  the past three years, assisting the attorneys and their staff in the investigation and information

gathering associated with this action.  (Doc. 113-3, Declaration of Heather Boone ¶ 6.)  She describes her assistance to the attorneys in this matter to include:  (a) providing information about her work experience; (b) reviewing her pay and work records; (c) providing statements of factual details; (d) engaging in discussions about the potential lawsuit during the initial investigation and after the case was filed; (e) discussing the complaint with the attorneys and the claims alleged; and (f) discussing mediation with her attorneys and potential resolution of this action.  (*Id.* ¶ 7.) Plaintiff Boone estimates that she has spent approximately 40 hours of her time trying to help vindicate the rights of Class Members.  (*Id.* ¶ 9.)  She asserts that there "were considerable risks" to her by bringing this lawsuit and, as a named plaintiff, she is "exposed to the negative reputational consequences of [her] name being tied to a class action lawsuit against one of the largest companies in the country."  (*Id.*)  She also declares that she was "at risk of negative reputational consequences and adverse employment action."  (*Id.* ¶ 13.)

According to Plaintiff Rivera's declaration, she has actively participated in this case during the past three years by assisting the attorneys and their staff in the investigation and information gathering associated with this action.  (Doc. 113-4, Declaration of Roxanne Rivera ¶ 6.)  She describes her assistance to the attorneys in this matter to include tasks similar to those performed by Plaintiff Boone.  (*Id.* ¶ 7.)  Plaintiff Rivera estimates that she has spent approximately 55 hours of her time trying to help vindicate the rights of Class Members.  (*Id.* ¶ 9.)  Further, she reports that she is currently employed by Amazon and "faced risk of retaliation by filing a lawsuit against [her] current employer."  (*Id.* ¶ 10.)  As a named plaintiff, she declares that she was "exposed to the negative reputational consequences of [her] name being tied to a class action lawsuit against one of the largest companies in the country."  (*Id.*)  She also declares that she was "at risk of negative reputational consequences and adverse employment action."  (*Id.* ¶ 13.)

Similarly, Plaintiff Barrera has actively participated in the case since the beginning by assisting the attorneys and staff in the investigation and information gathering associated with this action, describing assistance to the attorneys to include tasks similar to those performed by Plaintiffs Boone and Rivera.  (Doc. 113-5, Declaration of Cristian Barrera ¶¶ 6-7.)  Plaintiff

Barrera estimates spending approximately 20-30 hours trying to help vindicate the rights of Class Members in this action, and served as a class representative even though there were considerable risks by bringing the lawsuit, including exposure to the "negative reputational consequences" as a named plaintiff in a class action lawsuit against one of the largest companies in the country.  (*Id.* ¶¶ 8- 9, 12.)

In addition to working with counsel, Plaintiffs Boone, Rivera, and Barrera have agreed to a full general release of their claims against Defendant, which is broader than the release that applies to the Class Members.  (SA ¶¶ 63(a), (c), (d).)

The Class Representative Enhancement Payment of $10,000.00 for each named plaintiff contemplated here is approximately 0.18% the Gross Settlement Fund.  This percentage is less than other service payments approved in this district. *See*, *e.g.*, *Conti*, 2023 WL 4600532, at *31 (explaining service award of approximately 1.2% of the gross settlement fund comparable to other service payments).

Considering the relevant factors, particularly the time expended and benefits to the Class, the Court finds the Class Representative enhancement/service awards reasonable.  The request for Class Representative Enhancement Payments in the total amount of $30,000.00 is GRANTED, allocated as follows:  $10,000.00 to Plaintiff Heather Boone, $10,000.00 to Plaintiff Roxanne Rivera, and $10,000 to Plaintiff Cristian Barrera.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds the class settlement is fair, adequate, and reasonable.  The factors set forth under Rule 23 weigh in favor of final approval of the Settlement Agreement. Accordingly, IT IS HEREBY ORDERED as follows:

1.      Plaintiffs' motion for final approval of the class action settlement (Doc. 108) is GRANTED.

2.      The Court finally approves the settlement of this class action in accordance with the terms of the Settlement Agreement and finds that the Settlement Agreement, the Settlement described therein, and the Gross Settlement Fund of $5,500,000.00 are fair, reasonable, and adequate in all respects pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

3.    The Court finds that, for settlement purposes only, the Settlement Class meets the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure in that: (1) the Class is ascertainable and so numerous that joinder of all members of the Class is impracticable; (2) there are common questions of law and fact, and the questions of law and fact common to the Class predominate; (3) Plaintiffs' claims are typical of the claims of the members of the Class; (4) Plaintiffs will fairly and adequately protect the interests of the members of the Class; and (5) a class action is superior to other available methods for the efficient adjudication of the controversy.

4.    Certification of the Settlement Class is GRANTED, and the Court hereby certifies the following Settlement Class for settlement purposes only:   All current and former non-exempt employees of Amazon.com Services, LLC in California who underwent one or more COVID-19 temperature screenings during the period of April 1, 2020 through July 17, 2021 for individuals who did not work at the facility known as OAK4 in Tracy, California, or the period of April 1, 2020 through February 23, 2022 for those individuals who worked at the facility known as OAK4 in Tracy, California.

5.    The Court finds that the emailing (and mailing where there was no personal email address or the email was non-deliverable) of the Class Notice in the manner provided in the Settlement Agreement and in the Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement fully and accurately informed all Settlement Class members of the material elements of the settlement, constitutes the best notice practicable under the circumstances, constitutes valid, due, and sufficient notice to all Settlement Class members and complies fully with the requirements of Federal law and United States Constitution.

6.    The Court further finds that the response of the Settlement Class to the Settlement supports settlement approval.  Of the 249,598, Class Members, only sixteen (16) elected to be excluded from the Settlement, and there were no objections.

7.    The Class Members who submitted timely and valid Requests for Exclusion are excluded from the non-PAGA settlement.

8.    The Court finds that the notice of settlement provided to the LWDA satisfied the

notice requirements of the California Private Attorneys General Act.

9.    The Court directs the parties to effectuate the settlement terms as set forth in the Settlement Agreement and the Settlement Administrator, Rust Consulting, Inc., to calculate and pay the claims of the Participating Class Members in accordance with the terms set forth in the Settlement Agreement.  The Settlement Administrator shall establish a Qualified Settlement Account and send the instructions to counsel for Defendant.

10.    The Court directs the Settlement Administrator to issue the Non-California Payments in the amounts awarded by the Court within twenty-one (21) calendar days of the Funding Date.

11.    The PAGA award of $100,000.00 from the Gross Settlement Fund, which includes payment of $7,500.00 to California's Labor and Workforce Development Agency and the remainder distributed to aggrieved employees, is APPROVED. The Settlement Administrator shall issue the Labor and Workforce Development Agency Payment directly to the California Labor and Workforce Development Agency within twenty-one (21) calendar days of the Funding Date.

12.    Settlement Administration costs in the amount of $392,341.00 to be paid from the Gross Settlement Fund to Rust Consulting, Inc. are APPROVED.

13.    Plaintiffs' motion for Attorneys' Fees, Costs, and Class Representative Enhancement Payments (Doc.113) is GRANTED.

14.    Class Counsel's request for approval of attorneys' fees in the amount of $1,833,333.33 or 1/3 of the Gross Settlement Fund is GRANTED.  The Settlement Administrator shall issue payment to Class Counsel within twenty-one (21) calendar days of the Funding Date.

15.    Class Counsel's request for approval of litigation costs in the amount of $69,881.64 is GRANTED.  The Settlement Administrator shall issue payment to Class Counsel within twenty-one (21) calendar days of the Funding Date.

16.    The request for Class Representative Enhancement Payments in the total amount of $30,000.00 is GRANTED, allocated as follows:  $10,000.00 to Plaintiff Heather Boone, $10,000.00 to Plaintiff Roxanne Rivera, and $10,000 to Plaintiff Cristian Barrera.  The Settlement

Administrator shall issue payment to within twenty-one (21) calendar days of the Funding Date.

17.    Upon completion of the administration of the Settlement, the Settlement Administrator shall provide a written declaration under oath to certify such completion to the Court and counsel for all parties.  Class Counsel shall file such declaration with the Court.

18.    The Court retains jurisdiction for a period of nine (9) months from the date of this Order for purposes of resolving issues relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement.

19.    The parties shall submit a proposed judgment consistent with this Order to the District Judge in this case.

IT IS SO ORDERED.

Dated:   **November 7, 2024**            /s/ *Barbara A. McAuliffe*
                                                    UNITED STATES MAGISTRATE JUDGE